UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| JAIME GARCIA, et ux. : | |
| : | |
| Plaintiffs : | |
| : | |
| v. : | Civil No.  BEL 01 CV 0103 |
| : | |
| RONALD D. KIRSTIEN, et al. : | |
| : | |
| Defendants : | |

### DEFENDANT RANDY HABECK'S MOTION FOR SUMMARY JUDGMENT

The defendant, Randy Habeck, by his undersigned counsel moves this Court for summary judgment pursuant to Fed.R.Civ.P. 56(c), and in support thereof offers the attached Memorandum of Points and Authorities which is incorporated herein by reference as if repeated verbatim.

WHEREFORE, Randy Habeck moves this Court to enter summary judgment in his favor and against the Plaintiffs, Jamie Garcia and Elvira Garcia, and to grant such other and further relief as is just and proper.

Respectfully submitted,


___/s/ Patrick J. Kearney_____
Patrick J. Kearney (Fed. Bar No. 01913)
Selzer Gurvitch Rabin & Obecny, Chartered
4416 East West Highway, Fourth Floor
Bethesda, Maryland  20814
Tel.  (301) 986-9600

Attorneys for Defendant Randy Habeck

## CERTIFICATE OF SERVICE

I hereby certify, that on this 9th day of February, 2004, a copy of the foregoing Motion for Summary Judgment was delivered by ECF and by Federal Express to David F. Albright, Esquire, Albright & Goertemiller, LLC, 120 E. Baltimore Street, Suite 2150, Baltimore, Maryland 21202 and Craig D. Roswell, Esquire, Niles, Barton & Wilmer, 111 S. Calvert Street, Suite 1400, Baltimore, Maryland 21202.

                                           ___/s/ *Patrick J. Kearney*_____
                                           Patrick J. Kearney

UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| **JAIME GARCIA, et ux.** : | |
| : | |
| Plaintiffs : | |
| : | |
| v. : | Civil No.  BEL 01 CV 0103 |
| : | |
| **RONALD D. KIRSTIEN, et al.** : | |
| : | |
| Defendants : | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT RANDY HABECK'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

This is a case where the wrong plaintiffs are suing the wrong defendant for the wrong cause of action.  Further, even if a cause of action existed, it would be time-barred.

**STATEMENT OF FACTS**

Jaime Garcia (sometimes know as "Jim Garcia") and his wife, Elvira Garcia (collectively "Plaintiffs") were the founders of a business known as "Chef Garcia".  *Deposition of Jamie Garcia ("J. Garcia Dep.")* at 12.[1]  The Chef Garcia business was owned by the corporation JEJ, Inc., which, in turn, was owned by the Plaintiffs.  *Id.,* at 13.

In 1990, the Plaintiffs acquired one hundred percent (100%) of the shares of a corporation known as McWax, Inc.  *Id.*  Together these two corporations constituted "Chef Garcia".  *Id*., at 14.  Chef Garcia prepared and sold prepackaged Mexican foods such as tortillas and chips to grocery stores and institutions such as schools and the military.

Randy Habeck ("Habeck") was a shareholder and officer in a corporation known as

---

[1] A copy of the relevant portions of the *J. Garcia Dep.* is attached hereto as Exhibit A.

Habeck-Zaitz & Associates, Inc., a Maryland corporation. *Declaration of Randy Habeck* *("Habeck Dec.")* at ¶ 3.[2]  In 1997, Habeck-Zaitz & Associates, Inc. ("H-Z") adopted the name "Impact Sales, Inc. ("Impact"). *Id*. In 2002, Impact Sales, Inc. merged with Key Sales & Marketing Co., Inc. to become Key Impact Sales & Systems, Inc. *Id*. That entity remains in good standing. *Id*. Copies of the relevant corporate documents are attached to the *Habeck Dec.* as Exhibits 1-3.

For the entire length of the dispute which is subject to the Complaint filed by the Plaintiffs, H-Z and its successors acted as a food broker to Chef Garcia. This relationship was first evidenced by the Broker Agreement dated June 15, 1993 between JEJ and H-Z, a copy of which is attached to the *Habeck Dec*. as Exhibit P-1. Although there are no written modifications of the H-Z Broker Agreement, there were at least two modifications of that agreement between 1993 and 1997. *Habeck Dec.* at ¶ 12. As a memorandum dated January 6, 1998, attached to the deposition of Harvey Rothstein[3] as Exhibit P-23 outlines:

> Jim has asked me to recalculate brokerage fees [paid by Chef Garcia to H-Z] according to the Agreement signed in June of 1993. There has be[en] two Agreements since that one was signed. He [Jim Garcia] is claiming since he has not signed the Agreement it is not valid. This includes the Agreement presented to the Board last February. He is using that clause to reduce the liability he has [sic] to Impact Sales, but he won't recalculate the percentages, which will tilt the scale in Impact's favor. I argued this point, also stated the board had approved the brokerage terms superseding the prior Agreement. He told me I was wrong and to recalculate it according to his instructions.

Payments by Chef Garcia to H-Z, at least into 1997 were made by checks signed by Jim Garcia payable to H-Z/Impact. *J. Garcia Dep.* at 95. Elvira Garcia mailed the checks that were paid by Chef Garcia. *Id.*, at 20.

---

[2] A copy of the *Habeck Dec.* is attached hereto as Exhibit B.
[3] The relevant portions of which are attached hereto as Exhibit C.

2

By 1994, Chef Garcia was in financial trouble, or at a minimum, experiencing "cash flow" issues. *See, Id.*, at 52; *Habeck Dec.* at ¶ 13. Habeck introduced Jim Garcia to Harvey Rothstein ("Rothstein") and Ronald Kirstein ("Kirstein"). *Id.*, at ¶14. On or about September 30, 1994, Plaintiffs entered into a letter Agreement with "O'Stein Bros. Limited Partnership No. 4" ("O'Stein No. 4") whereby Plaintiffs surrendered all stock in JEJ and McWax. A new corporation named Chef Garcia, Inc. was formed and O'Stein No. 4 received sixty-five percent (65%) of all voting rights and fifty percent (50%) of all equity rights.[4] Plaintiffs then controlled only thirty-five percent (35%) of the new entity with right to acquire an additional fifteen percent (15%) if certain terms were met. A copy of the letter Agreement is attached to the *J. Garcia Dep.* as Defendant's Exhibit 10. A subsequent and more formal Stock Purchase Agreement was subsequently agreed to. *J. Garcia Dep.* at 45. (*See also Defendant's Exhibit 16 attached to J. Garcia Dep.* ¶ 1.2 defining the "Effective Date" as "August 31, 1995", which is the date of closing under two Stock Purchase Agreements by and among, respectively, O'Stein Brothers Limited Partnership No. 4, Jaime Garcia, Elvira Garcia and Chef Garcia, Inc.)[5] On or about August 31, 1995, Jim Garcia formalized his employment relationship with JEJ, McWax and Chef Garcia, Inc. *Id*.

Sometime after the acquisition of majority ownership of Chef Garcia by O'Stein Bros. No. 4, H-Z/Impact agreed to hire Marjorie Robinson ("Robinson"). *Habeck Dec*. at ¶ 17. Robinson had been on JEJ's payroll but needed to be transferred to a financially viable company to ensure her benefits. *Id.* at ¶ 18. Accordingly, H-Z formed "Intermark" as an operating

---

[4] Habeck has no interest in O'Stein Bros. No. 4 and is not a shareholder in Chef Garcia, Inc. or any of its subsidiaries.

[5] The new corporate structure of Chef Garcia is entered in the 1996 Corporate Income Tax Return. *J. Garcia Dep.* at Exhibit 13 which notes on Form 851 that Chef Garcia, Inc. is the parent and one hundred percent (100%) shareholder of JEJ and McWax.

3

subsidiary which "employed" Robinson; but passed all of her costs through to Chef Garcia. *Id.* at 19. Further, Robinson reported and was responsible to Jim Garcia. *Id*. at ¶ 19.[6]

Sometime in 1994, Habeck became a member of the Chef Garcia, Inc. board of directors. *Habeck Dec.* at ¶ 5. Habeck resigned from the Chef Garcia board of directors in October or November 1997. *Declaration of David J. Norman, Esquire ("Norman Dec.")*[7] at ¶ 4; *Habeck Dec*. at ¶ 5. Habeck did not attend any Chef Garcia board meetings or participate in the decisions of the Chef Garcia board of directors after November 1997. *Norman Dec*. at ¶ 5; *Habeck Dec*. at ¶ 8.

Kirstein & Rothstein, acting for Chef Garcia, Inc., fired Plaintiffs in mid-January 1998. *J. Garcia Dep* at 101. Habeck took no part in that termination. *Norman Dec*. at ¶ 6; *Habeck Dec* at ¶ 8.

### THE ALLEGATIONS IN THE COMPLAINT AND PLAINTIFFS' DISCOVERY RESPONSES

On January 12, 2001, Plaintiffs filed the instant Action. Count I of the Amended Complaint alleges that Habeck, Rothstein and Kirstein "as Plaintiffs' partners, agents and member of the Board of Directors, were accountable to Plaintiffs as fiduciaries," and that "Defendants cause the following damages by their bad acts:

    a.    breach of Employment Agreement;
    b.    breach of Exoneration Agreements regarding Guarantees of Plaintiffs;
    c.    breach of Loan Agreements;
    d.    breach of Wage Agreements;
    e.    damage to future business prospects of Plaintiff; and
    f.    damage to trade name and trademarks of Plaintiffs."

*See Amended Complaint* at ¶¶ 19 and 21.

---

[6] There may be a dispute as to the reason that Robinson was hired by H-Z. Any such dispute, however, will not be "material" under Rule 56(c).
[7] The *Norman Dec.* is attached hereto as Exhibit D.

4

Count II of the Amended Complaint alleges "Unfair Competition" by "misappropriating the inventory and assets of Plaintiffs" and using such "inventory and assets to directly compete with Plaintiffs." *Amended Complaint* at ¶ 23.

Count III of the Amended Complaint claims to allege "constructive fraud", alleging Defendants owed Plaintiffs fiduciary duties "to act in the best interest of the Plaintiffs, the businesses and their creditors, and to prevent the destruction of the businesses and Plaintiffs' livelihood." *Id.* at ¶ 27. Plaintiffs allege that Defendants breached that fiduciary duty "by failing to prevent the destruction of the business …" *Id*. at ¶ 28.

In August 2002, the Defendants each served interrogatories on Plaintiffs. Eight (8) months later, Jim Garcia responded with a 70 page set of answers to interrogatories. A copy of the response to Interrogatory No. 3 is attached hereto as Exhibit E. That answer is not attached as competent evidence of any wrongdoing, but as proof of the claims in this case are time-barred.

To the extent there was some "conspiracy against Plaintiffs", which is denied, those supposed bad acts were "discovered by Jim Garcia on June 17, 1997". Jim Garcia wrote in his answer to Interrogatory Number 3 at pages 7-8.

> **At the Chef Garcia Board Meeting of 6/17/97**, Defendant Kirstein asked the Board "where the company stands with unpaid accounts?" He was told by Randy McDonald that JP Foods still owed money for deductions. Defendant Habeck's agent [sic] Marjorie Robinson then stated "(We) will have the situation resolved in two weeks." **At this point the cover-up by the Defendants was made extremely clear to Plaintiffs. It was obvious to them that the Defendants were not being truthful, and that the Defendants' attempts to clear up deductions were non-existent; they were deceiving Plaintiffs**. (emphasis supplied)

### THE CHEF GARCIA BANKRUPTCY

Chef Garcia, Inc. and its affiliates filed voluntary petitions for relief under the United

States Bankruptcy Code on September 3, 1998 in the United States Bankruptcy Court for the Eastern District of Virginia, Case Nos. 98-16522-MVB (Chapter 11) and 98-16523 MVB (Chapter 7).  The Chapter 11 case was apparently used as the vehicle to sell the assets of Chef Garcia.  As the docket in that case, which is attached hereto as Exhibit F, shows, the debtor filed a Motion to Sell Certain Equipment (Docket No. 63), Jim Garcia objected to that Motion (Docket No. 82), and filed a Motion for Reconsideration (Docket No. 87).  A subsequent Motion to Sell Equipment, Furniture, Fixtures and Intellectual Property Free and Clear of Liens by public auction was filed on December 23, 1998.  Jim Garcia did not object to that Motion, which was granted on January 25, 1999 (Docket No. 112).  Plaintiffs were represented in that case by their current counsel, Mr. Albright.  *J. Garcia Dep*. at 100-101.  Habeck did not participate in the Bankruptcy except as a representative of H-Z/Impact, a creditor of Chef Garcia.  *Habeck Dec*. at ¶ 23.

## ARGUMENT

The standard for summary judgment under Fed.R.Civ.P. 56(c) is well established. "[S]ummary judgment is only proper if there is no dispute as to 'any material fact,' Fed.R.Civ.P. 56(c), or as to the reasonable inferences that can be drawn from the facts." *Columbia Union College v. Clarke*, 159 F.3d 151, 164 (4th Cir. 1998) cert. denied, 527 U.S. 1013, 119 S. Ct. 2375, 144 L.Ed.2d 252 (1999) (citations omitted).  Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to go beyond the mere pleadings and present evidence through affidavits, depositions, or admissions on file to show that there is a genuine issue for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265, (1986). A genuine issue is one in which the evidence is such that a reasonable jury

could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202, (1986).

Summary judgment is appropriate in this case because any claims against Habeck, in his capacity as a director of Chef Garcia, Inc., are time-barred and, the claims, to the extent that they exist, are: (a) claims that Chef Garcia, Inc. has against H-Z/Impact and not against Habeck and (b) are claims that could only be brought by Chef Garcia, Inc. or by a shareholder in a properly plead derivative action.

I. **The Plaintiff's Claims Against Habeck Are Barred By The Statute of Limitations**

This case is governed by the three year statute of limitations found at Md. Code Ann. C & J § 5-101 (general limitations). The purpose behind the statute of limitations is well established:

> Statutes of limitations . . . serve important societal benefits, such as judicial economy, they are designed to balance competing interest between potentially adverse parties. On the one hand, statutes of limitations provide plaintiffs or claimants with a window of time to initiate a cause of action or assert a claim. As implied by its title, the time period in a statute of limitations is not infinite. Once the limitation period passed, the statute, which once provided opportunity, closed the window and the claim is barred thereafter. The legislature, in drafting such legislation implicitly recognizes that as time passes, difficult evidentiary issues arise, such as proof of the cause of injury, faded memories and the availability of witnesses. Furthermore, without closure on the filing of such claims, potential defendants are often faced with uncertainty that may affect their future financial viability. By closing the window, the statue of limitations grants repose to potential defendants that would be disadvantaged unfairly by stale claims due to unreasonably long delay. The final result is that the "right to be free of stale claims in time comes to prevail over the right to prosecute them."

*Marsheck v. Board of Trustee of the Fire & Police Employees' Retirement System of the City of Baltimore*, 358 Md. 393, 404-405, 749 A.2d 774, 779-780 (2000)(citations omitted). The statute of limitations is to be strictly construed. Exceptions to the statute, either equitable or implied,

are frowned upon. *Walko Corp. v. Burger Chef Systems*, 281 Md. 207, 378 A.2d 1100, 1101-02 (1977).

The most widely recognized exceptions to the three year statute of limitations are: (a) the "discovery rule" which states that "'an action is deemed to accrue on the date when the plaintiff know or, with due diligence, reasonably should have known of the wrong'"; (b) the fraud rule under Md. Code Ann. C & J § 5-203, which is a statutory corollary of the discovery rule; (c) the "continuation of events theory." *Supik v. Bodie, Nage, Dolina, Smith & Hobbs, P.A.*, 152 Md. App. 698, 713-715, 834 A.2d 170, 178-179 (2003)(citations omitted). The latter theory has been developed in Maryland in the case of a relationship between an attorney and client, but might be argued to apply in all confidential relations. The Court of Special Appeals explained the continuation of events theory as follows:

> "In cases where there is an undertaking which requires a *continuation of services*, or the party's right depends upon the happening of an event in the future, the statute begins to run only from the time the services can be completed or from the time the event happens."
>
> *[Frederick Road Ltd. Partnership v. Brown & Strum,* 360 Md. 76, 97, 756 A.2d 963, 974-975 (2000)]* (quoting *W., B. & A. Elec. R.R. Co. v. Moss*, 130 Md. 198, 204-05, 100 A. 86 (1917)). The continuation of events theory is based on the equitable principle of detrimental reliance. When a relationship develops between two parties, built on trust and confidence, the confiding party may rely upon the "good faith of the other party so long as the relationship continues to exist." *Id*. at 98. This is especially true in fiduciary relationships such as the attorney- client relationship where "a client has the right to rely on his or her lawyers' loyalty and to believe the accuracy and candor of the advice they give." *Id*. at 103.
>
> *****
>
> Notwithstanding the confidential relationship, if the confiding party knows, or reasonably should know, about a past injury, accrual for statute of limitations purposes will begin on the date of inquiry notice, and not the completion of services. "The confiding party, in other words, is under

8

>   no duty to make inquiries about the quality or bona fides of the services received, unless and until something occurs to make him or her suspicious." *Id.* at 98.

*Supik v. Bodie, Nage, Dolina, Smith & Hobbs, P.A.*, 152 Md. App. at 714-715, 834 A.2d at 179.

Thus, even if the Court assumes that the continuation theory applies and assumes, without deciding, that there is a confidential relationship, the limitations period must be three years from the discovery of the wrong.

In this case, the only competent evidence is that Habeck withdrew from the Board of Directors in October 1997. He had no role in the management of Chef Garcia as a director after that date. He had no role in the firing of the Plaintiffs. All claims against Habeck that could conceivably arise from a breach of fiduciary duty, therefore, must have been brought by October 2000.

Further, in responding to interrogatories (that took Plaintiffs eight (8) months to produce), Plaintiffs state clearly that as of June 17, 1997, "**At this point the cover-up by the Defendants was made extremely clear to Plaintiffs. It was obvious to them that the Defendants were not being truthful, and that the Defendants' attempts to clear up deductions were non-existent; they were deceiving Plaintiffs**." *Plaintiffs' Response to Interrogatory No. 3.* Thus, Plaintiffs assert knowledge of alleged wrong doing by Defendants that would deny them the opportunity to take advantage of the discovery rule or the continuation of events theory. This is reinforced by the January 8, 1998 memorandum from Randy McDonald, Exhibit P-23 attached to the Deposition of Harvey Rothstein in which Jim Garcia is heard to complain that H-Z/Impact has been over charging due to the fact that the only written agreement between Chef Garcia and H-Z was entered into in 1993 and Jim Garcia did not personally sign two subsequent agreements approved by the Board. Thus, any claim that Habeck was using his influence as a director of

Chef Garcia, Inc. to cause over-payments to H-Z/Impact was clearly known and sought to be acted on not later than January 8, 1998.

These dates are all outside of the three year limitation period since the Complaint in this case was not filed until January 12, 1998.

Plaintiffs may attempt to avoid the limitations issue by arguing that Habeck acted to approve sales promotions sometime in March 1998 while Robinson was on maternity leave. The problem with that assertion is that there is no evidence that Habeck was acting at that time in any capacity other than as an agent of H-Z/Impact and, therefore, is not liable in any individual capacity, whether as a director or otherwise.[8]

Plaintiffs' claims for damages prior to January 12, 1998, to the extent they exist must be denied as being time-barred. Accordingly, this Court should enter summary judgment barring all such claims against Habeck.

## II. Plaintiffs Do Not Have Standing To Sue

Plaintiffs' case was brought improperly as an action by individual claiming that their business was harmed by the Defendants. In reality, distilled to their essence, the claims (if they existed, which they do not) should be that the value of their stock has been harmed by actions of the Board of Directors which allegedly permitted overcharging, improper deductions and the dissipation of assets in a bankruptcy case. These are all classic claims that would be asserted by a corporation against its board and not directly by shareholders against the individual board members. The rule was stated by the Maryland Court of Appeals almost 60 years ago:

---

[8] The assertion that Habeck did not resign from the Board of Directors because he did not submit a written resignation is without merit. The facts clearly show resignation to a responsible person and Habeck's recusal from subsequent board meetings and board actions.

> If it appears that any corporate official subordinated the interest of the corporation to his own interest, he may become liable to it for any loss he occasioned. It is, therefore, beyond question that directors have no right to participate in a conspiracy with the object of divesting the corporation of its property and making profits themselves at the expense of the corporation and its creditors. That rule is applicable even when the wrongful acts were done maliciously with intent to injure a particular stockholder. It is immaterial whether the directors were animated merely by greed or by hostility toward a particular stockholder for the wrongdoing affects all the stockholders alike. It is accordingly held that a stockholder cannot sue individually to recover damages for injuries to the corporation, notwithstanding that the directors may have entered into an unlawful conspiracy for the specific purpose of ruining the corporation. We specially hold that where conspirators ruin a person financially by forcing into receivership a corporation in which he was a large stockholder, in order to eliminate him as an officer and to acquire control of the corporation, the wrongs are suffered by the injured person in his capacity as a stockholder and the action to recover for resulting injuries should be brought by a receiver.
>
> … [U]pon the failure of a corporation to institute or prosecute suit against an officer for breach of trust, a court of equity in a proper case will allow suit to be brought and maintained by any stockholder for the benefit of the corporation.

*Waller v. Waller*, 187 Md. 185, 190-191, 49 A.2d 449, 452-453 (1946)(citations omitted); *accord*, *Danielewicz v. Arnold*, 137 Md.App. 601, 769 A.2d 274 (2001)(action by the board of directors issuing stock which diluted the value of shareholders could only be brought derivatively and not directly as a cause of action against members of the board of directors). Thus, the cause of action for destruction of business and even destructive of livelihood, which is derived from Plaintiff's standing as shareholders, belongs solely to the corporation, Chef Garcia, Inc. Habeck does not deny that such derivative action may be brought, if a cause of action exists, and that the Plaintiffs could probably plead the elements of futility (despite the lack of proof for a cause of action). However, Plaintiffs have made no reference to Fed.R.Civ.P. 23.1 or any other allegation in their pleadings to suggest that they are bringing this action derivatively.

11

Simply put, Plaintiffs lack standing to bring this case. Plaintiffs lack of standing was plead by Habeck in the Answer and ignored for the past three (3) years.

### A. Count II Can Only Be Brought By Chef Garcia, Inc.

Count II should be dismissed for a failure to state a claim upon which relief can be granted. Simply put, the Plaintiffs complain that all of the Defendants misappropriated "the inventory and assets of the Plaintiffs." The problem with this claim is that the Plaintiffs did not have inventory and assets as an operating company. Rather, Chef Garcia, Inc. had inventory and assets. Plaintiffs were shareholders in Chef Garcia, Inc. If there was any loss of assets and inventory, that claim belongs to Chef Garcia, Inc. This is a classical derivative action. Accordingly, Count II must be dismissed for lack of standing in that it was not brought as a derivative action.

#### 1. Habeck Cannot Be Held Personally Liable.

Further, the record is barren of any allegation as to how Habeck personally engaged in any such misappropriation, other than the fact that payments made to H-Z Impact by Chef Garcia, Inc. which were, on the whole approved by Jim Garcia and mailed by Elvria Garcia. All of Plaintiffs allegations concern H-Z/Impact, the corporate entity and not Habeck, individually. The record is clear that Chef Garcia, Inc. had a business relationship with H-Z/Impact. There is no record of any financial transactions being conducted between Chef Garcia, Inc. and Habeck, individually. The claim that there were inappropriate payments to H-Z/Impact, besides being time-barred, make claim against the wrong entity. Payments were made to H-Z/Impact, not Habeck, just as any so-called improper deductions, to the extent they were ever allowed, were allowed by H-Z/Impact (which, of course, never happened), not Habeck.

It is black letter law that the existence of a corporate entity protects individuals from

12

liability unless facts are proven that would allow the piercing of the corporate veil. *See, e.g., Turner v. Turner*, 147 Md.App. 350, 423-24, 809 A.2d 18, 60-61 (2002)(discussing Maryland law for disregarding the corporate entity). There are no allegations in this case that would allow Plaintiffs to ignore the corporate existence of H-Z/Impact in order to proceed against Habeck individually for actions taken by Habeck in his capacity as a broker for H-Z/Impact or payments made to H-Z/Impact. Further, to the extent that there are claims for improper payments or improper deductions, those are claims of Chef Garcia, Inc. against its broker and not claims that can be pursued by an individual against an individual.

### 2. Claims Concerning The Liquidation Of Chef Garcia Are Barred By The Doctrine Of Res Judicata.

The complaint also seems to be that Kirstein and Rothstein bought assets of Chef Garcia, Inc. at rock bottom prices at a bankruptcy auction. There is a fundamental lack of connection between this action and any claim against Habeck. Further, Plaintiffs should be collaterally estopped from arguing that such action was inappropriate. The auction was conducted under the auspices of the Bankruptcy Court by virtue of 11 U.S.C. § 363. In order to sell substantially all of the assets of a business under that provision, a Chapter 11 debtor must give notice and an opportunity to creditors or other parties to oppose the sale. *See, e.g. In re Naron & Wagner, Chartered,* 88 B.R. 85 (Bankr. D. Md. 1988)(describing the procedures for the sale of substantially all of the assets of a debtor prior to a plan of reorganization or liquidation).

Plaintiffs received notice of the impending sale. Plaintiffs were represented by their current counsel and Plaintiffs failed to object or litigate any impropriety connected with the sale of assets in that forum. Thus, Plaintiffs are barred by the doctrine of *res judicata* from claiming that any sale was inappropriate or a breach of duty because the issue was litigated or could have

been litigated had the Plaintiffs raised the issue. *See, e.g., Anyanwutaku v. Fleet Mortgage Group, Inc.*, 85 F.Supp.2d 566, 570-571 (D. Md. 2000) *aff'd*, 229 F.3d 1141 (4th Cir. 2000)(gathering cases).

> In analyzing the applicability of *res judicata*, a court must consider the following elements: "(1) whether the parties are the same as, or in privity with, the parties to the earlier dispute; (2) whether the cause of action presented is identical to the one determined in the prior adjudication; and, (3) whether there was a final judgment on the merits in the initial action."

*Id.*, at 570-571 (citations omitted). Here, you have on one hand, the Plaintiffs who were parties to the Chapter 11 case and the Defendants, two (2) of whom were members of the Board of Directors who authorized the Bankruptcy filing and sale. Thus there is an identity of the parties. The cause of action before was to sell the property free and clear of liens. Clearly the objection that the assets were being stripped from a viable company that would allow repayment of claims of creditors would have been a defense to the sale and, therefore, is identical to the claim that the Defendants somehow engaged in wrongdoing in allegedly stripping Chef Garcia, Inc. of its assets. Finally, there was clearly a final order in that the sale went forward after the court order. Accordingly, besides the fact that Plaintiffs lack standing to bring a personal action for any alleged misappropriation of assets, the claims that the assets have been improperly stripped are barred by the doctrine of *res judicata*. Thus, this Court should grant summary judgment dismissing Count II of the Complaint.

  **B.**  **Count III Can Only Be Brought By Chef Garcia, Inc.**

Plaintiffs allege in Count III of their Amended Complaint "constructive fraud" "to prevent the destruction of the businesses and Plaintiffs' livelihood. As has been discussed by in this District:

> In *Scheve v. McPherson*, 44 Md. App. 398, 408 A.2d 1071, 1076

14

> (Md.App. 1979), the Court of Special Appeals held that constructive fraud: is a breach of legal or equitable duty which, irrespective of the moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests. Neither actual dishonesty of purpose nor intent to deceive is an essential element of constructive fraud. (internal citation omitted). According to *Scheve*, constructive fraud does not require a finding of dishonesty or intent to deceive, whereas fraud/intentional misrepresentation does.

*SpinCycle, Inc. v. Kalender*, 186 F.Supp.2d 585 (D. Md. 2002).

In the first instance, the only time when Habeck could have conceivably owed anyone a fiduciary duty ended in 1997, prior to the expiration of the statute of limitations. Further, however, the claim that the business was destroyed is a cause of action that is owed by the directors to the business, Chef Garcia, Inc. Plaintiff's lack of standing to bring a corporate action for constructive fraud requires the entry of summary judgment dismissing Count III.

Of course, Plaintiffs also plead that the constructive fraud was designed to destroy Plaintiffs' livelihood. That damage, however, is clearly contemplated under *Waller* as a derivative action since destruction of the livelihood was directly tied to the destruction of the business. *Waller, supra*, 187 Md. at 190-191, 49 A.2d at 452-453. Accordingly, that claim had to be brought derivatively. Since it was not, the claim must be dismissed.

### III.   COUNT I SHOULD BE DISMISSED FOR LACK OF PROOF

The claim in Count I is that Habeck owed a fiduciary duty to Plaintiffs and that he breached that fiduciary duty by:

  a. breach of Employment Agreement;
  b. breach of Exoneration Agreements regarding Guarantees of Plaintiffs;
  c. breach of Loan Agreements;
  d. breach of Wage Agreements;

15

   e. damage to future business prospects of Plaintiff; and
   f. damage to trade name and trademarks of Plaintiffs.

  Plaintiffs fail to link Habeck to alleged breaches of the Plaintiffs Employment Agreements with Chef Garcia, Inc. of the alleged "Exoneration Agreement"; or "Loan Agreements" or "Wage Agreements". As both Habeck and David J. Norman, Esquire, note, Habeck was not a member of the board of directors at the time the Plaintiffs were dismissed by Chef Garcia, Inc. Habeck denies any involvement in any of those enumerated actions. *See, e.g., Habeck Dec.* at ¶¶ 8 & 20. Further, Jim Garcia concedes that any trademarks were the assets of Chef Garcia, Inc. He does not allege any ownership of any such trade names or trademarks. *J. Garcia Dep.* at 63-64.

  Finally, the damage to "future business prospect of Plaintiffs" due to actions by Habeck is wholly unsupported. First, of course, Plaintiffs do not allege any substantive action by Habeck after January 12, 1998. The statute of limitations would bar any prior actions. More to the point, the record is devoid of any action by Habeck that establishes (a) a fiduciary duty directly to Plaintiffs and (b) an action that damaged their future business prospects. Rather, the damage to future business prospects seem to be no more than a variation on Count II; i.e. the destruction of the business of Chef Garcia, which is only a claim that can be asserted by the corporation against its directors or by shareholders in a derivative capacity. Since Plaintiffs' claims in this case are an amalgamation of claims that try to join all three defendants to each action without supporting proof, it is impossible to engage in detailed legal analysis of such broad and unsubstantiated, claims. It is, however, possible to say that summary judgment is appropriate in favor of Habeck and against the Plaintiffs when there is a dearth of evidence linking him to the blanket allegation of claims contained in Count I.

16

**CONCLUSION**

This is a case where the Plaintiffs voluntarily entered into an agreement that divested them of control of Chef Garcia. The deal that they made operated to their advantage for more than two (2) years, allowing them to run the day-to-day details of the Chef Garcia business and draw fairly substantial salaries. When the business failed, however, Plaintiffs have tried to place blame on every person other than themselves and, despite a lack of proof that the other parties were attempting to destroy the Chef Garcia business, the demise of that business is alleged to be directed at destroying Plaintiffs. There simply is no proof of such a claim and no economic reason for that action to have occurred. In short, no genuine dispute exists as to the material facts which establish that the claims against Habeck are time-barred and the claims were improperly brought by Plaintiffs. Accordingly, for the reasons stated herein, this Court should grant Habeck summary judgment and dismiss the claims of the Plaintiffs in this case. Further, to the extent that this Court is not convinced that all claims are time-barred or that the Plaintiffs lack standing, then the Court should limit the facts and claims to those that arose on or after January 12, 1998 in order to avoid a sprawling trial over matters which are clearly time-barred.

Respectfully submitted,

   */s/ Patrick J. Kearney*
Patrick J. Kearney (Fed. Bar No. 01913)
Selzer Gurvitch Rabin & Obecny, Chartered
4416 East West Highway, Fourth Floor
Bethesda, Maryland 20814
Tel. (301) 986-9600

Attorneys for Defendant Randy Habeck

17