

**UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)**

JAIME GARCIA, et ux.                        :

        Plaintiffs        :

                                :

v.                                          :    Civil No.  BEL 01 CV 0103

RONALD D. KIRSTIEN, et al.                  :

        Defendants      :

## DECLARATION OF RANDY HABECK

    I, Randy Habeck, have first been duly sworn, depose and say under oath:

1.    I am an adult, citizen of the United States and resident of the State of Maryland.

2.    I am competent to testify on all matters stated herein on personal knowledge.

3.    I am a part owner of and employed by Key Impact Sales & Systems, Inc.  Key Impact Sales & Systems, Inc. is the successor by merger to Impact Sales, Inc. and is in good standing as a corporation in the State of Maryland.  Impact Sales, Inc. was formerly known as Habeck-Zaitz & Associates, Inc.  To that corporation and it successor has remained in good standing as a corporation in the State of Maryland from before 1993 to present.  Copies of the relevant Articles of Amendments (noting the name change from Habeck-Zaitz & Associates, Inc. to Impact Sales, Inc.) the Articles of Merger between Keys Sales & Marketing, Inc. and Impacts Sales, Inc. and a current certificate of good standing for Key Impact Sales & Systems, Inc. are attached hereto as Exhibits 1-3, respectively.

4.    At all times relevant to this case, I have always acted as a food broker through Habeck Zaitz & Associates, Inc. ("H-Z") or its successor.  I have never during the past 11 years

acted as a food broker in my personal capacity.

     5.     I was a member of the board of directors of Chef Garcia, Inc. from approximately late 1994 until October or November 1997.

     6.     I resigned from the board of directors of Chef Garcia, in October or November 1997.

     7.     I did not attend any meetings of the board of directors of Chef Garcia, Inc. in December 1997 or any time thereafter.

     8.     I had no role as a director of Chef Garcia, Inc. from at least December 1997 onward. That is to say I took no part in any decision making for the corporation, including but not limited to the decision to terminate Jamie and Elvria Garcia as employees, the decision to put Chef Garcia, Inc. into a bankruptcy or the decision to liquidate the assets of Chef Garcia, Inc.

     9.     I have never personally drawn a salary or taken any payment from Chef Garcia, Inc.

     10.     For the entire length of the dispute which is subject to the Complaint filed by the Plaintiffs, H-Z and its successors acted as a food broker to Chef Garcia.

     11.     This relationship was first evidenced by the Broker Agreement dated June 15, 1993 between JEJ, Inc. and H-Z, a copy of which is attached hereto as Exhibit P-1.

     12.     Although there are no written modifications of the H-Z Broker Agreement, there were at least two modifications of that agreement between 1993 and 1997 that were approved at meetings of the Board of Directors. I never participated in any vote modifying the terms of that agreement. Jim Garcia, however, was at all meetings discussing the change in payment terms and never dissented.

     13.     By 1994, Chef Garcia was in financial trouble as evidenced by the growing

inability to pay H-Z balanced due for its brokerage services.

14.    In 1994, I introduced Jim Garcia to Harvey Rothstein ("Rothstein") and Ronald Kirstein ("Kirstein") as potential investors.

15.    I have never owned an equity interest in Chef Garcia, Inc. either directly or indirectly.

16.    All business transactions that I engaged in with respect to Chef Garcia, Inc. after my resignation as a member of the Chef Garcia, Inc. board of directors was as a representative of Chef Garcia, Inc.'s food broker, Impact Sales, Inc.

17.    Sometime after the acquisition of majority ownership of Chef Garcia by O'Stein Bros. No. 4, H-Z/ agreed to hire Marjorie Robinson ("Robinson").

18.    Robinson had been on Chef Garcia's payroll but needed to be transferred to a financially viable company to ensure her benefits.

19.    Accordingly, H-Z formed "Intermark" as an operating subsidiary which "employed" Robinson; but passed all of her costs through to Chef Garcia.   Although H-Z was Robinson's, employer, Robinson reported and was responsible to Jim Garcia.

20.    I have not misappropriated any property belonging to the Plaintiffs nor, to my knowledge, have I competed with Plaintiffs.

21.    During the time that I was on the board of directors of Chef Garcia, Inc., I carefully evaluated all of the issues presented before voting and always voted in a manner that I believed was in the best interest of Chef Garcia, Inc. exercising my business judgment.

22.    H-Z and Impact Sales, Inc. did not charge Chef Garcia, Inc. any amount that was not due for services rendered and did not collect any amounts in excess of those charges.   In fact, Impact Sales/Key Impact Sales & Systems, Inc. is still owed in excess of $158,000 from Chef

3

02/03/2004 16:19 FAX  301 634 3140          SELZER BURVITCH                    ☒ 008/008

Garcia, Inc. that it will never be able to collect.

23.     I am aware that Chef Garcia filed for Bankruptcy protection in 1998 and
liquidated its assets.  My participation in that case was solely through Impact Sales, Inc. as a
creditor of Chef Garcia.


**I SOLEMNLY AFFIRM UNDER PENALTIES OF PERJURY AND UPON
PERSONAL KNOWLEDGE THAT THE CONTENTS OF THE FOREGOING
DECLARATION ARE TRUE AND CORRECT.**

Randy Habeck

4

ARTICLES OF AMENDMENT
OF
HADICK-ZAITZ & ASSOCIATES, INC.
CHANGING ITS NAME TO:
IMPACT SALES, INC.

APPROVED AND RECEIVED FOR RECORD BY THE STATE DEPARTMENT OF ASSESSMENTS AND TAXATION

OF MARYLAND JULY        31, 1997 AT        3:32     O'CLOCK        P. M. AS IN CONFORMITY

WITH LAW AND ORDERED RECORDED.

| ORGANIZATION AND CAPITALIZATION FEE PAID: | RECORDING FEE PAID: | SPECIAL FEE PAID: |
|---|---|---|
| $ | $    20.00 | $ |

D1427384

IT IS HEREBY CERTIFIED, THAT THE WITHIN INSTRUMENT, TOGETHER WITH ALL INDORSEMENTS THEREON, HAS

BEEN RECEIVED, APPROVED AND RECORDED BY THE STATE DEPARTMENT OF ASSESSMENTS AND TAXATION OF MARYLAND.

WECHSLER, SELZER & GURVITCH
CHARTERED
SUITE 900 N
4550 MONTGOMERY AVENUE
BETHESDA MD  20814

026C3112558



A 589495

RECORDED IN THE RECORDS OF THE

STATE DEPARTMENT OF ASSESSMENTS

AND TAXATION OF MARYLAND IN LIBER, FOLIO.

.. **ARTICLES OF AMENDMENTS DEPARTMENT OF ASSESSMENTS
TO THE                  AND TAXATION
ARTICLES OF INCORPORATION APPROVED FOR RECORD
OF
HABECK-ZAITZ & ASSOCIATES, INC.** 7-31-97 at 3 32 P.M.

HABECK-ZAITZ & ASSOCIATES, INC., a Maryland Corporation (the

"Corporation"), hereby certifies to the State of Maryland

Department of Assessments and Taxation that:

**FIRST:** The Board of Directors has found that an amendment to
the Articles of Incorporation is advisable and that the same has
been approved by the Shareholders of the Corporation.

**SECOND:** The Articles of Incorporation of the Corporation are
hereby amended by deleting Article 1 in its entirety and by
inserting the following in its place and stead:

    1.   The name of the Corporation is Impact Online, Inc.

**THIRD:** The Board of Directors and the Shareholders of the
Corporation, on the 2nd day of June, 1997, adopted Resolutions in
which forth the foregoing amendment was ratified and adopted on
behalf of the Corporation and its Shareholders.

**IN WITNESS WHEREOF,** we do hereby declare and affirm under the

penalties of perjury that the contents of the foregoing Articles of

Amendment to the Articles of Incorporation of HABECK-ZAITZ &

ASSOCIATES, INC. are true and correct to the best of our knowledge,

information and belief, and we have hereunto affixed our signatures

as our free and voluntary act as President and Secretary of said

Corporation, and the free and voluntary act of the Corporation, all

as of the 2nd day of June, 1997.

Attest:                              HABECK-ZAITZ & ASSOCIATES, INC.


_____        By: _____
Kathleen Mody, Secretary           Randolph L. Habeck, President

F:\WP_FILES\CLIENTS\8619\14AMEND.AR1



**ARTICLES OF MERGER**
**BETWEEN**
**KEY SALES & MARKETING CO., INC.**
**AND**
**IMPACT SALES, INC.**

## THIS IS TO CERTIFY THAT:

FIRST: Key Sales & Marketing Co., Inc. and Impact Sales, Inc. agree to merge in the manner hereinafter set forth.

SECOND: Impact Sales, Inc. is the corporation to survive the merger and its name shall be changed to "Key Impact Sales & Systems, Inc."

THIRD: Key Sales & Marketing Co., Inc. was incorporated under the general corporation laws of the State of New Jersey on December 14, 1987 and Impact Sales, Inc. was incorporated under the laws of the State of Maryland on July 9, 1982.

FOURTH: The principal office of Key Sales & Marketing Co., Inc. in the State of New Jersey is located in Burlington County, New Jersey, and the principal office of Impact Sales, Inc. is located in Anne Arundel County, Maryland.

FIFTH: Key Sales & Marketing Co., Inc. owns no interests in land located in the State of Maryland.

SIXTH: Immediately upon the effectiveness of the merger, the charter of Impact Sales, Inc. shall be amended so as to read in its entirety as set forth on Exhibit A attached hereto.

SEVENTH: The total number of shares of all classes of stock which each corporate party to these Articles has the authority to issue and the number of shares of each class are as follows:

| | Key Sales & Marketing Co., Inc. | Impact Sales, Inc. |
|---|---|---|
| Total number of authorized shares of all classes: | 1,000 | 100,000 |
| Number and par values of authorized shares of each class: | 1,000 shares of voting common stock, with a par value of $0.10 per share | None |
| Number of authorized shares without par value or each class: | None | 100,000 shares of voting common stock, with no par value |
| Aggregate par value of all authorized shares with par value: | $100.00 | $0.00 |

G:\CLIENTS\8010-16\Corporate (Merger) Documents\ARTICLES OF MERGER 2 doc

CUST ID:0000938367
WORK ORDER:0000828568
DATE:08-09-2002 07:22 PM
AMT. PAID:$140.00

AUG-07-02 12:56    FROM-SELZER GURVITCH RABIN & OBECNY, CHRTD. E   1-301-986-1301    T-130  P.03    F-869

The merger provides for changes in the authorized share structure of Impact Sales, Inc. so that said authorized share structure will be as follows upon the effectiveness of the merger:

|  | Impact Sales, Inc. |
|---|---|
| Total number of authorized shares of all classes: | 250,000 |
| Number and par values of authorized shares of each class: | None |
| Number of authorized shares without par value of each class: | 250,000<br>voting common stock, with no par value |
| Aggregate par value of all authorized shares with par value: | $0.00 |

EIGHTH:    Immediately upon the effectiveness of the merger, Key Sales & Marketing Co., Inc. shall be merged into Impact Sales, Inc.; and, thereupon, Impact Sales, Inc. shall possess any and all purposes and powers of Key Sales & Marketing Co., Inc.; and all leases, licenses, property, rights, privileges, and powers of whatever nature and description of Key Sales & Marketing Co., Inc. shall be transferred to, vested in, and devolved upon Impact Sales, Inc., without further act or deed, subject to all of the debts and obligations of Key Sales & Marketing Co., Inc. Each share of common stock, having a par value of $0.10 per share, of Key Sales & Marketing Co., Inc. issued and outstanding as of the effective date of the merger shall be converted into six hundred seventy-eight and 54/100ths (678.54) fully paid and nonassessable shares of the common stock of Impact Sales, Inc. No changes shall be made to or consideration shall be paid for each share of common stock of Impact Sales, Inc. issued and outstanding as of the effective date of the merger.

NINTH:    The terms and conditions of the transaction described in these Articles were duly advised, authorized and approved by Impact Sales, Inc. in the manner and by the vote required by the laws of the State of Maryland and the charter of Impact Sales, Inc., as follows:

a)    The board of directors of Impact Sales, Inc. adopted resolutions declaring that the merger of Key Sales & Marketing Co., Inc. into Impact Sales, Inc. is advisable on substantially the terms and conditions set forth or referred to in said resolutions and directed that the proposed merger be submitted to the stockholders of Impact Sales, Inc. for their consideration. Said resolutions of the board of directors of Impact Sales, Inc. were adopted at a meeting of the board of directors of Impact Sales, Inc. duly held prior to the effective date of the Merger, at which a quorum was present and at

G:\CLIENTS\8010-16\Corporate (Merger) Documents\ARTICLES OF MERGER 2.doc

which the board acted by at least a majority of its members present there at.

b) At a meeting of the stockholders of Impact Sales, Inc., duly held on August 5, 2002, pursuant to notice duly given, the stockholders of Impact Sales, Inc. approved the terms and conditions of the proposed merger by the affirmative vote of at least two-thirds of all of the votes entitled to be cast on the matter.

TENTH: The terms and conditions of the transaction described in these Articles were duly advised, authorized and approved by Key Sales & Marketing Co., Inc. in the manner and by the vote required by the laws of the State of New Jersey and the charter of Key Sales & Marketing Co., Inc., as follows:

a) The board of directors of Key Sales & Marketing Co., Inc. adopted resolutions declaring that the merger of Key Sales & Marketing Co., Inc. into Impact Sales, Inc. is advisable on substantially the terms and conditions set forth or referred to in said resolutions and directed that the proposed merger be submitted to the stockholders of Key Sales & Marketing Co., Inc. for their consideration. Said resolutions of the board of directors of Key Sales & Marketing Co., Inc. were adopted at a meeting of the board of directors of Key Sales & Marketing Co., Inc., duly held prior to the effective date of the Merger, at which a quorum was present and at which the board acted by at least a majority of its members present there at.

b) A unanimous consent in writing, setting forth approval of the terms and conditions of the transaction herein as so proposed, was signed by all of the stockholders of Key Sales & Marketing Co., Inc., and such consent is filed with the records of stockholder meetings of Key Sales & Marketing Co., Inc.

ELEVENTH: These Articles of Merger shall become effective upon filing with and acceptance by the Maryland State Department of Assessments and Taxation.

TWELFTH: Each of the undersigned acknowledges these Articles of Merger to be the corporate act of the respective party on whose behalf he has signed, and further, as to all matters or facts required to be verified under oath, each of the undersigned acknowledges that to the best of his knowledge, information and belief, these matters and facts relating to the corporation on whose behalf he has signed are true in all material respects and that this statement is made under penalties for perjury.

G:\CLIENTS\8010-16\Corporate (Merger) Documents\ARTICLES OF MERGER 2.doc

IN WITNESS WHEREOF, these Articles of Merger have been duly executed by the parties hereto this _6th_ day of August, 2002.

Attest:

_____
Kathleen Mody, Secretary

IMPACT SALES, INC.

By: _____
Randy Habeck, President

Attest:

_____
Anthony O' Dorisio, Secretary

KEY SALES &
MARKETING, INC.

By: _____
Keith Dwyer, President

G:\CLIENTS\8010-16\Corporate (Merger) Documents\ARTICLES OF MERGER.doc

**EXHIBIT A**

**REVISED CHARTER**
**OF**
**KEY IMPACT SALES & SYSTEMS, INC.**

FIRST:  The name of the corporation is Key Impact Sales & Systems, Inc. (hereinafter referred to as the "Corporation").

SECOND:  The Corporation is formed for the purpose of carrying on a business involving generally, but not limited to, the following: to broker the sale of food, food products, beverages, restaurant supplies, including but not limited to paper goods, cleaning supplies, kitchen aids, and otherwise, on behalf of suppliers, manufacturers, producers, wholesalers, distributors or otherwise either as agent, broker, joint venturer, sales director or consultant for such products sold to and utilized by restaurants, hotels, motels, institutions, both public and private retailers, distributors and otherwise, and to hire, employ and engage such personnel as may be necessary to accomplish the same.

The Corporation shall also be authorized to carry on any lawful business that may now or hereafter be conducted by a corporation organized under the Maryland General Corporation Law and to exercise and enjoy all of the powers, rights, and privileges granted to, or conferred upon, corporations by the general laws of the State of Maryland now or hereafter in force.

THIRD:  The address of the principal office of the Corporation in the State of Maryland is 9685 Gerwig Lane, Suite A, Columbia, Maryland 21046. The name of the resident agent of the Corporation in the State of Maryland is Bethesda Service Company, Inc., a corporation incorporated in the State of Maryland, and the post office address of such agent is 4416 East-West Highway, Suite 400, Bethesda, Maryland 20814.

FOURTH:  The total number of shares of stock which the Corporation shall have authority to issue is Two Hundred Fifty Thousand (250,000) shares of voting common stock, having no par value per share, all of one class.

FIFTH:  The number of directors of the Corporation shall be no less than five (5) nor more than ten (10), which number may be changed from time to time pursuant to the By-laws of the Corporation; provided, that the number shall never be less than the number required by the Maryland General Corporation Law; and provided, further, that at any time and for so long as the Corporation has fewer than three stockholders, the number of directors may be less than three but, in such case, shall not be less than the number of stockholders. All directors shall be elected by the shareholders and shall serve until the next annual meeting of the shareholders or until their successor(s) shall be otherwise duly chosen and qualified.

SIXTH:  The following provisions are hereby adopted for the purpose of defining, limiting and regulating the powers of the Corporation and its directors and stockholders:

G:\CLIENTS\8010-16\Corporate (Merger) Documents\ARTICLES OF MERGER 2.doc

(a)     The private property of the stockholders, directors and officers of the Corporation shall not be subject to the payment of the Corporation's debts to any extent whatsoever.

(b)     No contract or other transaction between the Corporation and any person, firm, association or other corporation shall, in the absence of fraud, be invalidated or in any way affected by the fact that any of the directors and/or stockholders of this Corporation are pecuniarily or otherwise interested, directly or indirectly, in such contract or transaction, or are related to or otherwise interested in as a director, stockholder, officer, employee, member or otherwise, of such other person, firm, association or corporation. Any director and/or stockholder so interested or related, as aforesaid, who is present at any meeting at which action on any such contract or transaction is taken, may be counted in determining the presence of a quorum at such meeting and vote thereat with respect to such contract or transaction.  No interested or related director and/or stockholder shall, because of such interest or relationship, be disqualified from holding his office or be liable to the Corporation or any stockholder or creditor thereof for any loss incurred by this Corporation or any stockholder or creditor thereof for any loss incurred by this Corporation under or by reason of such contract or transaction, or be accountable for any personal gains or profits he may have realized thereby, in the absence of fraud as aforesaid.

(c)     The Board of Directors of the Corporation is hereby empowered to authorize the issuance from time to time of shares of its stock of any class, whether now or hereafter authorized, or securities convertible into shares of its stock of any class, whether now or hereafter authorized, without the approval of the stockholders of the Corporation, for such consideration as is determined by the Board of Directors.

(d)     No stockholder of the Corporation shall have preemptive rights to purchase, subscribe for, or otherwise acquire any stock or other securities of the Corporation, and any and all preemptive rights are hereby denied.

(e)     The Board of Directors of the Corporation may classify or reclassify any unissued shares of stock of the Corporation by setting or changing in any one or more respects, from time to time before issuance of such shares, the preferences, conversion or other rights, voting powers, restrictions, limitations as to dividends, qualifications, or terms or conditions of redemption of such shares.

(f)     The Corporation reserves the right from time to time to make any amendment of its charter, now or hereafter authorized by law, in such manner as is prescribed in the By-Laws of the Corporation.

SEVENTH:  To the fullest extent permitted by the laws of the State of Maryland, the liability of any director or officer of the Corporation to the Corporation and/or its stockholders for money damages shall be limited to the sum of ten dollars ($10.00), provided that nothing contained in this Article SEVENTH shall limit the liability of a director or officer (i) to the extent that it is proved that such person actually received an improper benefit or profit in money, property or services, for the amount of

AUG-07-02  12:57    FROM-SELZER GURVITCH RABIN & OBECNY, CHRTD. E   1-301-986-1301     T-130   P.08   F-869

the benefit or profit in money, property or services actually received, or (ii) to the extent that a judgement or other final adjudication adverse to such person is entered in a proceeding based on a finding in the proceeding that such person's action, or failure to act, was the result of active and deliberate dishonesty and was material to the cause o faction adjudicated in the proceeding. This Article SEVENTH shall not be construed to affect the liability of a person in any capacity other than the person's capacity as a director or officer of the Corporation.

EIGHTH:        The duration of the Corporation shall be perpetual.

# CORPORATE CHARTER APPROVAL SHEET
## ** EXPEDITED SERVICE **        ** KEEP WITH DOCUMENT **

DOCUMENT CODE _IIA_ BUSINESS CODE _____

# _____

Close _____ Stock _____ Nonstock _____

P.A. _____ Religious _____

Merging (Transferor) _Key Sales &_
_Marketing Co, Inc._

_____

_(ng)_

Surviving (Transferee) _Impact Sales,_
_Inc._

_(Md) D 1427384_

New Name _Key Impact_
_Sales + Systems, Inc._

```
ID # D01427384 ACK # 1000361987350943
LIBER: B00413 FOLIO: 1482 PAGES: 0008
KEY IMPACT SALES & SYSTEMS, INC.

08/07/2002  AT 12:56 P NO # 0000626568
```

```
1000361987350943
```

### FEES REMITTED

| | |
|---|---|
| Base Fee: | 20 |
| Org. & Cap. Fee: | 70 |
| Expedite Fee: | 50 |
| Penalty: | |
| State Recordation Tax: | |
| State Transfer Tax: | |
| _____ Certified Copies | |
| Copy Fee: | |
| _____ Certificates | |
| Certificate of Status Fee: | |
| Personal Property Filings: | |
| Other: | |
| TOTAL FEES: | 140 |

✓ Change of Name
✓ Change of Principal Office
✓ Change of Resident Agent
✓ Change of Resident Agent Address
_____ Resignation of Resident Agent
_____ Designation of Resident Agent
       and Resident Agent's Address
_____ Change of Business Code

_____ Adoption of Assumed Name
_____

_____ Other Change(s)
_____
_____

Credit Card ✓    Check _____    Cash _____

Code _083_

Attention: _____

_____ Documents on _____ Checks

Approved By: _0 013_

Keyed By: _____

COMMENT(S): _____

Mail to Address:

_____
_____
_____
_____

_note_
_D 1427384_
_changes PO, RA, RAA_
_and name_

```
CUST ID:0000838367
WORK ORDER:0000626568
DATE:08-08-2002 07:22 PM
AMT. PAID:$140.00
```

Stamp Work Order and Customer Number HERE

# STATE OF MARYLAND

## *Department of Assessments and Taxation*

I, PAUL ANDERSON OF THE STATE DEPARTMENT OF ASSESSMENTS AND TAXATION OF THE STATE OF MARYLAND, DO HEREBY CERTIFY THAT THE DEPARTMENT, BY LAWS OF THE STATE, IS THE CUSTODIAN OF THE RECORDS OF THIS STATE RELATING TO THE FORFEITURE OR SUSPENSION OF CORPORATIONS , OR OF CORPORATIONS TO TRANSACT BUSINESS IN THIS STATE, AND THAT I AM THE PROPER OFFICER TO EXECUTE THIS CERTIFICATE.

I FURTHER CERTIFY THAT KEY IMPACT SALES & SYSTEMS, INC. IS A CORPORATION DULY INCORPORATED AND EXISTING UNDER AND BY VIRTUE OF THE LAWS OF MARYLAND AND THE CORPORATION HAS FILED ALL ANNUAL REPORTS REQUIRED, HAS NO OUTSTANDING LATE FILING PENALTIES ON THOSE REPORTS, AND HAS A RESIDENT AGENT. THEREFORE, THE CORPORATION IS AT THE TIME OF THIS CERTIFICATE IN GOOD STANDING WITH THIS DEPARTMENT AND DULY AUTHORIZED TO EXERCISE ALL THE POWERS RECITED IN ITS CHARTER OR CERTIFICATE OF INCORPORATION, AND TO TRANSACT BUSINESS IN MARYLAND.

IN WITNESS WHEREOF, I HAVE HEREUNTO SUBSCRIBED MY SIGNATURE AND AFFIXED THE SEAL OF THE STATE DEPARTMENT OF ASSESSMENTS AND TAXATION OF MARYLAND AT BALTIMORE ON THIS JANUARY 13, 2004.

Paul B. Anderson
Charter Division



**301 West Preston Street, Baltimore, Maryland 21201**
**Telephone Balto. Metro (410) 767-1340 / Outside Balto. Metro (888) 246-5941**
**MRS (Maryland Relay Service) (800) 735-2258 TT/Voice**
**Fax (410) 333-7097**

R2710427

**Tortilla Maya & Mexican Imports**
a division of The JEJ Food Company
7608-F Fullerton Road, Springfield, VA 22153-2814
(703) 455-0155    Metro 451-4841



## BROKER AGREEMENT

As of this 15 day of June, 1993, THE JEJ FOOD COMPANY ("Manufacturer") a Virginia Corporation, and HABECK ZAITZ (Broker"), Maryland Corporation, agree as follows:

1. Broker is appointed agent for the sale of all of manufacturer's products for retail Food Service. Said products include those manufactured and sold under the Chef Garcia, Tortilla Maya, and private labels.

2. Broker's commission will be five percent (5%) of Manufacturer[s sales to accounts procured or serviced by Broker, except as follows:

   (a) 2.5% on all private label sales.

   (b) 50% of the above - stated commissions on all half price promotional sales (i.e., 2.5% on branded and 1.25% on private label sales).

   Broker's commission will be calculated monthly and paid by the fifteenth (15th) of the following month.

3. Broker's exclusive marketing area is the Baltimore/ Washington Metropolitan area, per attached map.

4. Broker agrees not to represent any other mexican food manufacturer or products without the express written consent of Manufacturer, which consent shall not be unreasonably withheld if the manufacturer or products in question do not compete with Manufacturer or its products.



**Tortilla Maya & Mexican Imports**
a division of The JEJ Food Company
7608-F Fullerton Road, Springfield, VA 22153-2814
(703) 455-0155    Metro 451-4841

5. Broker agrees to use its best efforts to promote and maximize the sale of Manufacturer's products and branded labels. By way of illustration and not limitation of the foregoing, Broker will diligently service all accounts procured or entrusted to it to ensure that Manufacturer's products are fully stocked, shelved, and available for sale to retail purchases, and to ensure that the wholesale purchasers of Manufacturer's products are satisfied with the products and the servicing of their accounts by both Manufacturer and Broker.

6. All sales negotiations by Broker for the account of Manufacturer shall be conducted in accordance with such prices, terms, and conditions as are specirfied by Manufacturer. All purchase orders obtained by Broker for Manufacturer's products shall be subject to Manufacturer's confirmation, and it is understood that Broker will not obligate or commit Manufacturer to the sale or delivery of merchandise or products without Manufacturer's authorization and direction.1 Broker will assist Manufacturer in effecting prompt and full payment from all of Broker's accounts for all deliveries of goods sold. The final determination as to credit and credit terms shall be made only by Manufactuer.

7. All disputes hereunder shall, wherever possible, be resolved by meeting, discussion, and agreement. the parties hereto shall be reasonably available for all such meetings and discussions.

8. This agreement may be cancelled by either party upon thirty (30) days written notice. Where the alleged breach is susceptible to cure, the non – breaching party shall give written notice to the other party identifying the alleged breach, and said other party shall have five (5) days thereafter to cure the breach.



**Tortilla Maya & Mexican Imports**
a division of The JEJ Food Company

7608-F Fullerton Road, Springfield, VA 22153-2814
(703) 455-0155    Metro 451-4841

9. This is the entire agreement between the parties, and it
   may be amended or supplemented only in writing, signed by
   the parties.

SEEN AND AGREED:

BROKER                              MANUFACTURER

By                                  THE JEJ FOOD COMPANY
                                    By: Steve Froemming
                                    Vice-president