IN THE UNITED STATES DICTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | | |
|---|---|---|
| JAIME GARCIA, <u>et al.</u>, | * | |
| Plaintiffs, | * | |
| v. | * | Case No.: B-01-103 |
| RONALD D. KIRSTIEN, <u>et al.</u>, | * | |
| Defendants | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF DEFENDANTS, KIRSTIEN AND ROTHSTEIN'S, MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Plaintiffs individually assert claims which can only be asserted derivatively by Chef Garcia, Inc. Plaintiffs therefore lack standing. Summary judgment is appropriate on that basis alone. Plaintiffs also assert claims against Defendants Ronald D. Kirstien and Harvey Rothstein (hereinafter, "Kirstien" and "Rothstein," respectively, or collectively "Defendants"), individually. Kirstien and Rothstein, however, did not have any individual involvement with Plaintiffs and/or Chef Garcia, Inc., and are therefore not proper party Defendants.

**UNDISPUTED FACTS**

a.   <u>Chef Garcia</u>

Plaintiffs, Jaime Garcia (sometimes referred to as "Mr. Garcia") and his wife, Elvira Garcia (collectively referred to as "Plaintiffs" or the "Garcias") were the founders, owners and operators of a Mexican Food manufacturing business known as the JEJ Food Company, Inc.,

which traded under the assumed name of "Chef Garcia" (hereinafter referred to as the "JEJ").[1] In 1990, Plaintiffs acquired McWax & Company.[2] McWax & Company and JEJ, were both in the business of manufacturing and selling Mexican foods to grocery stores and other institutions, under the name of Chef Garcia.

JEJ had been in operation since 1984.[3] The financial statement of JEJ for the year ending 1992 showed that Chef Garcia was operating at a net loss of $190,566.[4] The company continued to operate at a loss. According to Mr. Garcia, the "company being small and in need of cash, you know, it was not easy to recoup. That was one of the reasons to look for investors."[5] Beginning sometime in the early part of the 1990's, the Garcias began actively seeking a purchaser or investor to provide capital contributions to JEJ and McWax & Company. Their search came to an end, when Defendant Habeck introduced Kirstien and Rothstein to Mr. Garcia. Kirstien and Rothstein, through their interests in various entities, are investors in the food industry. Kirstien and Rothstein were limited partners in O'Stein Brothers Limited Partnership No. 4.[6]

  b. <u>The Investment In Chef Garcia, Inc.</u>

On or about September 30, 1994, O'Stein Brothers Limited Partnership No. 4 ("O'Stein Brothers"), a partnership formed pursuant to the Maryland Revised Uniform Limited Partnership Act, entered into a Letter Agreement whereby Plaintiffs agreed to sell stock of JEJ and McWax & Company to O'Stein Brothers in exchange for O'Stein Brothers investing a combination of

---

[1] Exhibit 1, Deposition of Jaime Garcia, at 12.
[2] *Id.* at 13
[3] *Id* at 12.
[4] *Id.* at 25. *See also,* Exhibit 2, Financial Statement.
[5] *Id.* at 33.
[6] Exhibit 3, Affidavit of Ronald Kirstien; Exhibit 4, Affidavit of Harvey Rothstein. *See also,* Exhibit 5, Limited Partnership Agreement. The Agreement provides at Paragraph 6.01

equity and subordinated debt to JEJ and McWax & Company.[7]  Kirstien and Rothstein did not individually enter into the Letter Agreement or invest in JEJ, McWax & Company, or Chef Garcia.[8]  The letter agreement was formalized in a Stock Purchase Agreement dated August 31, 1995.[9]  The Stock Purchase Agreement was between O'Stein Brothers and a newly formed entity incorporated in the State of Delaware, Chef Garcia, Inc. (hereinafter, "Chef Garcia" or the "Company").  O'Stein Brothers purchased both Preferred and Common Stock of Chef Garcia, Inc. for its investment in the company.  On that same day, Plaintiffs also entered into a Stock Purchase Agreement with Chef Garcia, Inc. for purchase of stock in the Company.[10]  In addition, Plaintiffs entered into Employment Agreements with Chef Garcia, Inc.[11]  Plaintiffs continued to run the day to day business and management of the Company.

O'Stein Brothers continued to infuse cash into Chef Garcia, Inc. in order to enable it to pay accounts payable and employees.  The company had obtained a loan from Riggs Bank, and after the O'Stein Brothers investment, obtained a loan from First National Bank of Maryland.  Chef Garcia, however, continued to operate at a loss.  Accordingly, on September 2, 1998, Chef Garcia filed a voluntary Chapter 11 Petition with the Bankruptcy Court.

    c.    <u>The Bankruptcy of Chef Garcia, Inc.</u>

Chef Garcia operated as a Debtor-in-Possession under bankruptcy protection until March 5, 1999, when the bankruptcy case was dismissed.  During the course of the Bankruptcy, Chef Garcia filed a motion to sell certain equipment, specifically the Chip Line, free and clear of

---

"**Liability and Rights of Limited Partners**.  Except as provided under the Act, the Limited Partners shall not be bound by, or be personally liable for, the expenses, liabilities or obligations of the Partnership or the General Partner, and each Limited Partner's liability…."

[7] Exhibit 6, Letter Agreement.
[8] *Id*.
[9] Exhibit 7, Stock Purchase Agreement between O'Stein Brothers Limited Partnership No. 4 and Chef Garcia.
[10] Exhibit 8, Stock Purchase Agreement between Jaime and Elvira Garcia and Chef Garcia.
[11] Exhibit 9, Employment Agreements.

3

liens.[12] Mr. Garcia, through his counsel, filed an objection to Chef Garcia's motion.[13] The Bankruptcy Court denied Mr. Garcia's objection and granted Chef Garcia's motion. Mr. Garcia therefore filed a motion for reconsideration of the Court's order granting Chef Garcia authority to sell certain equipment free and clear of liens, which was also denied.[14] Accordingly, Chef Garcia sold its Chip Line under the terms authorized by the Bankruptcy Court.

On December 23, 1998, having determined that it was in its best interest and in the best interest of its secured creditors, Chef Garcia filed a Motion for Authority to Sell by Public Auction Equipment, Furniture, and Intellectual Property, Free and Clear of Liens and Encumbrances and Remit Proceeds to Secured Creditors.[15] Two creditors filed oppositions to Debtor's motion. Mr. Garcia, however, did not file an opposition. The Bankruptcy Court granted Chef Garcia's motion for authority to sell its assets by public auction on January 25, 1999.[16] A public auction was held, and the equipment, furniture and intellectual property were sold pursuant to the Bankruptcy Court's order and the proceeds were disbursed to the secured lenders. The bankruptcy case was thereafter dismissed.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving parties are entitled to a judgment as a matter of

---

[12] Exhibit 10, Motion for Authority to Sell Certain Equipment Pursuant to Bankruptcy Code Section 363 (b) and 363 (f)(2) and to Remit the Proceeds to the First National Bank of Maryland.
[13] Exhibit 11, Memorandum in Support of Creditor's Objection to Motion for Authority to Sell Certain Equipment Pursuant to Bankruptcy Code Section 363(b) and 364 (f)(2) and to Remit the Proceeds to the First National Bank of Maryland.
[14] Exhibit 12, Memorandum in Support of Motion for Reconsideration of Order Granting Authority to Sell Certain Equipment Pursuant to Bankruptcy Code Section 363(b) and 363(f)(2) and to Remit the Proceeds to the First National Bank of Maryland.
[15] Exhibit 13, Motion for Authority to Sell by Public Auction Equipment, Furniture, and Intellectual Property, Free and Clear of Liens and Encumbrances and Remit Proceeds to Secured Creditors.

law." Fed. R. Civ. P. 56(c). A party moving for summary judgment must show that no genuine issues of material facts exist and that the evidence is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 252 (1986). The party moving for summary judgment has the initial burden of demonstrating the absence of any material issue of fact, but need not support its motion with affidavits or other material negating the non-moving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). When weighing the merits, a court must construe all of the evidence and reasonable inferences drawn therefrom in favor of the non-moving parties. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

Summary judgment should be granted only when it is clear that there are no disputes concerning either the facts of the controversy or the inferences to be drawn from those facts. *Morrison v. Nissan Motor Co.,* 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950). A mere scintilla of evidence in favor of the non-moving party will not suffice to raise a genuine issue of material fact. *Anderson*, 477 U.S. at 252, as cited in *Weigel v. NationsBank of Virginia*, 1994 LEXIS 14122 (D. Md. 1994). In other words, to withstand a motion for summary judgment, the non-moving party must proffer sufficient evidence on which a reasonable jury could find in its favor. *Anderson*, 477 U.S. at 248. Further, while all justifiable inferences from the evidence presented by a non-movant should be drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *Pippin v. Potomac Electric Power Co.*, 78 F.Supp.2d 487, 490 (1999) (internal citations omitted).

---

[16] Exhibit 14, Order Granting Debtor's Motion for Authority to Sell by Public Action Equipment, Furniture, and Intellectual Property Free and Clear of Liens and Encumbrances, Pursuant to 11 U.S.C. §§ 363(b) and 363(f)(2), and to Remit Proceeds to Secured Creditors.

**ARGUMENT**

I.   <u>Plaintiffs Fail To State A Claim Upon Which Relief May Be Granted</u>

Plaintiffs do not have standing to bring the instant lawsuit individually, nor can Plaintiffs sue Defendants, Kirstien and Rothstein, individually. "It is elementary that no action to recover damages for any wrong can be maintained unless brought in the name of the proper party plaintiff." *Danielwicz v. Arnold*, 769 A.2d 274, 286 (Md. 2001).

Plaintiffs' entire case hinges on their assertion that Defendants, Kirstien and Rothstein, were their partners. The undisputed evidence is that no partnership existed between Kirstien and Rothstein and the Garcias.[17] Kirstien and Rothstein were limited partners of O'Stein Brothers, which was an investor in Chef Garcia. There was no partnership or any other type of relationship between Kirstien and Rothstein, individually, and the Garcias, individually, or O'Stein Brothers and the Garcias individually. Accordingly, there is no confidential relationship between Kirstien and Rothstein and the Plaintiffs. Additionally, Kirstien and Rothstein do not owe Plaintiffs any fiduciary duties as they had no individual involvement with the investment in Chef Garcia. As there is no evidence of a partnership or confidential or fiduciary relationship between Kirstien and Rothstein and Jaime and Elvira Garcia, Plaintiffs entire case fails as a matter of law. Summary judgment is therefore proper in favor of Defendants, Kirstien and Rothstein.

Assuming, however, that Kirstien and Rothstein owed a duty to the corporation, Chef Garcia, as members of the Board of Directors, Plaintiffs' case still fails because any duty owed by Kirstien and Rothstein would be owed to Chef Garcia, and not to Plaintiffs individually. Therefore, any claim of breach of duty or wrongdoing belongs to the Company, not to Plaintiffs individually. Plaintiffs were shareholders of Chef Garcia. Taken down to its essence, Plaintiffs'

6

claim is that the Defendants harmed the business of Chef Garcia. In reality, Plaintiffs' claims, if properly asserted, would be that the value of their stock was diminished by the alleged acts of the Board of Directors. Such claims must be asserted by the Company or derivatively by a shareholder for its benefit and the benefit of all.

In *Miller v. Preston*, 199 A. 471 (Md. 1938), the defendants gained control of a corporation and drove it into bankruptcy. A shareholder, who was the president and a director of the corporation, filed suit against the individuals who gained control of the corporation complaining that the defendants had unlawfully conspired with each other to impoverish him, destroy his reputation, deprive him of his investment in the firm, and eliminate him from his executive position. *Id*. at 472. The Court did not find the allegations sufficient to sustain the cause of action and held that while "[t]he effect of all that the plaintiff relates in his declaration may have been as disastrous as he says, but, if so, his wrongs, if any, are those of a stockholder, which can only be enforced through a receiver, or, if he refuses to act, then by a stockholder for the benefit of all." *Id.* at 476. Likewise, in *Armstrong v. Frostie Co.*, 453 F.2d 914 (4th Cir. 1971), the court reiterated that injury to a corporation must be asserted by the corporation or derivatively by a stockholder for its benefit. *Id.* at 917. The *Armstrong* case adopted the holding in *Waller v. Waller*, 49 A.2d 449 (Md. 1946) which held as follows:

> It is a general rule that an action at law to recover damages for an injury to a corporation can be brought only in the name of the corporation itself acting through its directors, and not by an individual stockholder though the injury may incidentally result in diminishing or destroying the value of the stock. The reason for this rule is that the cause of action for injury to the property of a corporation or for impairment or destruction of its business is in the corporation, and such an injury, although it may diminish the value of the capital stock, is not primarily or necessarily a damage to the stockholder, and hence the stockholder's derivative right can be asserted only through the corporation. *Id.* at 452.

---

[17] See, Exhibits 3 and 4.

7

A "…stockholder cannot maintain an action at law against an officer or director of the corporation to recover damages for fraud, embezzlement, or other breach of trust which depreciated the capital stock or rendered it valueless." *Id.* Indeed, it has been held that a stockholder cannot sue individually to recover damages for injuries to the corporation even when the directors may have entered into an unlawful conspiracy for the specific purpose of ruining the corporation. *Danielewicz. v. Arnold,* 769 A.2d 274 (Md. 2001).

As the remedy sought by Plaintiffs is based upon an alleged injury to the company, Chef Garcia, and a resulting diminution of value of their stock, the action should have been brought derivatively by the shareholders, not by Plaintiffs individually. As Plaintiffs lack standing to assert the causes of action complained of, Plaintiffs' case fails as a matter of law and summary judgment is appropriate.

II. <u>Plaintiffs Breach of Confidential and Fiduciary Relationships count fails as a matter of law</u>

In Count I of the Amended Complaint, Plaintiffs assert that Defendants breached their alleged confidential and fiduciary relationships by:

a. breach of Employment Agreement
b. breach of Exoneration Agreements regarding Guarantees of Plaintiffs;
c. breach of Loan Agreements;
d. breach of Wage Agreements;
e. damage to future business prospects of Plaintiffs; and
f. damage to trade name and trademarks of Plaintiffs.[18]

a. <u>Plaintiffs Do Not Have Standing To Make The Assertions Under Count I of the Complaint</u>

The undisputed evidence is that Kirstien and Rothstein were not individual investors in Chef Garcia, and had no legally recognized relation with the Plaintiffs. Accordingly, Kirstien and Rothstein do not owe any confidential or fiduciary relations to the Plaintiffs. The undisputed

---

[18] Exhibit 15, Amended Complaint, ¶ 21.

8

evidence is that Plaintiffs entered into an Employment Agreement with Chef Garcia, Inc.[19] On August 31, 1995, Plaintiffs also entered into a Stock Purchase Agreement with Chef Garcia, Inc.[20] The Exoneration Agreement, Loan Agreements and Wage Agreements are allegedly contained within the Employment Agreement and/or the Stock Purchase Agreement.[21] Accordingly, any agreements entered into by Plaintiffs' were agreements with Chef Garcia, Inc., not Defendants Kirstien and Rothstein individually or O'Stein Brothers.[22] This evidence is further supported by the fact that Mr. Garcia filed a Proof of Claim with the Bankruptcy Court against Chef Garcia on November 23, 1998 for "Breach of the Employment Contract."[23]

As the agreements are between Plaintiffs and Chef Garcia, Inc., Plaintiffs cause of action should have been brought against Chef Garcia, not Defendants individually. Plaintiffs have failed to demonstrate how Defendants, Kirstien and Rothstein, would be personally liable for the acts of a corporation. As indicated above, Kirstien and Rothstein had no individual agreement or involvement with Chef Garcia. Kirstien and Rothstein were limited partners of O'Stein Brothers, which owned stock in Chef Garcia.

While Plaintiffs have set forth no evidence of a confidential or fiduciary relationship owed to them by Kirstien and Rothstein, to the extent that Plaintiffs claim that as members of the Board of Directors, Defendants caused Chef Garcia to breach the agreements, then Plaintiffs have no standing to bring these claims individually. In accordance with the well settled law stated above, such an action has to be brought derivatively by a shareholder or by the corporation, not individually. *Danielewicz. v. Arnold,* 769 A.2d 274 (Md. 2001).

---

[19] Exhibit 1 at 45; Exhibit 9.
[20] Exhibit 8.
[21] Exhibit 1 at 89.
[22] *Id*.
[23] Exhibit 16, Proof of Claim.

Plaintiffs also assert that Defendant's caused "damage to future business prospects of Plaintiffs."[24] Plaintiffs have failed both in the Amended Complaint and through discovery to provide any evidence to prove the manner in which their future business prospects have been damaged, or how Kirstien and Rothstein individually caused that harm. Plaintiffs' claim must fail for that reason alone. Moreover, Plaintiffs' claim fails again because Plaintiffs lack standing to bring such a claim. Plaintiffs' claim is based in part on their claim that Defendants are "improperly asserting ownership of trademarks and tradenames." As more fully discussed below, according to Mr. Garcia, the trademarks were owned by the company, not by him personally. Accordingly, this claim can only be brought derivatively and not individually. Any other claim for the alleged damage to future business prospects of Plaintiffs must also be brought derivatively as the claim is for a diminution of the value of his stock and/or damage done to Plaintiffs by Chef Garcia. Plaintiffs have put forth no evidence to demonstrate any harm done by Kirstien and Rothstein individually. *See*, *Miller v. Preston*, 199 A.471 (1938) (stating that an action brought by a shareholder, who was also a president and director of a corporation, claiming that the defendants after gaining control of the company impoverished him and destroyed his reputation, can only be enforced by shareholder derivatively). As Plaintiffs lack standing to assert the claims individually, Defendants are entitled to judgment as a matter of law.

      b.    <u>Defendants Have Improperly Asserted Ownership Of Trade Names and Trademarks</u>

Plaintiffs claim that Defendants are improperly asserting ownership of trade names and trademarks.[25] Plaintiffs also allege that Defendants have caused "damage to tradenames and trademarks of Plaintiffs."[26] A trademark is a "distinctive mark, motto, device, or emblem, which

---

[24] Exhibit 15 at ¶ 21
[25] Exhibit 15 at ¶ 17.
[26] Exhibit 15 at ¶ 21.

a manufacturer stamps, prints, or otherwise affixes to the goods he produces, so that they may be identified in the market, and their origin be vouched for.  Exclusive rights to use a trademark are granted by the federal government for ten years, with the possibility of additional ten year renewal periods."  BLACK'S LAW DICTIONARY (6th Ed.) at 1038; *see also*, 15 U.S.C.S. §1058.  Plaintiffs must prove four elements to demonstrate a protectable interest in the trademarks, including, "(1) conclusive evidence of the validity of the registered mark, (2) the registration of the trademark, (3) the ownership of the trademark, and (4) Plaintiffs' exclusive right to use the mark in commerce.  *Id.*  The test for trademark infringement requires the plaintiff to demonstrate "(1) the defendant's use in commerce, of a reproduction, counterfeit, copy or colorable imitation, (2) of a registered trademark, (3) that is likely to cause confusion, or to cause mistake, or to deceive."  *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 930 (4th Cir. 1995).   In order to prove that Defendants are improperly asserting ownership of trademark, Plaintiffs must demonstrate a protectable interest in the trademarks.

Mr. Garcia stated at his deposition that the trademarks belong to JEJ not to him individually.[27]  Plaintiffs have also never produced any evidence of registration of the trademarks which they claim are owned by them or JEJ.  In fact, on June 25, 1995, a memorandum regarding the availability of a trademark for "Chef Garcia" was provided to Mr. Garcia.[28]   There is no evidence of any further action being taken with regard to registering Chef Garcia as a trademark.  Plaintiffs have therefore failed to prove the essential element of a trademark infringement, the registration and ownership of the trademark.  Summary judgment is appropriate on that basis alone.

---

[27] Exhibit 1 at 64.
[28] Exhibit 17, Memorandum Dated June 29, 1995, marked as Defendant's Exhibit 11 at Mr. Garcia's deposition.

However, even assuming that such trademarks and tradenames existed, they belonged to the company, not the Plaintiffs individually. Mr. Garcia conceded this fact at his deposition when he stated that the trademarks were owned by JEJ. Therefore, Mr. Garcia lacks standing to bring an action for trademark infringement personally. This is another claim that belonged to Chef Garcia and can only be asserted derivatively.

      c.    <u>Maryland Law Does Not Recognize The Tort of Confidential and Fiduciary Relationships Where Other Traditional Remedies Provide Adequate Relief</u>

Plaintiffs assert in their Amended Complaint, that "Defendants, as Plaintiffs' partners, agents, and members of the Board of Directors, were accountable to Plaintiffs as fiduciaries" and that Defendants breached their confidential and fiduciary relationships. As noted above, Defendants Kirstien and Rothstein, individually, did not have any confidential or fiduciary relationship to the Plaintiffs individually. If there were any fiduciary duties owed, it was to Chef Garcia as Kirstien and Rothstein were members of the Board of Directors of Chef Garcia. However, Maryland law does not recognize the tort of confidential and fiduciary relationships where other traditional remedies provide adequate relief. The tort of breach of fiduciary duty was first recognized by the Maryland Court of Appeals in *Hartlove v. Md. School for Blind*, 111 Md.App. 310, 329 (1996), *vacated and remanded*, 344 Md. 740 (1997). However, in *Kann v. Kann,* 344 Md. 689, 713 (1997), the Maryland Court of Appeals expressly disapproved of *Hartlove.* The court held:

> . . . there is no universal or omnibus tort for the redress of breach of fiduciary duty by any and all fiduciaries. This does not mean that there is no claim or cause of action available for breach of fiduciary duty. Our holding means that identifying a breach of fiduciary duty will be the beginning of the analysis, and not its conclusion. Counsel will be required to identify the particular fiduciary relationship involved, identify how it was breached, consider the remedies available, and select those remedies appropriate to the client's problem.

*Id.* at 713.

Later cases have interpreted this holding from *Kahn*. *Bresnahan v. Bresnahan*, 115 Md. App. 226 (1997), the court's *dicta* is extremely persuasive regarding the meaning of the *Kahn* decision on the creation of a breach of fiduciary tort.[29] In *Bresnahan*, the tort for breach of fiduciary duty was the only count that went to the jury. The court noted, "[a]n initial concern is that, at the time of the verdict in this case, the tortious cause of action upon which appellant relied and prevailed, had not yet been recognized in Maryland." *Id*. at 231-32.[30] The court further stated that *Kahn* restated the law as it was prior to *Hartlove*, "identify a fiduciary relationship, identify the breach, determine what causes of action are supported by the breach of fiduciary duty, and select the cause of action that best serves the wronged party." *Id.* at 234-35. The court concluded by saying "[I]n light of *Kann*, it is doubtful that *Hartlove*'s creation of an independent tort of breach of fiduciary tort has survived." *Id.* at 235. Had the issue of the validity of the breach of fiduciary tort been preserved, the court found it very possible that it may have been required to reverse the entire verdict and decision in light of *Kann. Id*.

In *Geduldig v. Posner*, 129 Md. App. 490 (1999), the Maryland Court of Special Appeals refused to recognize the tort of breach of confidential and fiduciary relationship because the claims under the tort were duplicative of the independent claims based on fraud. The court concluded that the tort of breach of confidential and fiduciary relationship would have been recognized if "it were necessary to provide complete, but traditional, relief." *Id.* at 508-09. Where traditional remedies provide a sufficient remedy to correct the pecuniary loss, the tort will not be recognized. *Id*. at 509. Whether the tort is applicable to a particular case is dependent upon the facts of that case. *Id.*

---

[29] The issue of the validity of the tort breach of fiduciary duty had not been properly preserved during the trial.
[30] *Hartlove* was decided after the jury trial in the Circuit Court for Prince George's County in *Bresnahan*.

This Court has also viewed the tort of breach of fiduciary duty skeptically. In *Kerby v. Mortgage Funding Corp.*, 992 F.Supp. 787, 803 (D.Md. 1998), this Court, relying on *Kann,* dismissed a breach of fiduciary duty count. The *Kerby* court stated that Maryland recognizes no tort for the breach of fiduciary duty, at least in situations where other remedies exist, such as they do here in light of Plaintiffs' other counts. *Id.*

Maryland does not recognize the tort of breach of fiduciary duty in contexts, such as the one here, where a plaintiff has available other tort remedies. Plaintiffs, as shareholders certainly could have brought a derivative action on behalf of the corporation, which would have provided sufficient remedy for the Plaintiffs. As Maryland does not recognize breach of fiduciary duty as a separate tort when other remedies are available, Plaintiffs have failed to provide any evidence supporting their individual claim for breach of confidential and fiduciary duty, summary judgment is proper in favor of the Defendants, Kirstien and Rothstein.

### III.  Unfair Competition and Misappropriation

Plaintiffs' next claim asserts that the Defendants misappropriated the inventory and assets of Plaintiffs "to their own use and selling and distributing products under Plaintiffs' name."[31] Misappropriation is a new concept of unfair competition. *GAI Audio of New York, Inc. v. Columbia Broadcasting System, Inc.*, 340 A.2d 736 (Md. 1975). The elements of a misappropriation cause of action are: (1) time, labor, and money spent in the creation of the thing misappropriated, (2) a competitive relationship between plaintiff and defendant and (3) commercial damage to plaintiff. *Id.* at 747. The Ninth Circuit's view of the common law claim of misappropriation is that "state law claims that rely on the misappropriation branch of unfair competition are preempted." *Plana v. Shoresales, LLC*, 2003 U.S. Dist. LEXIS 13733 (D.Md. 2003). As set forth below, Plaintiffs do not have standing to assert a claim of misappropriation,

14

and even if they did have standing, which Defendants claim they do not, Plaintiffs cannot establish the elements of misappropriation

### a. The Inventory And Assets Do Not Belong To Plaintiffs

To the extent that Plaintiffs claim that Defendants misappropriated the inventory and assets of Chef Garcia, Inc., such a claim can only be pursued derivatively. Plaintiffs do not have standing to assert individually that the inventory and assets of the Company were misappropriated. In addition, Plaintiffs have failed to establish the elements of misappropriation. Plaintiffs have failed to show a competitive relationship between themselves and Defendant. Additionally, the inventory and assets of Chef Garcia do not belong to the Plaintiffs. Thus, Plaintiffs will not be able to establish commercial damage to them individually. While Defendants contend that no harm was done to the Company, if the assets and inventory of the Company were misappropriated, the commercial damage would be to the corporation, not to the Plaintiffs individually. Moreover, Plaintiffs have failed to provide any evidence of how Defendants misappropriated any assets or inventory of Plaintiffs. O'Stein Brothers No. 4, of which Kirstien and Rothstein were limited partners, provided a large infusion of cash into Chef Garcia. Such capital contributions allowed Chef Garcia to purchase, among other things, inventory and assets in order to continue operation. As Plaintiffs have failed to establish the elements of misappropriation and have failed to show how Defendants misappropriated their assets, summary judgment is appropriate in favor of Defendants.

### b. Plaintiffs' Failure To Challenge the Sale of Chef Garcia's Assets at the Bankruptcy Sale Bars Them From Claiming That The Assets Were Misappropriated

To the extent that Plaintiffs' misappropriation count is based upon the sale of the assets of Chef Garcia through the Bankruptcy Court, Plaintiffs claims are barred by the doctrine of *res*

---

[31] Exhibit 15 at ¶ 23 – 24.

*judicata.* The undisputed evidence is that Plaintiffs were aware of and participated in Chef Garcia's Bankruptcy proceeding. Mr. Garcia testified at deposition that he was personally represented during the bankruptcy proceeding and that he received notices of the bankruptcy pleadings.[32] Indeed, Mr. Garcia filed an objection to Chef Garcia's motion for authority to sell the "Chip Line."[33] After Mr. Garcia's objection was denied, he filed a motion for reconsideration of order.[34] After the sale of its Chip Line, on December 23, 1998, Chef Garcia filed a Motion for Authority to Sell by Public Auction Equipment, Furniture, and Intellectual Property, Free and Clear of Liens and Encumbrances and Remit Proceeds to Secured Creditors.[35] While several creditors filed objections to Chef Garcia's motion to sell its equipment, furniture and intellectual property, Plaintiffs did object to the sale. The Bankruptcy Court granted Chef Garcia's motion to sell its assets by public auction.[36]

Plaintiffs now are asserting claims which should have been asserted in the Bankruptcy Court. Plaintiffs are therefore barred from claiming that the assets of Chef Garcia were misappropriated because the assets were sold at an auction during the bankruptcy proceeding and Plaintiffs did not object to the sale. That issue was litigated in the Bankruptcy Court and a final order was issued that Court. Plaintiffs should have and could have asserted a claim in the Bankruptcy Court. This Court in *Schwartz v. United States*, 745 F.Supp. 1132 (D.Md. 1990) stated that "[u]nder the doctrine of *res judicata*, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." *Id.* at 1133. Thus, the court considers the following elements in a *res judicata* analysis:

---

[32] Exhibit 1 at 100. Plaintiffs' counsel further clarified by stating, "I mean there is no question that we participated in the bankruptcy and filed various things, including claims." *Id.* at 100-01.
[33] See, Exhibit 11.
[34] *See*, Exhibit 12.
[35] *See*, Exhibit 13.
[36] *See*, Exhibit 14.

1) that a court of competent jurisdiction entered a valid final judgment on the merits in the earlier suit; 2) that the later suit alleges the same cause of action as the earlier suit; and, 3) that the parties to the later suit are the same as or in privity with those in the earlier suit. *Id.*

In addition, "the doctrine bars litigation of all claims available to the parties in the earlier litigation whether or not asserted or determined in the prior proceeding." *Milton v. Office of Personnel Management*, 1999 U.S. Dist. LEXIS 20101 (D.Md. 1999) (internal citations omitted).

In the case *sub judice*, the elements of *res judicata* are clearly present. The Plaintiffs were involved in and filed certain pleadings in the Bankruptcy Court in the Chef Garcia bankruptcy. The Defendants were members of the board of directors of Chef Garcia. Thus, the parties are the same or in privity with those in the bankruptcy proceeding. The claims are the same claims which could have been asserted by way of an opposition to Chef Garcia's motion to sell its assets at an auction, and the Bankruptcy Court entered a final Order. Accordingly, Plaintiffs are barred from asserting their claims of misappropriation of the assets by the doctrine of *res judicata.*

    IV.    <u>Plaintiffs Constructive Fraud Count Fails As A Matter Of Law</u>

Constructive fraud is defined as:

> a breach of legal or equitable duty which, irrespective of the moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests. Neither actual dishonesty of purpose nor intent to deceive is an essential element of constructive fraud.

*American Tank Transport, Inc. v. First People's Community Federal Credit Union, et al.*, 1995 U.S. Dist. LEXIS 1307 (D.Md. 1995). *See*, *Scheve v. McPherson*, 408 A.2d 1071 (Md. 1979).

Plaintiffs assert that "[a]mong the fiduciary duties owed to Plaintiffs was the duty to act in the best interest of Plaintiffs, the businesses, and their creditors, and to prevent the destruction

17

of the businesses and Plaintiffs' livelihood."[37]  Plaintiffs assert a classic derivative action; alleged harm to the business and a diminution of the value of Plaintiffs stock and resulting alleged destruction of Plaintiffs livelihood.  *See, Danielewicz. v. Arnold,* 769 A.2d 274 (Md. 2001) and *Waller v. Waller,* 49 A.2d 449 (Md. 1946).  Plaintiffs' only remedy would have been a derivative lawsuit, which Plaintiffs failed to plead.  Thus, Plaintiffs individually have no standing to assert constructive fraud against Defendants Kirstien and Rothstein.

Additionally, Plaintiffs' wrongfully assert that Defendants were partners and agents of Plaintiffs.  As noted above, Defendants individually did not have any business relations with Plaintiffs or with Chef Garcia.[38]  O'Stein Brothers, of which Kirstien and Rothstein were limited partners, were investors and stockholders of Chef Garcia.  Neither Defendants, nor O'Stein Brothers, were partners with Plaintiffs or agents of Plaintiffs.  Accordingly, not only do Plaintiffs not have standing to assert this claim, but they have asserted constructive fraud against improper persons and fails as a matter of law.

     V.     <u>Plaintiffs Claims Are Barred By The Statute Of Limitations</u>

Section 5-101 of the Courts and Judicial Proceedings provides: "A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced."  Maryland follows the "discovery rule" in civil actions, whereby an action is deemed to accrue on the date when the plaintiff knew, or with due diligence, reasonably should have known of the wrong.  *Doe v. Archdiocese of Wash.*, 689 A.2d 634 (Md. 1997).

Plaintiffs filed the instant action on January 12, 2001.  The question therefore is when the Plaintiffs knew, or with due diligence, reasonably should have known of the alleged wrongs

---

[37] Exhibit 15 at ¶ 27.
[38] Exhibit 1 at 45.

18

claimed. In Answers to Interrogatory No. 3, Plaintiffs complain of alleged actions and wrongs by the Defendants in 1997. The latest claim was detailed in a letter dated January 8, 1998.[39] According to Plaintiffs own discovery responses, Plaintiffs knew or should have known of the alleged wrongdoing throughout 1997, but filed the instant action almost four years later. Accordingly, Plaintiffs claims are barred by the statute of limitations.

## CONCLUSION

The undisputed evidence is that Defendants Kirstien and Rothstein did not owe any confidential or fiduciary duty to the Plaintiffs individually. Kirstien and Rothstein were likewise not Plaintffs' partners or agents. Kirstien and Rothstein were limited partners of O'Stein Brothers Limited Partnership No. 4, which purchased stock in Chef Garcia in exchange for providing capital to Chef Garcia. Kirstien and Rothstein did not invest in Chef Garcia individually. Thus, Plaintiffs entire case fails as a matter of law because it is filed against Kirstien and Rothstein individually, and it is entirely premised on his assertion that Kirstien and Rothstein were his partners and agents. To the extent that Kirstien and Rothstein owed any duty, it was to Chef Garcia through their role as members of the Board of Directors. Accordingly, any claim of breach of that duty can only be asserted derivatively by a shareholder, not the Plaintiffs individually. Plaintiffs therefore have no standing to assert these claims. Plaintiffs claim as to misappropriation of the assets of Chef Garcia could have been properly pled in the Bankruptcy Court. Plaintiffs failure to so plead bars this instant action based on *res judicata.*

Finally, all alleged wrongs complained of occurred in 1997. Plaintiff knew or should have known of the alleged acts in 1997, but did not file this lawsuit until January 12, 2001, past the three year statute of limitations. Accordingly, for all these reasons, Defendants Kirstien and Rothstein respectfully request that this Court grant summary judgment in their favor.

---

[39] Exhibit 18, Plaintiffs' Answers to Interrogatories No. 3.

Respectfully submitted,

_____/S/_____
Craig D. Roswell
Bar No. 9529
Niles, Barton & Wilmer, LLP
111 South Calvert Street, Suite 1400
Baltimore, Maryland 21202
(410) 783-6300
Attorney for Defendants Ronald D. Kirstien
and Harvey Rothstein