<u>**LETTER AGREEMENT**</u>

This Letter Agreement is made this 30th day of September, 1994, by and between O'Stein Bros. Limited Partnership No. 4, JEJ Food Company, Inc., McWax & Co., Jaime Garcia and Elvira Garcia.

WHEREAS, O'Stein Bros. Limited Partnership No. 4 (hereinafter "O'Stein No. 4") wishes to invest a combination of equity and subordinated debt in JEJ Food Company, Inc. (hereinafter "JEJ") and McWax & Co. (hereinafter "McWax") in the amount of $10,000.00 in equity and $415,000.00 in subordinated debt bearing interest at 9½% per annum, and

WHEREAS, Jaime Garcia and Elvira Garcia, his wife, are the sole stockholders in JEJ and McWax and wish to sell stock in JEJ and McWax to O'Stein No. 4 in consideration for the investment set forth above, and

WHEREAS, all parties intend to enter into a Stock Purchase and Redemption Agreement in substantially the form as attached as <u>Exhibit A</u>, but wish and declare themselves to be legally bound by the obligations, warrants and covenants set forth below;

Now, THEREFORE, in consideration of the exchange of promises and of valuable consideration which each party agrees is satisfactory, all parties do hereby agree and contract as follows:



A.  *Obligations of O'Stein No. 4*

1.  Funding for JEJ and McWax

O'Stein No. 4 shall, upon execution of this document, immediately transfer or provide evidence of a transfer to Riggs National Bank $60,000.00 to fund the September 30, 1994 payroll obligation of JEJ. Further, O'Stein No. 4 shall transfer to the accounts of trade creditors of JEJ and McWax approximately $86,000.00 in satisfaction of outstanding and overdue claims, so that JEJ and McWax may continue to receive manufacturing supplies and inventory to continue to produce salable goods.

Beginning October 3, 1994, O'Stein No. 4 will review with Jaime Garcia all trade payables and inventory orders and will transfer or provide sufficient funds to satisfy such payables or ensure the delivery of such inventory as may be mutually agreed upon. O'Stein No. 4's obligation to provide such further funding shall be contingent upon the negotiation and execution of a definitive Stock Purchase and Redemption Agreement, in substantially the form attached as *Exhibit A*. In no event shall the obligation of O'Stein No. 4 to fund liabilities of JEJ and McWax exceed a total of $425,000.00.

2.  Good Faith Negotiation

O'Stein No. 4 shall negotiate the terms and conditions of the Stock Purchase and Redemption Agreement with Jaime Garcia

and Elvira Garcia in good faith, and will use good faith in negotiating the employment agreements for Jaime Garcia and Elvira Garcia, as well as in negotiating the form of the Subordinated Debt Note.

O'Stein No. 4 further agrees to use its good faith efforts to keep in place the current Riggs revolving financing or to obtain replacement bank financing <u>not</u> guaranteed by O'Stein No. 4 or any partner thereof.

B. *Obligations of Jaime Garcia and Elvira Garcia*

1. <u>Delivery/Surrender of Stock in JEJ and McWax</u>

Jaime Garcia and Elvira Garcia hereby agree to take whatever steps may be necessary, including the execution of affidavits of lost shares in whatever form as may be required, to arrange for the delivery and surrender of all outstanding shares in JEJ and McWax to each company, respectively, and further agree to cooperate in the issuance of such shares by each company as is set forth below in Sections C and D.

2. <u>Cooperation with Terms Imposed by Riggs National Bank</u>

Jaime Garcia and Elvira Garcia agree to fully cooperate with all terms and obligations imposed by Riggs National Bank in exchange for its forbearance in declaring a default and demanding payment under the terms of certain financing documents between

Riggs National Bank and JEJ and McWax, which documents are guaranteed by Jaime Garcia and Elvira Garcia.

3. <u>Good Faith Negotiations; Conduct of Business</u>

Jaime Garcia and Elvira Garcia agree to use good faith in negotiating the terms and conditions of a Stock Purchase and Redemption Agreement with O'Stein No. 4. Further, Jaime Garcia and Elvira Garcia agree to use good faith in negotiating the terms and conditions of employment contracts with JEJ and O'Stein No. 4, and the Subordinated Debt Note.

Jaime Garcia and Elvira Garcia agree to conduct business in the ordinary course and to use their customary diligence and expertise while this Agreement is in effect.

c. *Obligations of JEJ*

1. <u>Cancellation of Existing Stock; Issuance of New Stock</u>

Upon the funding of any obligation of JEJ by O'Stein No. 4, JEJ agrees that within two weeks of such funding, it shall cancel all existing and outstanding stock (whether or not delivered or surrendered by Jaime Garcia or Elvira Garcia) and to issue new stock in a manner consistent with IRS Code §354. O'Stein No. 4 shall be entitled to receive from JEJ voting stock representing 65% of all voting rights (on a fully diluted basis) and equity stock representing 50% of all equity rights (on a fully diluted basis). Jaime Garcia and Elvira Garcia shall be entitled to receive from

JEJ voting stock representing 35% of all voting rights (on a fully diluted basis) and equity stock representing 35% of all equity rights (on a fully diluted basis). Jaime Garcia will further be entitled to receive up to an additional 15% of equity stock (on a fully diluted basis) upon the satisfaction of certain terms and conditions in his employment contract and in the absence of any default or early termination of financing in the financing provided by Riggs National Bank, provided, however, that if O'Stein No. 4 is required to replace the Riggs revolving financing, then all equity stock bonuses shall be suspended until such time as the revolving financing is replaced without personal guarantees from any partner of O'Stein No. 4 (provided further, that if JEJ or McWax is sold during the period of suspension of the equity bonuses, then Jaime Garcia will be entitled to receive an additional 7½% of the net proceeds of the sale of the equity in either or both JEJ and McWax).

2. <u>Cooperation with Riggs National Bank</u>.

JEJ agrees to fully cooperate with Riggs National Bank and any terms or obligations which may be imposed by Riggs National Bank as a condition of its forbearance from declaring a default and demanding payment under any financing provided to JEJ.

3. <u>Good Faith Negotiations; Conduct of Business</u>

JEJ agrees to use good faith in negotiating the terms and conditions of a Stock Purchase and Redemption Agreement with O'Stein No. 4, and the terms and conditions of the Subordinated Debt Note.

D. *Obligations of McWax*

1. <u>Cancellation of Existing Stock; Issuance of New Stock</u>

Upon the funding of any obligation of McWax by O'Stein No. 4, McWax agrees that within two of such funding it shall cancel all existing and outstanding stock (whether or not delivered or surrendered by Jaime Garcia or Elvira Garcia) and to issue new stock in a manner consistent with IRS Code §354. O'Stein No. 4 shall be entitled to receive from McWax voting stock representing 65% of all voting rights (on a fully diluted basis) and equity stock representing 50% of all equity rights (on a fully diluted basis). Jaime Garcia and Elvira Garcia shall be entitled to receive from McWax voting stock representing 35% of all voting rights (on a fully diluted basis) and equity stock representing 35% of all equity rights (on a fully diluted basis). Jaime Garcia will further be entitled to receive up to an additional 15% of equity stock (on a fully diluted basis) upon the satisfaction of certain term and conditions in his employment contract and in the absence of any default or early termination of financing in the financing provided by Riggs National Bank, subject further to the conditions expressed in Section C.1. above.

2. <u>Cooperation with Riggs National Bank</u>

McWax agrees to fully cooperate with Riggs National Bank and any terms or obligations which may be imposed by Riggs National Bank as a condition of its forbearance from declaring a default and demanding payment under any financing provided to McWax.

3. <u>Good Faith Negotiations; Conduct of Business</u>

McWax agrees to use good faith in negotiating the terms and conditions of a Stock Purchase and Redemption Agreement with O'Stein No. 4, and the terms and conditions of the Subordinated Debt Note.

E. *Enforcement of Obligations*

1. <u>Specific Performance</u>

All parties hereto agree that the business of JEJ and McWax is unique and the performance of each party's obligations under this Agreement is essential to the continued existence and success of JEJ and McWax. Accordingly, all parties hereby expressly consent to the issuance of an affirmative injunction mandating specific performance of their obligations under this Agreement.

2. <u>Governing Law; Choice of Forum</u>

This Agreement shall be governed by and construed in accordance with the laws of the State of Maryland, without regard

to principles of conflicts of law or choice of law which would result in the application of the laws of any jurisdiction other than the State of Maryland.

All parties to this Agreement hereby consent and stipulate to the jurisdiction of the Circuit Court for Anne Arundel County, Maryland as the sole forum for any dispute or legal action concerning or arising out of this Agreement. *ALL PARTIES HEREBY EXPRESSLY WAIVE AND RENOUNCE ANY RIGHT TO TRIAL BY JURY OF ANY DISPUTE OR LEGAL ACTION ARISING OUT OF THIS AGREEMENT.*

F.  *Miscellaneous*

1.  Expenses

All parties agree that professional fees and other expenses relating to this transaction shall be treated as trade payables but shall be paid at the sole discretion of O'Stein No. 4. Any professional fees or expenses paid by O'Stein No. 4 shall be credited against any payment or funding obligation of O'Stein No. 4.

2.  Negotiation with Riggs National Bank

JEJ, McWax, Jaime Garcia and Elvira Garcia hereby agree and authorize O'Stein No. 4 and/or its representatives and agents to negotiate a forbearance agreement and to renegotiate the financing documents with Riggs National Bank on behalf of JEJ and McWax.

**AS WITNESS THE HANDS AND SEALS OF THE PARTIES SET FORTH ON THE DAY AND DATE FIRST WRITTEN ABOVE.**

*O'STEIN BROS. LIMITED PARTNERSHIP NO. 4*

By: _____ (SEAL)
Harvey Rothstein
President, O'Stein Bros. Inc.
Its Managing General Partner


_____ (SEAL)
Jaime Garcia, Individually


_____ (SEAL)
Elvira Garcia, Individually


*JEJ FOOD COMPANY, INC.*

By: _____ (SEAL)
Jaime Garcia, President


*McWAX & CO.*

By: _____ (SEAL)
Jaime Garcia, President


croft14:davco.1