## EMPLOYMENT AGREEMENT

THIS EMPLOYMENT AGREEMENT (the "Agreement") is made by and between Jaime Garcia ("Employee") and JEJ Food Company and McWax and Co., both Virginia corporations and their parent, Chef Garcia, Inc., a Delaware corporation (collectively, "Employer").

IN CONSIDERATION of the premises, the covenants set forth herein, and other consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree that Employer hereby employs Employee and Employee accepts employment by Employer, subject to the terms and conditions set forth below:

1. <u>Term</u>.

   1.1. The term of this Agreement (the "Term") shall commence on the Effective Date, as hereinafter defined, and, unless terminated pursuant to Section 9 hereof, shall continue for three (3) years from the Effective Date. Thereafter, this Agreement may be terminated by either party, with or without cause upon thirty (30) days written notice to the other party.

   1.2. The term "Effective Date", as used in this Agreement, shall mean the 31st day of August, 1995 which is the date of Closing under two Stock Purchase Agreements by and among, respectively, O'Stein Brothers Limited Partnership No. 4, Jaime Garcia, Elvira Garcia and Chef Garcia, Inc.

   1.3. In the event of the termination of the Employee's employment, the Employer shall have no further obligation to pay any further compensation to the Employee, except to pay all monies owed to Employee, and to take all commercially reasonable efforts to relieve Employee of company liabilities prior to the last day of employment.

2. <u>Compensation</u>. For all services rendered by Employee under this Agreement, Employee shall receive compensation (the "Compensation") as follows:

   2.1 <u>Base Salary</u>. During the term of this Agreement, Employee shall receive a salary based on One Hundred Twenty-Three Thousand Fifty-Two Dollars and Eighty Cents ($123,052.80) per annum, plus transportation and business expenses as may reasonably be incurred.

   2.2 <u>Payment of Compensation</u>. Salary shall be paid equal installments, payable no less frequently than monthly.

   2.3 <u>Fringe Benefits</u>. Subject to Employee's insurability, Employee shall be entitled to participate in such medical and accident and health plans, and pension and profit sharing plans and other fringe benefit plans, in accordance with their respective terms, as Employer shall make available to its executive officers from time to time. An incentive bonus/profit sharing plan, as may reasonably be adopted by the

EXHIBIT 9

Board of Directors, will also be provided to Employee upon the Employer's achievement of a positive net worth and sustained positive cash flow for a six month period.

3. <u>Deductions</u>. Employer is authorized to deduct from the actual compensation of Employee such sums as may be required to be deducted or withheld under the provisions of any law now in effect or hereafter put into effect during the term of this Agreement, including, but not limited to, social security and unemployment and income withholding taxes.

4. <u>Duties</u>. During the Term the Employee shall serve as President of the Employer and shall be responsible for all aspects of the day-to-day operation of the Employer's business. It is specifically understood and agreed between the parties that Employee shall devote, with undivided attention and loyalty, his full time, energies and efforts to the performance of such duties until the end of the Term.

5. <u>Disclosure of Information</u>. As partial consideration for the Compensation, the Employee does hereby agree that the Employee will not at any time during his employment by the Employer or at any time thereafter, either directly or indirectly, disclose, communicate, divulge, furnish or otherwise make accessible or available, in whole or in part, to any person, firm, company, corporation, partnership, joint venture or any other entity, or use in any fashion, other than in the faithful discharge and performance of the duties and responsibilities of Employee for the Employer, any confidential information, material or matter relating to the business of, or any other trade secrets of, the Employer or any firm, company, corporation, partnership, joint venture or any other entity related to the Employer (hereinafter the "Employer's Affiliates") obtained or acquired while in the employ of the Employer. Both the Employee and the Employer hereby specifically acknowledge and agree that any information concerning (a) the business operation or methods of the Employer and the Employer's Affiliates, (b) the customers or clients of the Employer and the Employer's Affiliates (including customer lists), (c) the past, present or future research done by the Employer and the Employer's Affiliates respecting the business, customers or service areas of the Employer and Employer's Affiliates, and (d) any method or procedure relating to or pertaining to projects developed (including bidding methods and procedures) by the Employer and the Employer's Affiliates or contemplated by the Employer and the Employer's Affiliates, are of material importance and significance to the business of the Employer and the Employer's Affiliates. Accordingly, the Employee and the Employer agree that all of the above are, to the maximum extent permitted by law, to be regarded as information or material which is of a confidential nature; that trade secrets of the Employer or the Employer's Affiliates shall be deemed to include any and all processes, computer software or hardware, equipment, machinery, devices, techniques, methods, designs, inventions, innovations, materials, formulas, expertise and the like (whether patentable or not) used by the Employer or the Employer's Affiliates in the conduct of its or their business, and all data, know-how, drawings, plans, written instructions or any other form of information whatsoever relating or pertaining thereto or to any other aspect of the business of the Employer or the Employer's Affiliates, which are not in the public domain or not generally known throughout the industry of which the Employer or the Employer's

Affiliates are a part; that any and all such confidential information, material or matter, or trade secrets, from time to time disclosed, divulged, communicated, furnished or made available to Employee is solely for the purpose of enabling Employee to perform and discharge the duties and responsibilities of Employee hereunder; that no such disclosure, divulgence, communication or the like shall in any manner whatsoever be deemed or construed to derogate from or affect any of the provisions set forth hereinabove in any manner whatsoever; and that it is the specific intent of both the Employer and Employee that each and all of the provisions set forth hereinabove shall be valid and enforceable as specifically set forth hereinabove. If it shall be judicially determined that any of the provisions set forth hereinabove shall not be valid or enforceable as specifically set forth, such provision shall not be declared invalid but rather shall be modified in such a manner so as to result in the same being valid and enforceable to the maximum extent permitted by law. In the event of a breach or a threatened breach by Employee of any of the provisions of this section, in addition to any other remedies it may have, the Employer may obtain injunctive relief in any court of appropriate jurisdiction to enforce this Section.

6. <u>Return of Confidential Materials</u>. As partial consideration for the Compensation, the Employee hereby covenants that contemporaneous with the termination of his employment with the Employer for any reason whatsoever, any and all materials containing confidential information including, but not limited to, documents, drawings, memoranda, notes, notebooks, customer lists, reports, studies, specifications, charts, graphs, descriptions, instructions, recordings, photostats, spread sheets, computer printouts, software, programs, materials contained in any storage data retrieval system and any and all other sources of confidential information whatsoever, whether prepared by the Employee or not, will be left with, or returned to, the Employer. The Employee further covenants that in the event of any such termination, he will not, either directly or indirectly, copy, or cause to be copied, photocopied, mimeographed, replicated, transcribed, translated, reprinted, transposed, transliterated, recorded or otherwise duplicated or reproduced using any method, process or technique whatsoever any of the confidential information to be left with, or returned to, the Employer.

For the purposes of this Section, "confidential information" shall mean any and all information disclosed to, learned by or otherwise known to the Employee as a consequence, whether directly or indirectly, of his employment with the Employer which is not generally known in the industry in which the Employer or the Employer's Affiliates are or may become engaged, concerning the Employer's or Employer's Affiliates' products, processes, techniques, methods, innovations, materials, expertise, know-how and the like (whether patentable or not) relating to the past, present or prospective research, development, invention, manufacturing, purchasing, selling, accounting, engineering, marketing, management, merchandising, customers, service areas and other methods or procedures used in the course of conduct of the business of the Employer or the Employer's Affiliates. The Employer and the Employee hereby further agree that it is the specific intent of both the Employer and the Employee that each and all of the provisions set forth hereinabove shall be valid and enforceable as specifically set forth. If it shall be judicially determined that any of the provisions set forth hereinabove shall not be valid or enforceable as specifically set forth, such provisions shall not be declared invalid but

rather shall be modified in such a manner so as to result in the same being valid and enforceable to the maximum extent permitted by law. In the event of a breach or a threatened breach by the Employee of any of the provisions of this Section, in addition to any other remedies it may have, the Employer may obtain injunctive relief in any court of appropriate jurisdiction to enforce this Section.

       7.    Restrictive Covenant. As partial consideration for the Compensation, the Employee does hereby further specifically covenant and agree with the Employer that the Employee:

       (a) shall not directly or indirectly (whether as an officer, director or employee of, owner of, partner of or in, participant of or in, consultant or advisor to or for, or the source of any financial interest whatsoever in, any firm, company, corporation, partnership, joint venture or any other entity whatsoever) attempt to engage in or engage in any business activity or endeavor with any of the Employer's customers who has been such customer during any of the period during which the Employee shall have been in the employ of the Employer which is similar to any business activity or endeavor engaged in by the Employer or the Employer's Affiliates with such customer during any of the period during which the Employee shall have been in the employ of the Employer, for a period of two (2) years from and after the date on which the Employee ceases to be in the employ of the Employer; and

      (b) shall not directly or indirectly, for a period of two years as aforesaid in Paragraph (a) of this Section, attempt to engage in or engage in any business activity or endeavor which is similar to or competitive with any business activity or endeavor in which the Employer engaged at any time during the period of time of two (2) years prior to the date on which the Employee ceases to be in the employ of the Employer, in the States of Maryland, Delaware, Virginia and the District of Columbia or in any other state, commonwealth, district, territory or any other constituent province or possession of the United States or any foreign country in which, the Employer or the Employer's Affiliates shall, on the date on which the Employee ceases to be in the employ of the Employer, be engaged in business. This restrictive covenant does not apply to any restaurant business conducted by Jaime Garcia, and the operation of a restaurant or food service facility is specifically exempted from this restriction.

     Each of the Employer and the Employee does hereby acknowledge and agree that none of the time span, scope or area covered by the within restrictive covenant is or are unreasonable, and that it is the specific intent of both the Employer and the Employee that each and all of the restrictive covenants set forth hereinabove shall be valid and unenforceable as specifically set forth hereinabove to the fullest possible extent. If it shall be judicially determined that any of the restrictive covenants herein shall not be valid or enforceable as specifically set forth hereinabove, such restrictive covenants shall not be declared invalid but rather shall be modified in such manner so as to result in the same being valid and enforceable to the maximum extent permitted by law. It is further agreed and understood that, because of the highly confidential and secretive nature of the Employer's business, in the event of any violation

by the Employee of the preceding provisions of this Section, the Employer may, in addition to any other remedies which it may have, obtain injunctive relief in any court of appropriate jurisdiction to enforce this Section.

8. Early Termination.

8.1 At its option and upon the delivery of written notice, Employer may terminate Employee's employment under this Agreement under the following circumstances:

(a) The substantial breach of any representation or warranty made by Employee in the Stock Purchase Agreements referenced above;

(b) The substantial breach by Employee of any covenant or condition of this Agreement; or

(c) The substantial failure of the Employee to carry out the duties of the Employee to the Employer hereunder, through neglect, carelessness or other conduct of the Employee.

8.2 If Employee shall fail or be unable to perform the services required under this Agreement, because of any physical or mental infirmity, and such failure or inability shall continue for three (3) consecutive months or for six (6) months during any consecutive twelve (12) month period, Employer may terminate this Agreement after delivering of thirty (30) days written notice of such termination to Employee.

9. Miscellaneous.

9.1 Waiver of Breach. The waiver by either party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by either party.

9.2 Notices. Any notice required or permitted to be given under this Agreement shall be sufficient if in writing and delivered personally or sent by certified mail to Employee's residence as it appears on the records of the Employer in the case of Employee or to the principal office of Employer, to the attention of the President, in the case of Employer, or to such other address as each party may hereafter specify in writing to the other.

9.3 Binding Effect. This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, legatees, personal representatives and other legal representatives, successors and assigns.

9.4 Assignment. This Agreement may be assigned by the Employer if all or substantially all of its assets are sold to a third party.

9.5   Entire Agreement. This Agreement constitutes the entire agreement between the parties as to this employment agreement and there are no representations, warranties, covenants or obligations except as set forth herein. This Agreement supersedes all prior and contemporaneous agreements, understandings, negotiations and discussions, written or oral, of the parties hereto, relating to the employment of Employee contemplated by this Agreement. Except as otherwise especially provided herein, nothing in this Agreement is intended or shall be construed to confer upon or to give any person other than the parties hereto any rights or remedies under or by reason of this Agreement.

9.6   Amendments. This Agreement may be amended only in writing executed by the parties hereto affected by such amendments.

9.7   Recitals; Enumeration and Headings. The background and the enumeration and headings contained in this Agreement are for convenience of reference only and are not intended to have any substantive significance in interpreting this Agreement.

9.8   Gender and Number. Unless the context otherwise requires, whenever used in this Agreement the singular shall include the plural, the plural shall include the singular, and the masculine gender shall include neuter or feminine gender and vice versa.

9.9   Governing Law. This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Maryland.

10.   Survival. The provisions of Sections 6, 7 and 8 shall survive any termination of this Agreement.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed under seal this _____ day of _____, 199__ (the "Effective Date").

| ATTEST: | JEJ FOOD COMPANY |
|---|---|
| V _____ | By: _____<br>Name: J. JAIME GARCIA<br>Title: PRESIDENT |

| ATTEST: | MCWAX AND CO. |
|---|---|
| V _____ | By: _____<br>Name: J. JAIME GARCIA<br>Title: PRESIDENT |

- 6 -

ATTEST:                                             CHEF GARCIA, INC.

_____    By: _____
                                       Name: Ronald D. Kirstien
                                       Title: Chairman


WITNESS:

_____    _____
                                       Jaime Garcia


c:\jbw\jej\employment.agr

- 7 -

<u>EMPLOYMENT AGREEMENT</u>

THIS EMPLOYMENT AGREEMENT (the "Agreement") is made by and between Elvira Garcia ("Employee") and JEJ Food Company and McWax and Co., both Virginia corporations and Chef Garcia, Inc., a Delaware corporation (collectively, "Employer").

IN CONSIDERATION of the premises, the covenants set forth herein, and other consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree that Employer hereby employs Employee and Employee accepts employment by Employer, subject to the terms and conditions set forth below:

1. <u>Term.</u>

1.1. The term of this Agreement (the "Term") shall commence on the Effective Date, as hereinafter defined, and, unless terminated pursuant to Section 9 hereof, shall continue for three (3) years from the Effective Date. Thereafter, this Agreement may be terminated by either party, with or without cause upon thirty (30) days written notice to the other party.

1.2. The term "Effective Date", as used in this Agreement, shall mean the 31st day of August, 1995 which is the date of Closing under two Stock Purchase Agreements by and among, respectively, O'Stein Brothers Limited Partnership No. 4, Jaime Garcia, Elvira Garcia and Chef Garcia, Inc.

1.3. In the event of the termination of the Employee's employment, the Employer shall have no further obligation to pay any further compensation to the Employee, other than amounts then due to the Employee, and shall take commercially reasonable efforts to relieve Employee of any liability to third parties for debts of Employer.

2. <u>Compensation</u>. For all services rendered by Employee under this Agreement, Employee shall receive compensation (the "Compensation") as follows:

2.1 <u>Base Salary</u>. During the term of this Agreement, Employee shall receive a salary based on $49,462.40 per annum.

2.2 <u>Payment of Compensation</u>. Salary shall be paid equal installments, payable no less frequently than monthly.

2.3 <u>Fringe Benefits</u>. Subject to Employee's insurability, Employee shall be entitled to participate in such medical and accident and health plans, and pension and profit sharing plans and other fringe benefit plans, in accordance with their respective terms, as Employer shall make available to its executive officers from time to time.

3.  **Deductions**. Employer is authorized to deduct from the actual compensation of Employee such sums as may be required to be deducted or withheld under the provisions of any law now in effect or hereafter put into effect during the term of this Agreement, including, but not limited to, social security and unemployment and income withholding taxes.

4.  **Duties**. During the Term the Employee shall serve as Secretary of the Employer and shall be responsible for such aspects of the operation of the Employer's business as may be assigned by the Board of Directors of the Employer, from time to time, all aspects of the day-to-day operation of the Employer's business. It is specifically understood and agreed between the parties that Employee shall devote, with undivided attention and loyalty, her full time, energies and efforts to the performance of such duties until the end of the Term.

5.  [intentionally omitted]

6.  **Disclosure of Information**. As partial consideration for the Compensation, the Employee does hereby agree that the Employee will not at any time during his employment by the Employer or at any time thereafter, either directly or indirectly, disclose, communicate, divulge, furnish or otherwise make accessible or available, in whole or in part, to any person, firm, company, corporation, partnership, joint venture or any other entity, or use in any fashion, other than in the faithful discharge and performance of the duties and responsibilities of Employee for the Employer, any confidential information, material or matter relating to the business of, or any other trade secrets of, the Employer or any firm, company, corporation, partnership, joint venture or any other entity related to the Employer (hereinafter the "Employer's Affiliates") obtained or acquired while in the employ of the Employer. Both the Employee and the Employer hereby specifically acknowledge and agree that any information concerning (a) the business operation or methods of the Employer and the Employer's Affiliates, (b) the customers or clients of the Employer and the Employer's Affiliates (including customer lists), (c) the past, present or future research done by the Employer and the Employer's Affiliates respecting the business, customers or service areas of the Employer and Employer's Affiliates, and (d) any method or procedure relating to or pertaining to projects developed (including bidding methods and procedures) by the Employer and the Employer's Affiliates or contemplated by the Employer and the Employer's Affiliates, are of material importance and significance to the business of the Employer and the Employer's Affiliates. Accordingly, the Employee and the Employer agree that all of the above are, to the maximum extent permitted by law, to be regarded as information or material which is of a confidential nature; that trade secrets of the Employer or the Employer's Affiliates shall be deemed to include any and all processes, computer software or hardware, equipment, machinery, devices, techniques, methods, designs, inventions, innovations, materials, formulas, expertise and the like (whether patentable or not) used by the Employer or the Employer's Affiliates in the conduct of its or their business, and all data, know-how, drawings, plans, written instructions or any other form of information whatsoever relating or pertaining thereto or to any other aspect of the business of the Employer or the Employer's Affiliates, which are not in the public domain

or not generally known throughout the industry of which the Employer or the Employer's Affiliates are a part; that any and all such confidential information, material or matter, or trade secrets, from time to time disclosed, divulged, communicated, furnished or made available to Employee is solely for the purpose of enabling Employee to perform and discharge the duties and responsibilities of Employee hereunder; that no such disclosure, divulgence, communication or the like shall in any manner whatsoever be deemed or construed to derogate from or affect any of the provisions set forth hereinabove in any manner whatsoever; and that it is the specific intent of both the Employer and Employee that each and all of the provisions set forth hereinabove shall be valid and enforceable as specifically set forth hereinabove. If it shall be judicially determined that any of the provisions set forth hereinabove shall not be valid or enforceable as specifically set forth, such provision shall not be declared invalid but rather shall be modified in such a manner so as to result in the same being valid and enforceable to the maximum extent permitted by law. In the event of a breach or a threatened breach by Employee of any of the provisions of this section, in addition to any other remedies it may have, the Employer may obtain injunctive relief in any court of appropriate jurisdiction to enforce this Section.

       7.    <u>Return of Confidential Materials</u>. As partial consideration for the Compensation, the Employee hereby covenants that contemporaneous with the termination of his employment with the Employer for any reason whatsoever, any and all materials containing confidential information including, but not limited to, documents, drawings, memoranda, notes, notebooks, customer lists, reports, studies, specifications, charts, graphs, descriptions, instructions, recordings, photostats, spread sheets, computer printouts, software, programs, materials contained in any storage data retrieval system and any and all other sources of confidential information whatsoever, whether prepared by the Employee or not, will be left with, or returned to, the Employer. The Employee further covenants that in the event of any such termination, he will not, either directly or indirectly, copy, or cause to be copied, photocopied, mimeographed, replicated, transcribed, translated, reprinted, transposed, transliterated, recorded or otherwise duplicated or reproduced using any method, process or technique whatsoever any of the confidential information to be left with, or returned to, the Employer.

       For the purposes of this Section, "confidential information" shall mean any and all information disclosed to, learned by or otherwise known to the Employee as a consequence, whether directly or indirectly, of his employment with the Employer which is not generally known in the industry in which the Employer or the Employer's Affiliates are or may become engaged, concerning the Employer's or Employer's Affiliates' products, processes, techniques, methods, innovations, materials, expertise, know-how and the like (whether patentable or not) relating to the past, present or prospective research, development, invention, manufacturing, purchasing, selling, accounting, engineering, marketing, management, merchandising, customers, service areas and other methods or procedures used in the course of conduct of the business of the Employer or the Employer's Affiliates. The Employer and the Employee hereby further agree that it is the specific intent of both the Employer and the Employee that each and all of the provisions set forth hereinabove shall be valid and enforceable as specifically set forth. If it shall be judicially determined that any of the provisions set forth hereinabove shall not be valid or

enforceable as specifically set forth, such provisions shall not be declared invalid but rather shall be modified in such a manner so as to result in the same being valid and enforceable to the maximum extent permitted by law. In the event of a breach or a threatened breach by the Employee of any of the provisions of this Section, in addition to any other remedies it may have, the Employer may obtain injunctive relief in any court of appropriate jurisdiction to enforce this Section.

      8.    <u>Restrictive Covenant</u>. As partial consideration for the Compensation, the Employee does hereby further specifically covenant and agree with the Employer that the Employee:

      (a) shall not directly or indirectly (whether as an officer, director or employee of, owner of, partner of or in, participant of or in, consultant or advisor to or for, or the source of any financial interest whatsoever in, any firm, company, corporation, partnership, joint venture or any other entity whatsoever) attempt to engage in or engage in any business activity or endeavor with any of the Employer's customers who has been such customer during any of the period during which the Employee shall have been in the employ of the Employer which is similar to any business activity or endeavor engaged in by the Employer or the Employer's Affiliates with such customer during any of the period during which the Employee shall have been in the employ of the Employer, for a period of two (2) years from and after the date on which the Employee ceases to be in the employ of the Employer; and

      (b) shall not directly or indirectly, for a period of two years as aforesaid in Paragraph (a) of this Section, attempt to engage in or engage in any business activity or endeavor which is similar to or competitive with any business activity or endeavor in which the Employer engaged at any time during the period of time of two (2) years prior to the date on which the Employee ceases to be in the employ of the Employer, in the States of Maryland, Delaware, Virginia and the District of Columbia or in any other state, commonwealth, district, territory or any other constituent province or possession of the United States or any foreign country in which, the Employer or the Employer's Affiliates shall, on the date on which the Employee ceases to be in the employ of the Employer, be engaged in business. The operation of a restaurant or food service facility is specifically exempted from this restriction.

      Each of the Employer and the Employee does hereby acknowledge and agree that none of the time span, scope or area covered by the within restrictive covenant is or are unreasonable, and that it is the specific intent of both the Employer and the Employee that each and all of the restrictive covenants set forth hereinabove shall be valid and unenforceable as specifically set forth hereinabove to the fullest possible extent. If it shall be judicially determined that any of the restrictive covenants herein shall not be valid or enforceable as specifically set forth hereinabove, such restrictive covenants shall not be declared invalid but rather shall be modified in such manner so as to result in the same being valid and enforceable to the maximum extent permitted by law. It is further agreed and understood that, because of the highly confidential and secretive nature of the Employer's business, in the event of any violation

- 4 -

by the Employee of the preceding provisions of this Section, the Employer may, in addition to any other remedies which it may have, obtain injunctive relief in any court of appropriate jurisdiction to enforce this Section.

9. <u>Early Termination</u>.

9.1    At its option and upon the delivery of written notice, Employer may terminate Employee's employment under this Agreement under the following circumstances:

(a)    The material breach of any representation or warranty made by Employee in the Stock Purchase Agreements referenced above;

(b)    The material breach by Employee of any covenant or condition of this Agreement; or

(c)    The material failure of the Employee to carry out the duties of the Employee to the Employer hereunder, through neglect, carelessness or other conduct of the Employee.

9.2    If Employee shall fail or be unable to perform the services required under this Agreement, because of any physical or mental infirmity, and such failure or inability shall continue for three (3) consecutive months or for six (6) months during any consecutive twelve (12) month period, Employer may terminate this Agreement after delivering of thirty (30) days written notice of such termination to Employee.

10. <u>Miscellaneous</u>.

10.1    <u>Waiver of Breach</u>.  The waiver by either party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by either party.

10.2    <u>Notices</u>.  Any notice required or permitted to be given under this Agreement shall be sufficient if in writing and delivered personally or sent by certified mail to Employee's residence as it appears on the records of the Employer in the case of Employee or to the principal office of Employer, to the attention of the President, in the case of Employer, or to such other address as each party may hereafter specify in writing to the other.

10.3    <u>Binding Effect</u>.  This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, legatees, personal representatives and other legal representatives, successors and assigns.

10.4    <u>Assignment</u>.  This Agreement may be assigned by the Employer if all or substantially all of its assets are sold to a third party.

10.5 <u>Entire Agreement</u>. This Agreement constitutes the entire agreement between the parties as to this employment agreement and there are no representations, warranties, covenants or obligations except as set forth herein. This Agreement supersedes all prior and contemporaneous agreements, understandings, negotiations and discussions, written or oral, of the parties hereto, relating to the employment of Employee contemplated by this Agreement. Except as otherwise especially provided herein, nothing in this Agreement is intended or shall be construed to confer upon or to give any person other than the parties hereto any rights or remedies under or by reason of this Agreement.

10.6 <u>Amendments</u>. This Agreement may be amended only in writing executed by the parties hereto affected by such amendments.

10.7 <u>Recitals; Enumeration and Headings</u>. The background and the enumeration and headings contained in this Agreement are for convenience of reference only and are not intended to have any substantive significance in interpreting this Agreement.

10.8 <u>Gender and Number</u>. Unless the context otherwise requires, whenever used in this Agreement the singular shall include the plural, the plural shall include the singular, and the masculine gender shall include neuter or feminine gender and vice versa.

10.9 <u>Governing Law</u>. This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Maryland.

11. <u>Survival</u>. The provisions of Sections 6, 7 and 8 shall survive any termination of this Agreement.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed under seal this _____ day of _____, 199__ (the "Effective Date").

ATTEST:                                                    JEJ FOOD COMPANY

_____                    By: _____
                                                                   Name: J. JAIME GARCIA
                                                                   Title: PRESIDENT


ATTEST:                                                    MCWAX AND CO.

_____                    By: _____
                                                                   Name: JAIME GARCIA
                                                                   Title: PRESIDENT

- 6 -

ATTEST:                                    CHEF GARCIA, INC.

_____            By: _____
                                           Name: Ronald D. Kirstien
                                           Title: Chairman

WITNESS:

✓ _____          _____  ✓
                                           Elvira Garcia

c:\jbw\jej\employment.ag2

- 7 -