IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| In re: | ) |
| | ) |
| CHEF GARCIA FOODS, INC. | ) Case No: 98-16522 |
| | ) |
| Debtor | ) |
| | ) |

MEMORANDUM IN SUPPORT OF CREDITOR'S OBJECTION TO MOTION FOR AUTHORITY TO SELL CERTAIN EQUIPMENT PURSUANT TO BANKRUPTCY CODE SECTIONS 363(b) AND 383(f)(2} AND TO REMIT THE PROCEEDS TO THE FIRST NATIONAL BANK OF MARYLAND

In support of its Objection for Authority To Sell Certain Equipment Pursuant to Bankruptcy Code Sections 363(b) and 364(f)(2), and to Remit the Proceeds to The First National Bank of Maryland, Jaime Garcia, Creditor (Jim Garcia), respectfully states as follows:

1. The price of $84,000 for the Chip Line is inadequate. The Debtor's own schedules value the property to be sold at $262,500, the initial cost was approximately $800,000 and its present value should be approximately $500,000.

2. The equipment includes parts that are not under the lien of the First National Bank. It includes parts that belong under the lien of other creditors including Riggs Bank. This creditor, Jim Garcia, guarantees the Riggs Bank secured loan. In addition, there are junior lien creditors (including Riggs Bank) that are entitled to the marshalling of liens in their favor; and the proceeds should not be turned over to any lienholder (including First National) until the matter of priority has been determined first by an applicable proceeding under the Bankruptcy Code, Riggs Bank has a junior lien on the Chip Line that is proposed to be sold.



EXHIBIT 11

Co-counsel for Creditor James Garcia
Douglas A. Anderson
516 ½ Oronoco Street
Alexandria, VA 22314
(703) 836-9242
Va. Bar. No. 29493

3. The equipment must be specifically identified with all appropriate serial numbers in order to protect the separate interests of the secured creditors including Riggs Bank and The First National Bank of Maryland. The Chip Line as described includes equipment that is under the Riggs lien.

4. There is no proof of showing of benefit to the Debtor of a sale to the third party. The only benefit that is described is a vague benefit to the business by switching to an outside manufacturer, S&K, with no evidence of any past success in the magnitude now speculated by Debtor. There is no track record of success by the present management. Indeed, the business has taken a downward turn in the last eight months.

5. In general outline, the schedule of equipment that is described is the newest line of equipment owned by the Debtor. This equipment was purchased by the Debtor approximately five years ago for approximately $800,000.00. This equipment was in good working order when Jaime Garcia was required by present management in the middle of January, 1998 (without notice) to never return to the premises, and he has never since been allowed to return to the manufacturing premises.

6. The equipment in question was in excellent operating condition when Mr. Garcia was barred from the premises. Used equipment in the condition that it should be now, with normal wear and tear would be valued at in excess of $500,000,00. The replacement cost would be in excess of $800,000.00. The price is woefully inadequate and is not fair to this Creditor or to the other creditors of the Debtor.

7. Upon information and belief, the equipment now consists of parts cannibalized from other equipment not in any way subject to the lien of the First National Bank but subject to the lien of Riggs Bank.

8. This equipment is being sold for the purpose of providing a proposed supplier of manufactured food for the Debtor. The Debtor in the eight months prior to bankruptcy has not been successful in having other parties co-pack for them, and it is a highly questionable and risky venture. The Debtor has not shown that it can successfully operate the business by using co-packers.

9. There are issues of good business judgment in that the sale is of the best equipment at a very low price, combined with a simultaneous request for a super priority

2

loan, creates the probability of a drastic loss of collateral to other secured creditors. When these factors are considered with the drastic and unproven change of the entire business methods of manufacturing, there is the probability of drastic damage to the entire business.

10. On January 14, 1998, Ron Kirstien and Harvey Rothstein removed Jim Garcia from his functions as the Chief Executive Officer of Chef Garcia Foods, Inc., and ordered him never to return to any of the premises of Chef Garcia Foods, Inc., including the locations at Springfield and Alexandria, Virginia.

11. A companion case to this case, Chef Garcia Kitchens, Inc. (now in Chapter 7) operated a closely connected business, known as the kitchen facilities, and it manufactured and sold prepared foods. Jim Garcia was similarly relieved of his duties as Chief Executive Officer of Chef Garcia Kitchens, Inc., and prohibited from ever returning to the kitchen facility. An examination of the schedules of that bankruptcy case (98-16523-MVB) reveals that its sales were substantially increasing from 1996 to 1997. For the last eight months, the sales plummeted. The new management experimented with co-packing and it was a corporate disaster with sales dropping over 60%, ending with a Chapter 7 bankruptcy.

12. Approximately eight months later, the Debtor filed a Voluntary Petition for Relief under Chapter 11 in this case, and the same parties in control of Chef Garcia Kitchens, Inc. placed that company in Chapter 7 bankruptcy. During this entire eight-month period, Ron Kirstien an Harvey Rothstein were in complete control of both corporations, but prepared no monthly financial statements, and provided Jim Garcia with no monthly or yearly financial statements as required by written agreement, Before the time Jim Garcia was ordered not to return to the premises on January 14, 1998, and to take no other function in the operation of the company, there were regular monthly financial statements issued by the companies.

13. Since Jim Garcia was ordered never again to go onto the business premises on January 14, 1998, both companies, Chef Garcia Foods, Inc. and Chef Garcia Kitchens, Inc. have deteriorated in their operations. As is set forth in the Schedules that have been filed with the Court, as well as what is reflected in the counts records, the combined sales in 1996 and 1997 held steady with an increase from approximately

$4,500,000 to $4,600,000, or about a $380,000 per month average. Since Jim Garcia has left the premises, the sales, according to the Schedules, have averaged only about $270,000.00 per month and upon information and belief, it is believed the sales have strongly deteriorated in the last few months prior to bankruptcy. The papers filed in this proceeding reflect that only one week's inventory remains, that the equipment has been so abused and mishandled that it no longer can provide the much lower volume, and that the business can no longer maintain a competent operating staff.

14. The condition of Chef Garcia Kitchens, Inc. has sharply deteriorated and it appears that it has gone out of business. In view of the filing of the Chapter 7 proceeding and since there has been no effort is being made to operate it under any provisions of the Bankruptcy Code, it is assumed that it is totally out of business.

15. The significance of the deterioration of the businesses to the extent that they have so deteriorated, lies in the fact that Ron Kirstien and Harvey Rothstein have been very unsuccessful since they took over the day-to-day operation of the business. First, to Mr. Garcia's knowledge, they have no experience in manufacturing Mexican food. Second, Ron Kirstien and Harvey Rothstein have chosen to change the entire manner in which the company does business -- which is using other manufacturers to manufacture the food for them -- which had been of disastrous consequence for Chef Garcia Kitchens, Inc., and should not be used with this Debtor.

Respectfully submitted,

_____
David F. Albright
Albright, Brown & Goertemiller
Suite 2150
120 E. Baltimore Street
Baltimore, MD 21202
(410) 244-0350

Douglas A. Anderson, Esq.
~~~~~~~~~~~~~~~~~~~~~
Alexandria, VA 22314
(703) 836-9242
Co-counsel for James Garcia

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this day of October, 1998, a copy of the foregoing Objection to Motion for Authority to Sell certain Equipment Pursuant to Bankruptcy Code Sections 363(b) and 363(f)(2) and to Remit the Proceeds to The First National Bank of Maryland, Memorandum in Support thereof, and proposed Order was mailed, postage prepaid, to the following:

Louis J. Ebert, Esq.
Gebhardt & Smith, LLP
World Trade Center
401 E. Pratt Street, 10th Floor
Baltlmore, MD 21202

John B. Connor, Esq.
1033 North Fairfax Street, Suite 310
Alexandria, VA 22314

The First National Bank of Maryland
Ralph W. Emerson, Senior V.P.
25 South Charles Street, 12th Floor
Baltimore, MD 21201

Mitchell B. Weitzman, Esq.
Arnold Spevack. Esq.
Deso, Thomas, Spevack, Weitzman & Rost, P.C.
1828 L Street, N.W., Suite 720
Washington. D.C. 20036

Office of the United States Trustee
115 S. Union Street, Suite 210
Alexandria, VA 22314

Scott Stengel, Esq.
McGuire, Woods, Battle & Boothe, LLP
8280 Greensboro Drive, Suite 900
McLean, VA 22102

David McC. Estabrook, Esq.
Estabrook & Associates
1355 Beverly Road, Suite 225
McLean, VA 22101

William E. Shmidheiser, III, Esq.
Wharton, Aldhizer & Weaver, PLC
P.O. Box 20028
Harrisonburg, VA 22801

Kathleen Mooy
Impact Sales, Inc.
7521 Connelly Drive, Suite C
Hanover, MD 21076

Roy L. Mason, Esq.
Maeon Ketterman & Morgan
69 Franklin Street
Annapolis, MD 21401

_____
Douglas A. Anderson