UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| In re: ) | |
| ) | |
| CHEF GARCIA FOODS, INC. ) | Case No. 98-16522 |
| ) | (Chapter 11) |
| Debtor. ) | |

**MEMORANDUM IN SUPPORT OF DEBTOR'S MOTION FOR AUTHORITY TO SELL BY PUBLIC AUCTION EQUIPMENT, FURNITURE, AND INTELLECT' PROPERTY, FREE AND CLEAR OF LIENS AND ENCUMBRANCES, PURSUANT TO 11 U.S.C. §§ 363(b) AND 363(f) AND TO REMIT PROCEEDS TO SECURED CREDITORS**

In support of Debtor's Motion For Authority To Sell by Public Auction E

Furniture, and Intellectual Property, Free and Clear of Liens and Encumbrance

U.S.C. §§ 363(b) and 363(f)(2), and to Remit Proceeds to Secured Creditors ( .

Garcia Foods, Inc. ("Debtor"), debtor and debtor-in-possession herein, respectfully states as

follows:

1. On September 3, 1998, Debtor filed with this Court its voluntary petition for relief under chapter 11 of the Bankruptcy Code. Pursuant to §§ 1107 and 1108 of the Bankruptcy Code, Debtor is continuing to operate its business and manage its properties and assets as a debtor-in-possession. No trustee or examiner has been appointed in Debtor's chapter 11 case.

2. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this proceeding and of this Motion is proper in this district pursuant to 28 U.S.C

EXHIBIT 13

STEPHEN E. LEACH
(VA Bar No. 20601)
Tucker, Flyer & Lewis, P.C.
1615 L Street, N.W., Suite 400
Washington, D.C. 20036

063050-00000-00087.doc

§§ 1408 and 1409. The statutory predicates for the relief sought herein are §§ 105(a), 363(b) and 363(f) of the Bankruptcy Code.

3. Debtor, a Virginia corporation, is both a manufacturer and wholesale distributor of Mexican food products, operating within the Commonwealth of Virginia and elsewhere. Debtor's manufacturing facility ("Facility") is located at 7608 Fullerton Road, Springfield, Virginia; its corporate offices are located in Crofton, Maryland and at the Facility. Debtor has almost entirely wound up its manufacturing operations and has terminated the employment of nearly all of its staff previously involved in the manufacturing arm of the Debtor's business. Debtor is currently operating almost exclusively as a wholesale distributor of food products manufactured by other entities.

4. As a manufacturer of Mexican food products, Debtor acquired an array of food processing equipment, furniture, and miscellaneous tangible property, which is situated at the Facility. Certain items of the Debtor's manufacturing equipment are subject to a perfected, first-priority security interest in favor of The Riggs National Bank of Virginia ("Riggs"); the balance of the Debtor's equipment, furniture, and miscellaneous tangible property is subject to a perfected, first-priority security interest in favor of The First National Bank of Maryland ("FNB"). Debtor has also acquired various forms of intellectual property including, without limitation, its name, trademarks, and product recipes. Riggs asserts a first-priority security interest in this intellectual property.

5. As part of its analysis of its viability as a going concern and various reorganization strategies, Debtor has determined that it should sell by auction all of its remaining equipment, furniture, miscellaneous tangible property, and intellectual property (but excluding inventory and accounts). Such a sale will almost certainly result in termination of the Debtor's

operations both as a manufacturer and as a wholesale distributor. Debtor reached the decision to end its manufacturing operations based upon its conclusions that the age and condition of its equipment put it at a competitive disadvantage vis-à-vis its competitors, and that it could not generate sufficient future profits from manufacturing to satisfy its secured and unsecured debt under a plan of reorganization. Debtor has now determined that its profitability as a wholesaler is likewise insufficient to permit it to develop a plan of reorganization that could adequately service or otherwise address its secured, priority unsecured, and general unsecured debt.

6. It is Debtor's business judgment that the equipment, furniture, miscellaneous tangible property, and intellectual property can best be sold by a public auction, with the net proceeds from the sale of the property subject to the Riggs' security interests being remitted to Riggs in partial or complete satisfaction of Riggs' secured claim, and with the net proceeds from the sale of the property subject to the FNB security interests being remitted to FNB in partial or complete satisfaction of FNB's secured claim.

7. Debtor believes that a properly promoted, organized, and conducted auction sale will be the quickest method of disposing of its property and will ensure that fair market value is achieved for the bankruptcy estate. A sale of all of Debtor's remaining equipment, furniture, miscellaneous tangible property, and intellectual property should stimulate considerable interest among potential buyers in the food processing and distributing businesses, thereby achieving a high market price, and eliminating the need to engage in time-consuming, one-on-one negotiations for the sale of individual pieces, or particular lines, of equipment and other property. A sale by auction will also ensure that all potential buyers are treated equally and fairly and that no insider or party in interest will have any special advantage with respect to acquiring property

of the Debtor. The principals of Debtor's parent corporation may, directly or through a separate entity, bid at the proposed auction sale but will do so on the same terms as all other bidders.

8. A sale by auction will likely permit the Debtor to vacate the Facility more quickly than other forms of sale, thereby minimizing Debtor's administrative rent, which currently exceeds $16,000 per month. Because Debtor has agreed to reject its lease of the Facility, unless the equipment and furniture within the Facility is sold promptly, the Debtor may be forced to move and store this property, which would not only substantially increase the estate's administrative expenses but would almost certainly result in the Debtor achieving a lower price for the property than if it is sold "in place".

9. A sale of the Debtor's property by auction will also permit the Debtor to determine whether the expense and delay attendant to a plan of liquidation are necessary or appropriate. If the proceeds of the sale are sufficient both to satisfy the secured claims of FNB and Riggs and to permit a distribution to general unsecured creditors, then it is the Debtor's intention to file a plan of liquidation under §1123(b)(4) of the Bankruptcy Code. If, however, the proceeds of the sale are insufficient to permit a distribution to unsecured creditors, the Debtor may seek to avoid the administrative costs and time delays of a liquidating plan by simply seeking dismissal or conversion to chapter 7 of this chapter 11 case. Were the Debtor to file a plan at this time, it would simply call for the same auction requested by this Motion – by having the auction first, the Debtor will be able to determine whether a plan is needed before incurring the substantial expense of drafting one and completing the confirmation process.

10. To promote, organize, and conduct the auction, the Debtor has entered into an Asset Recovery Proposal ("Agreement"), subject to Court approval, with Michael Fox International, Inc. ("Michael Fox"). Under the Agreement, Michael Fox will conduct an

extensive marketing program, which will include the preparation of a multi-page, color brochure to be mailed to approximately 6,000 potential buyers; advertisements in trade journals and local newspapers; and a telemarketing program aimed at larger potential bidders. Michael Fox will also conduct presale inspections; catalogue, organize, and tag the equipment and furniture; prepare an auction catalogue; conduct the sale; provide food service and security at the sale; supervise removal of the property sold; and prepare a report for submission to the Bankruptcy Court and creditors. Michael Fox will be compensated through a ten percent buyer's premium to be paid entirely by auction purchasers. Michael Fox will also be entitled to recover from the auction proceeds its costs for advertising and labor, which are estimated at $13,315 for advertising and $4,000 for labor.

11. The Debtor and Michael Fox have scheduled the auction for January 28, 1999, which is the earliest date that permits proper advertising and promotion of the sale. Subject, of course, to ultimate Bankruptcy Court approval of the sale, Michael Fox has already begun promoting the sale in an effort to ensure the largest possible turnout.

12. Where a debtor seeks to use, sell, or lease assets of the estate pursuant to § 363 of the Bankruptcy Code, the debtor's good faith business judgment regarding the proposed transaction should not be disturbed absent a showing that the transaction constitutes an abuse of discretion or is contrary to the interests of the creditors. In re Thrifty Liquors, Inc., 26 B.R. 26, 28 (Bkrtcy. D.Mass. 1982); In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143-149-150 (3d Cir. 1986). When a debtor seeks to sell most or all of its operating assets under §363 of the Bankruptcy Code in advance of a plan of reorganization or of liquidation, the debtor must establish a good business reason for the use of §363. In re Naron & Wagner, Chtd., 88 B.R. 85, 88 (Bkrtcy. D.Md. 1988); In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983).

13.     The court in <u>Abbotts Dairies</u> stressed two factors which the debtor must establish in order to obtain court approval of a sale or use of property of the estate pursuant to § 363. First, the transaction must result from the exercise of the debtor's sound business judgment. Second, the debtor must be acting in "good faith". <u>Id</u>. at 150. For the reasons previously set forth herein, Debtor believes that the sale of its remaining equipment, furniture, miscellaneous tangible property, and intellectual property will inure to the benefit of the Debtor's estate and creditors and, therefore, represents the exercise of Debtor's sound business judgment. Likewise, Debtor's proposal for a sale by auction is in "good faith" because no insider or creditor will gain an unfair advantage from the sale and all creditors and parties in interest, including the Official Unsecured Creditors' Committee, are being given full opportunity to review and object to the terms of the proposed sale.

14.     Debtor anticipates that Riggs and FNB, the only parties which have secured interests in the property to be sold and a right to the proceeds thereof, will consent to the relief requested by the Motion. Thus, the requirements of § 363(f) of the Bankruptcy Code are met and the proposed sale should be approved "free and clear" of all liens, claims, and encumbrances, with any such interests to attach to the proceeds of the sale.

15.     Debtor has articulated above several good business reason for conducting a sale of its property by auction in advance of a plan. Such a sale reflects the business reality that the Debtor's profitability is too low to permit the development and confirmation of an operating plan of reorganization that will satisfy the confirmation requirements of §1129 of the Bankruptcy Code. An auction will permit the Debtor to vacate the Facility promptly, thereby minimizing administrative rent and U.S. Trustee's fees, and avoiding the cost of moving and storing the property and the loss of value that typically occurs when property is sold from storage rather than

"in place". The results of the auction will permit the Debtor to determine whether a plan of liquidation is needed or whether some other, less expensive and faster method is appropriate for bringing this case to a close. Finally, the Debtor is giving all creditors and parties in interest notice of the Motion and is advising them that it is unlikely that the Debtor will continue operating as a going concern following the auction. Given the foregoing, the Debtor has satisfied the requirement set forth in In re Naron & Wagner, Chtd. and In re Lionel Corp., supra, that a good business justification exist for a § 363 sale of property prior to a plan and that creditors be given sufficient notice of the potential impact on the Debtor of such a sale.

WHEREFORE, Debtor prays for issuance of an order authorizing it (a) to sell by auction, free and clear of all liens, claims, and encumbrances, its remaining equipment, furniture, and miscellaneous tangible property located at the Facility, and its intellectual property described above, and (b) to remit net proceeds of the auction sale to Riggs and FNB; and that the Debtor be granted such other relief as may be just.

TUCKER, FLYER & LEWIS, P.C.

By: _____
STEPHEN E. LEACH
(VA Bar No. 20601)
1615 L Street, N.W., Suite 400
Washington, D.C. 20036
(202) 429-7112

Counsel to Chef Garcia Foods, Inc.