UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| **JAIME GARCIA, et ux.** : | |
| : | |
| Plaintiffs : | |
| : | |
| v. : | Civil No.  BEL 01 CV 0103 |
| : | |
| **RONALD D. KIRSTIEN, et al.** : | |
| : | |
| Defendants : | |

### DEFENDANT RANDY HABECK'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS REPLY TO PLAINTIFFS' CONSOLIDATED OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Plaintiffs' Consolidated Opposition (the "Opposition") to the two pending Motions for Summary Judgment demonstrates that this is a case that must not be allowed to go to trial. Plaintiffs fail to meet the basic burden under Fed.R.Civ.P 56(e) upon the nonmoving party to go beyond the mere pleadings and present evidence through affidavits, depositions, or admissions on file to show that there is a genuine issue for trial[1].  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).   The Court "has an affirmative obligation to prevent factually unsupported claims and defenses from proceeding to trial." *Jurgensen v. Albin Marine, Inc.*, 214 F.Supp.2d 504, 506 (D. Md. 2002).  "The court 'is not required to scour the record looking for factual disputes . . .,' and such unsupported factual assertion will not be credited." *Id.*, at 510.   The burden on the nonmoving party is specific:

> A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denial of [his] pleadings," but rather must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see* [*Matsushita Elec. Industry Co. v. Zenith Radio Corp.*, 475 U.S. 574,

---

[1] Habeck continues the use of the terms defined in his Memorandum of Points and Authorities in Support of Motion for Summary Judgment.

> 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)] (holding that, once motion for summary judgment is properly made and supported, opposing party bears burden of showing by means of affidavits or other verified evidence that genuine dispute of material fact exists); *Cray Communications, Inc. v. Novatel Computer Sys., Inc.*, 33 F.3d 390, 393-94 (4th Cir. 1994); *see also* [*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202, (1986)] (holding that dispute regarding material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party"). Furthermore, neither "unsupported speculation," [*Felty v. Graves-Humpreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)], nor evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249, will suffice to defeat a motion for summary judgment; rather, if the adverse party fails to bring forth facts showing that "reasonable minds could differ" on a material point, *Id*. at 250, then, regardless of "any proof or evidentiary requirements imposed by the substantive law," *id* at 248, "summary judgment if appropriate shall be entered," Fed.R.Civ.P. 56(e).

*Bouchat v. Baltimore Ravens Football Club, Inc.* 346 F.3d 514, 522 (4th Cir. 2003). Further, the Court must evaluate the admissibility of the evidence proffered by any party at summary judgment. Affidavits must be based on personal knowledge; must not just offer opinions without objective corroboration; and must not be based on hearsay, irrelevant or other conclusory statements. *Evans v. Technology Applications & Service Co.*, 80 F.3d 954, 962 (4th Cir. 1996). The rule that evidence must be admissible is not limited to affidavits. Rather, "several circuits, including the Fourth Circuit, have stated that hearsay evidence, which is not admissible at trial, cannot be considered on a motion for summary judgment." *Maryland Highway Contractors Ass'n, Inc. v. State of Maryland,* 933 F.2d 1246, 1252 (4th Cir.), *cert denied*, 502 U.S. 939, 112 S.Ct. 373, 116 L.Ed.2d 325 (1991)(citations omitted).

    1.    **<u>Plaintiffs' Case Is Based Upon Incompetent Evidence</u>**.

Plaintiffs' case is an amalgam of scattershot allegations that are not supported by competent evidence. In order to support a claim for unfair competition, Plaintiffs' Opposition (from the bottom of page 4 to the bottom of page 7) quotes Jim Garcia's answer to Interrogatory

No. 16.  The first paragraph of that quote (Opposition page 4-5) purports to quote "Defendants' agent" Marjorie Robinson's statements to Chester Bunty.  Jim Garcia does not testify on personal knowledge that he heard Ms. Robinson make these statements.  Rather, the "statements" are Jim Garcia's hearsay attribution of what Chester Bunty told him.  In the second paragraph of that interrogatory response (Opposition top of page 5), Plaintiffs' attribute written statements to "Defendants' attorney, Stephen Leach" without attributing Plaintiffs' personal knowledge.  Again, the statement is pure hearsay and inadmissible.

The third paragraph of Jim Garcia's interrogatory response (Opposition middle of page 5) states that "Defendants' agent Marjorie Robinson, contacted Casa Christina at a later date . . . offering that Habeck and Zaitz would give Casa Christina sustainable business if Casa Christina would fire Plaintiff Garcia."  The statement lacks Jim Garcia's personal statement that he heard Ms. Robinson make this statement.  It is nothing more than hearsay.  Similarly, the fourth paragraph of the interrogatory response (Opposition bottom third of page 5) starting "Defendants further slandered Plaintiff Garcia . . . by accusing him of producing products at Casa Christina . . ." is vague and not attributed.  A literal reading of the statement is that all three defendants made an oral statement to a person.  That person is never identified and Plaintiffs' have not testified on personal knowledge that they heard the allegedly slanderous statements out of Defendants' collective mouths.

Each paragraph of the quoted interrogatory, with the exception of the last paragraph, contains the same general hearsay problems.  Despite the fact that this case has been pending for three years, the Plaintiffs have been unable to produce the deposition or affidavit of a single witness to attribute bad acts to all three defendants.

The final paragraph of the quoted interrogatory on page 7 of the Opposition speaks of the

use of Jim Garcia's image as being part of unfair competition. That statement is not hearsay (although Habeck does not concede that it is true). However, the statement is not supported by competent evidence. To the contrary, Jim Garcia concedes that any trademarks were the assets of Chef Garcia, Inc. He does not allege any ownership of any such trade names or trademarks. *J. Garcia Dep.* at 63-64. The fundamental premise of the unfair competition claim would be that no one other than Jim Garcia had a right to use his image. *See e.g. Edmondson Village Theater, Inc. v. Einbinder*, 208 Md. 38, 45, 116 A.2d. 377, 380 (1955) (describing the differences between unfair competition and infringement of a trademark). However, Plaintiffs fail to meet a fundamental burden under Rule 56(e) to present competent evidence that his likeness was somehow misappropriated or used without permission.

    **2.**    **Plaintiffs Fail To Introduce Competent Evidence That Habeck Was A Director Of Chef Garcia In 1998**.

Habeck and David J. Norman, Esquire stated under oath that Habeck resigned from the Chef Garcia Board of Directors and did not act with the Board after November 1997. Plaintiffs' defense to this is that there is no documentation to show the resignation and Habeck somehow acted as a Board member. There are, however, two sworn and uncontradicted statements which clearly state that Habeck resigned as a member of the Chef Garcia Board and that he did not exercise authority as a member of the Chef Garcia Board after November 1997. Plaintiffs' do not testify under oath that Habeck attended and voted at Board meetings in December 1997 or later, nor did they testify that Habeck participated in the meeting where Plaintiffs were fired in January 1998. In short, there is no competent evidence that Habeck was a director at any point in 1998.

Plaintiffs' other defense to Habeck's resignation as a director is the argument that he

must have become an officer of Chef Garcia because he allegedly "took over" for Marjorie Robinson.  This is a factual stretch of epic proportions.  First, Plaintiffs failed to establish that Marjorie Robinson was an officer of Chef Garcia, Inc.  Plaintiffs do refer to a bankruptcy filing from late in 1998 which they claim shows that she was an officer, but they failed attach that filing to their pleading.  Plaintiffs also failed to establish the factual nexus that Robinson was an officer at the time that Habeck allegedly "took over" for Robinson.  For instance, Plaintiffs do not testify that Robinson was an officer of Chef Garcia at the time they were fired, nor did they produce a corporate minute showing that she was elected as an officer.[2]  Additionally, Plaintiffs have failed to establish the factual predicate that Habeck actually "took over" for Robinson (i.e. date, time and duties).  Thus, Plaintiffs have failed to establish that Habeck became a corporate officer of a Chef Garcia entity.  Again, they have no corporate record or the testimony of any person that in 1998 Habeck acted as an officer.  Plaintiffs have not introduced any competent evidence to show that Habeck, personally, worked for Chef Garcia as an officer or employee.  On the other hand, Habeck's Declaration at ¶ 16 states that all of his actions for Chef Garcia after his resignation from the Board of Directors were as a representative of the broker, Impact Sales, Inc.  Based upon that Declaration, therefore, this Court can only conclude that Habeck was not an officer or director of Chef Garcia in 1998.  Finally, Plaintiffs have failed to show that the type of "office" that Robinson supposedly held would have caused her to owe a fiduciary duty directly to Plaintiffs.  Thus, there is a wholesale failure of proof that Habeck owed Chef Garcia or Plaintiffs any fiduciary duty at any point in 1998 which could be the basis for claiming that Habeck took some action against the interest of Plaintiffs within the limitations period.  That failure of proof requires the entry of summary judgment against the Plaintiffs and in Habeck's

---

[2] In other allegations, Plaintiffs' claim that Ms. Robinson was H-Z's agent, not an officer of Chef Garcia.

favor.

        3.        **Plaintiffs Failed To Prove Overcharging By Habeck – Zaitz.**

The Opposition makes much of allegations that H-Z was allegedly paid more than the amounts allowed under the 1993 written contract. Plaintiffs chose to ignore Randy McDonald's memorandum, Exhibit P-23 to Rothstein Deposition (attached to Habeck's Motion as Exhibit C) that there were at least two renegotiations of the percentages to be paid to H-Z since that date. Plaintiffs seem to think that since there was no new signed contract or addendum, that all charges by H-Z must, *ipso facto*, be malicious overcharges designed to ruin Plaintiffs. Plaintiffs, however, ignore the rule of law in Maryland that contracts can be amended by oral agreement – even if the original contract claims that it can only be amended in writing. *University Nat. Bank v. Wolfe*, 279 Md. 512, 522 369 A.2d 570, 576 (1977). Plaintiffs' rigid approach to contract interpretation has been rejected for over a century:

> Attempts of the parties to tie up by contract their freedom of dealing with each other are futile. The contract is a fact to be taken into account in interpreting the subsequent conduct of the plaintiff and the defendant, no doubt. But it cannot be assumed, as a matter of law, that the contract governed all that was done until it was renounced in so many words, because the parties had a right to renounce it in any way and by any mode of expression they saw fit. The parties could substitute a new oral contract by conduct and imitation, as well as by express words.

*Id.*, quoting *Bartlett v. Sanchfiled,* 148 Mass. 394, 395, 19 N.E. 549 (1889)(Holmes, J.). *See also, Edell & Associates, P.C. v. Law Offices of Peter G. Angelos*, 264 F.3d 424, 439-440 (4th Cir. 2001)(accepting services in silence when the terms have been set out bars reliance upon an original contract).

Payments by Chef Garcia to H-Z, at were made by checks signed by Jim Garcia payable to H-Z/Impact. *J. Garcia Dep.* at 95. Elvira Garcia mailed the checks that were paid by Chef

Garcia. *Id.*, at 20. Those payments were reconciled regularly against invoices. *Deposition of Ronald Kirstien* at 23 (the relevant portions of which are attached hereto as Exhibit G.) Plaintiffs cannot make payments for a period of years as executives of Chef Garcia and then claim that Habeck somehow breached a duty to them by allegedly overcharging in contravention of the 1993 Brokerage Agreement. Plaintiffs, who controlled the ultimate payment of the H-Z bills, must be held accountable for their own action. Thus, the argument that the charges could only be based on the original 1993 contract is frivolous. Summary judgment should be entered against Plaintiffs because the argument that Habeck somehow breached a fiduciary duty by levying those charges is also frivolous.

    4.    **<u>Plaintiffs Cannot Prove Actions By Habeck Within Three (3) Years Of Filing.</u>**

Pages 9 through 15 of Plaintiffs' 17 page Opposition is a quote from one interrogatory that purports to outline "embezzlement, deeply discounted sales, hidden deductions bogus sales and other competition by Defendants." Opposition at 9. The response is under Plaintiffs' Argument No. V, "Limitations and Laches". After the lengthy quotation Plaintiffs conclude that "The claims asserted in this case all matured within three years of the filing of the Complaint." The latest date mentioned in that interrogatory response, however, is January 8, 1998 (Opposition page 14). This case was filed on January 12, 2001. Plaintiffs fail to give any explanation for why actions outside of the three year statute "matured within three years."

Further, Plaintiffs do not give any legal analysis for how the "continuation theory" explained in *Supik v. Bodie, Nage, Dolina, Smith & Hobbs, P.A.*, 152 Md. App. 698, 713-715, 834 A.2d 170, 178-179 (2003), applies in light of Jim Garcia's testimony that as of June 17, 1997, "At this point the cover-up by the Defendants was made extremely clear to Plaintiffs. It

7

was obvious to them that the Defendants were not being truthful, and that the Defendants' attempts to clear up deductions were non-existent; they were deceiving Plaintiffs." *Plaintiffs' Response to Interrogatory No. 3*. The "continuation theory" only applies in cases where the plaintiff has no reason to question a fiduciary. Jim Garcia states under oath that he had reason to question Defendants (assuming, without conceding, that they were fiduciaries) in June 1997. Therefore, the continuation theory does not extend the limitations period. Plaintiffs' inability to overcome the limitation period dictates that summary judgment be entered against the Plaintiffs and in favor of Habeck.

  **5.**   **Habeck Has Met His Burden.**

  Plaintiffs' Opposition closes that Habeck gives no meaningful response to the extensive interrogatory response quoted at pages 9-15 of the Opposition. That, however, is not Habeck's burden. The answer to those allegations, while not material, is fairly simple. As Ronald Kirstien testified "And Jim Garcia unfortunately continued to lie to the board as well as to everybody associated with the company." *Exhibit G, Ronald Kirstien Deposition* at 30 "I don't – I still don't know whether they [J.P. Foodservice] owed us the money or not because Jim kept cooking the books. And as he continued to distort the numbers we couldn't get a handle on receivables or payables because he would bury checks in the desk and say they were paid and they were not paid." *Id.* at 41.

  Plaintiffs' argument in the quoted answer to the interrogatory, which is no more than an attempt to concoct a reason why the Chef Garcia business failed through no fault of their own, at a time when Jim Garcia ran the day-to-day business, misses the point of this case. Plaintiffs have failed to meet their burden under Rule 56(e) to present competent evidence that would lead a reasonable jury to find in Plaintiffs' favor. Habeck is not required to answer point by point wild

allegations that are clearly outside of the three year limitations period and which are built on a foundation of unsupported hearsay. To do so frustrates the purpose of a summary judgment motion which is supposed to cut short litigation over factually unsupported claims.[3]

### 6. Plaintiffs Have Failed To Prove That Habeck Participated In Actions After The Limitations Period.

Plaintiffs argue at Opposition page 15 that "Defendants turned extremely hostile to Plaintiffs and fired both without notice on January 14, 1998, in breach of the employment agreement." Plaintiffs have not proffered a *scintilla* of proof that Habeck had any part of that firing. In a like fashion, they have failed to offer any proof that Habeck committed any of the other wrongs alleged in Count I of the Amended Complaint. Rather, Plaintiffs attempt to bootstrap Habeck into an action within the 3 year statute period by lumping all three defendants together in the firing and the subsequent alleged failures to relieve him of certain debts and to honor an employment agreement. Plaintiffs do not, however, establish any factual link to tie Habeck into the firing or the agreements that have been allegedly breached or even the actions where Plaintiffs have allegedly been defamed within the three year limitation period. Summary judgment against the Plaintiffs is required due to Plaintiffs' failure to produce specific evidence overcoming the limitations period.

### 7. Plaintiffs Failed To Establish That Habeck Is Liable As A "Trustee".

Plaintiffs posit that Habeck has liability directly to them as a "trustee" of the now allegedly defunct Chef Garcia, Inc. Of course, Plaintiffs failed to provide a *scintilla* of evidence that Chef Garcia, Inc. is no longer a corporation in good standing. Thus, the argument that

---

[3] Plaintiffs' assertion that they have hundreds of pages of documents to support their allegations also misses the point. First, those hundreds of pages are not in the Court record. Further, those documents would be subject to a very different interpretation if the underlying foundation for those documents is based upon actual facts (i.e. invoices which allegedly show overcharges by H-Z really only show a course of conduct approved by the entire Chef Garcia Board, including Jim Garcia.).

Plaintiffs may proceed against Defendants as trustees is missing a factual foundation. Additionally, Plaintiffs cannot establish that Habeck was a director of Chef Garcia, Inc. at the time that the charter was allegedly forfeited. As stated above, the objective evidence clearly demonstrates that Habeck resigned as a director in 1997.

Further, the claims of Plaintiffs against "trustees" founders on the shoals of their failure to prove that any of the Defendants have assets of Chef Garcia, Inc. The liability of a director/trustee has its origin in Maryland's corporate law under Md. Code Corp. & Assn's § 3-515. As the Maryland Court of Appeals explained: "the Code, . . . provides in effect that directors become trustees for the benefit of creditors, stockholders and members to **the extent of the corporate assets coming into their hands upon dissolution**." *Callahan v. Clemens*, 184 Md. 520, 528, 41 A.2d 473, 476 (1945)(emphasis supplied); *President and Directors of Georgetown College v. Madden*, 505 F.Supp. 557, 603 (D. Md. 1980), *aff'd in part and appeal dismissed in part*, 660 F.2d 91 (4th Cir. 1981). In order to proceed with liability as a "trustee", Plaintiffs would have to prove that corporate assets came into their hands upon dissolution. Plaintiffs have not proven the existence of such assets as they have not proven dissolution. Accordingly, summary judgment should be entered in favor of Habeck and against Plaintiffs because Plaintiffs cannot meet their burden of proof that the Defendants are liable as "trustees."[4]

    **8.**    **Section 349 Of The Bankruptcy Code Does Not Bar The Preclusive Effect Of The Order Of The Sale Of Assets Free And Clear Of Liens.**

Plaintiffs are incorrect in their argument that an order of a sale free and clear of liens is not preclusive against them. Plaintiffs' reliance on 11 U.S.C. § 349(b) and *Williams v. Stewart*, 97 Md. App. 620, 631 A.2d 517 (1993) is misplaced. Section 349(b) provides that unless a court orders otherwise, a dismissal of a Bankruptcy case:

---

[4] In the three years and 2 months that this case has been pending the Plaintiffs have failed to plead trustee liability.

>    (1) reinstates;
>
>    (A) any proceeding or custodianship superseded under section 543 of this title;
>
>    (B) any transfer avoided under section 522, 544, 545, 547, 548, 549 or 724(a) of this title, or preserved under section 510(c)(2), or 551 of this title; and
>
>    (C) any lien voided under section 506(d) of this title;
>
>    (2) vacates any order, judgment or transfer ordered under section 522(i)(1), 542, 550 or 553 of this title;
>
>    (3) revest the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.

In *Williams, supra*, the Court of Special Appeals interpreted § 349 to mean that an order denying a proof of claim, which was contrary to an order previously entered in the Circuit Court in Prince George's County, was void or not enforceable.[5] This, case, however, has nothing to do with a proof of claim. Rather, the issue is whether assets were sold and cannot revert back to the estate because of a sale, and whether objections that should have been raised at that sale are barred from further litigation.

The assets that Plaintiffs claim were dissipated were sold pursuant to 11 U.S.C. § 363 after notice, objection by Plaintiffs and hearing. The leading treatise on bankruptcy describes the effect of §349(b) on property sold as follows:

> On the other hand, dismissal does not always restore the prepetition status of property. If property has been transferred out of the estate to a third party, even if not by a sale, the bankruptcy court does not normally have jurisdiction to restore it to the debtor upon dismissal. Dismissal does not affect transfers of property made pursuant to a confirmed plan. Nor will dismissal necessarily eliminate the collateral estoppel or res judicata effect of a bankruptcy court decision made during the case would have in a later proceeding.

---

[5] Since the case is inapplicable there is no need to determine whether the case was correctly decided. It should be noted, however, that this Court is not bound by a state court's interpretation of a federal statute.

3 *Collier on Bankruptcy* ¶ 349.03[1] (15th ed. Revised 2003)(footnotes omitted). Here, the Bankruptcy Court approved a sale of assets. That approval required a finding that there was a "good business reason" for the sale of assets. *In re Naron & Wagner, Chartered*, 88 B.R. 85, 87 (Bankr. D. Md. 1988) *quoting In re Lionel Corp*. 722 F.2d. 1063, 1071 (2nd Cir. 1983). Thus, the core issue of the business justification for the sale was adjudicated before the Bankruptcy Court approve the sale. As such, the doctrine of res judicata must bar any claim that the sale was not an attempt by the directors to enrich themselves or to harm Plaintiffs. The sale order precludes Plaintiffs from arguing that the sale of assets was a breach of fiduciary duty. To allow such argument is to allow a collateral attack upon a final order which was not affected by the dismissal of the Chef Garcia bankruptcy case. The Court should, therefore, grant Habeck summary judgment to any claim that he violated any fiduciary duty with respect to the dissipation of assets.[6]

---

[6] Of course, Plaintiffs have the additional problem that the record is devoid of any evidence that would suggest that Habeck participated in the sale. Habeck stated in his Declaration at ¶¶ 22-23 that he only participated in the bankruptcy case as an agent of H-Z/Impact Sales which is still owed more than $158,000 from Chef Garcia.

## CONCLUSION

Summary Judgment is appropriate because the Plaintiffs have failed to put forward competent evidence of material facts that are in dispute and the facts that are not in dispute demonstrate that Plaintiffs do not have a viable cause of action against Habeck.

Respectfully submitted,

 */s/ Patrick J. Kearney* 
Patrick J. Kearney (Fed. Bar No. 01913)
Selzer Gurvitch Rabin & Obecny, Chartered
4416 East West Highway, Fourth Floor
Bethesda, Maryland  20814
Tel.  (301) 986-9600

Attorneys for Defendant Randy Habeck

## CERTIFICATE OF SERVICE

I hereby certify, that on this 18th day of March, 2004, a copy of the foregoing Reply Memorandum was delivered by ECF and by first class mail, postage pre-paid to:  David F. Albright, Esquire, Albright & Goertemiller, LLC, 120 E. Baltimore Street, Suite 2150, Baltimore, Maryland 21202 and Craig D. Roswell, Esquire, Niles, Barton & Wilmer, 111 S. Calvert Street, Suite 1400, Baltimore, Maryland  21202.

 */s/ Patrick J. Kearney* 
Patrick J. Kearney