IN THE UNITED STATES DICTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | | |
|---|---|---|
| JAIME GARCIA, et al., | * | |
| Plaintiffs, | * | |
| v. | * | Case No.: 01-CV-103-BEL |
| RONALD D. KIRSTIEN, et al., | * | |
| Defendants | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

**DEFENDANTS, KIRSTIEN AND ROTHSTEIN'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR REPLY TO PLAINTIFFS' CONSOLIDATED OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

Plaintiffs' Consolidated Opposition to the two pending Motions for Summary Judgment (hereinafter "Opposition") does not proffer any evidence on which a reasonable jury could find in their favor, nor does it provide facts supported by the record. Accordingly, Defendants Kirstien and Rothstein[1] are entitled to judgment as a matter of law.[2]

**I.      Summary Judgment**

Plaintiffs have failed in their Opposition to show even a mere scintilla of evidence to justify allowing this case to go to trial. In order to withstand a motion for summary judgment, the non-moving party must proffer sufficient evidence on which a reasonable jury could find in its favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986). In determining whether to grant or deny summary judgment, the judge asks "whether there is [evidence] upon which a jury

---

[1] This Reply will continue to use the capitalized terms defined in Defendants' Kirstien and Rothstein's Memorandum in Support of Summary Judgment (hereinafter "Motion for Summary Judgment").

can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." *Id*. (citations omitted). Rule 56 (c) provides that when "a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56 (c).

Summary judgment procedure is regarded as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). At the summary judgment stage, it is not the "judge's function…to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 251. While all justifiable inferences from the evidence presented by a non-movant should be drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *Pippin v. Potomac Electric Power Co.*, 78 F.Supp.2d 487, 490 (1999) (citations omitted).

Hearsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment. *Maryland Highways Contractors Ass'n v. Maryland*, 933 F.2d 1246 (4th Cir. 1991), *cert denied*, 502 U.S. 939 (1991). *See also*, *Rohrbough v. Wyeth Laboratories, Inc.*, 916 F.2d 970, 973-74 (4th Cir. 1990) (inadmissible hearsay may not be used to defeat summary judgment); *McMillan v. Johnson*, 88 F.3d 1573 (11th Cir. 1996) (same). Evidence presented in support of or in opposition to motion for summary judgment must be competent and admissible.

---

[2] For convenience, this Reply will mirror the order of the arguments in the Motion for Summary Judgment to the extent that Plaintiffs have attempted to refute those arguments.

*Beatty v. Trailmaster Prodcuts, Inc.*, 330 Md. 726, 625 A.2d 1005 (1993). One who has no knowledge of a fact except for what he has read or for what another has told him cannot provide evidence to support a favorable disposition of a summary judgment. *Sellers v. Schonfeld,* 637 A.2d 529 (N.J. 1993). Evidence consisting of inadmissible hearsay statements does not constitute substantial evidence and is insufficient to overcome a motion for summary judgment. *See*, *Perdue v. Town of Snow Hill*, 2000 U.S. Dist. LEXIS 20570 (D.Md. 2000). Evidence submitted by a nonmovant in response to a motion for summary judgment, must be of probative force, and a mere scintilla of evidence is not sufficient to create a material issue of fact which would preclude summary judgment. *See¸ Anderson,* 477 U.S. 242 (1986). Plaintiffs have provided hearsay statements in their Opposition, but have failed to provide any competent evidence. Accordingly, Defendants are entitled to summary judgment in their favor.

## II. Plaintiffs Have Not Proffered Any Competent Evidence To Prove That They Have Standing

Plaintiffs argument that they have standing is based upon a conclusory statement that the charters of the corporations were forfeited or terminated. Yet, Plaintiffs provide no record to prove their statement. Plaintiffs further argue that as directors of the corporations, the Defendants hold all of the assets of the defunct corporations as trustees. Under Md. Code Corp. & Assn's §3-516, the directors become the trustees of the assets of the corporation for *purposes of liquidation*. (emphasis added). "The essential purpose of §3-516 is to provide for liquidation. The trustees are to apply the assets 'to the payment, satisfaction, and discharge of existing debts and obligations of the corporation.'" *The President and Directors of Georgetown College v. Madden*, 505 F. Supp. 557, 603 (D.Md. 1980). Additionally, the Maryland Court of Appeals has explained that the Code "provides in effect that the directors become trustees for the benefit of creditors, stockholders and members *to the extent of the corporate assets coming into their hands*

*upon dissolution.*" *Callahan v. Clemens*, 184 Md. 20, 528, 41 A.2d 473, 476 (1945) (emphasis added).

Plaintiffs for the first time since the inception of the case over three years ago now claim that they are proceeding against the Defendants as "trustees." The lawsuit was filed against the Defendants individually, not as trustees of the assets of Chef Garcia. Indeed, to proceed against the Defendants as "trustees," Plaintiffs would have to prove that Defendants hold the assets of the corporations. Plaintiffs have not proven the existence of any such assets. In fact, the only evidence on the record is that all the assets of the corporation were sold under the direction of the Bankruptcy Court and all the proceeds were paid to First National Bank of Maryland ("FNB") and Riggs Bank ("Riggs") in satisfaction of their security interests.[3] The undisputed evidence supported by the pleadings in the Chef Garcia bankruptcy case[4] demonstrates that the sale of the assets of Chef Garcia was for the purpose of payment, satisfaction, and discharge of existing debts and obligations of the Company. *See*, *Madden*, 505 F.Supp. at 603. The proceeds of the bankruptcy sale were paid to FNB and Riggs in accordance with and under the order of the Bankruptcy Court. There were no assets remaining at the time that the bankruptcy case was dismissed and therefore no assets could revert to the Defendants.[5]

Accordingly, Plaintiffs do not have standing to bring this lawsuit individually and cannot sue Defendants, Kirstien and Rothstein individually. The undisputed evidence is that Kirstien and Rothstein did not individually invest in Chef Garcia or enter into a partnership with the

---

[3] *See*, Exhibits 13 and 14 attached to Defendants' Motion for Summary Judgment.

[4] The entities which filed for bankruptcy were Chef Garcia Foods, Inc., The JEJ Food Company, Inc., JEJ Food Company, Tortilla Maya, Tortilla Maya and Mexican Imports, Chef Garcia Mexican Foods, Inc., and Chef Garcia Kitchens, Inc. *See*, Exhibit 19, Voluntary Petition.

[5] Exhibit 20, Debtor's Motion to Dismiss Chapter 11 Case and Memorandum In Support of Debtor's Motion To Dismiss Chapter 11 Case. *See also,* Exhibit 21, Order Dismissing Chapter 11 Case. (Exhibits attached to this Reply are sequentially numbered with the exhibits attached to Defendants' Motion for Summary Judgment).

4

Plaintiffs. Plaintiffs have not refuted that Kirstien and Rothstein are not their partners. The undisputed evidence is that Kirstien and Rothstein were limited partners of O'Stein Brothers, Limited Partnership No. 4 (hereinafter "O'Stein Brothers") which was an investor in Chef Garcia. As "[i]t is elementary that no action to recover damages for any wrong can be maintained unless brought in the name of the proper party," summary judgment should be entered in favor of Kirstien and Rothstein and against Plaintiffs. *See*, *Danielwicz v. Arnold*, 769 A.2d 274, 286 (Md. 2001). Plaintiffs have not met their burden of proof that Defendants are liable as "trustees," and have not proved that Defendants Kirstien and Rothstein are liable individually as partners of the Plaintiffs.

### III.     Unfair Competition[6]

Plaintiffs Opposition quotes several pages of Jim Garcia's answer to Interrogatory in support of Plaintiffs' claim for unfair competition. The answer to Interrogatory quoted is filled with inadmissible hearsay which cannot be considered on a motion for summary judgment. Some examples of such hearsay are as follows:

On page 4 of Plaintiff's Opposition, Plaintiffs state that in June, 1998, after Mr. Garcia went to "…North Carolina to help run the manufacturing end of Casa Cristina….Defendants' agent, Marjorie Robinson called Chester Brunty, President of Casa Cristina, and complained vehemently about Plaintiff Garcia. She **told** him that Plaintiff Garcia was 'bad news'…." The quote continues that Ms. Robinson allegedly further "…**told** [Chester Brunty] that Jim Garcia

---

[6] Plaintiffs have not countered section II of Defendants' Motion for Summary Judgment entitled "Plaintiffs Breach of Confidential and Fiduciary Relationship Count Fails As A Matter Of Law." Thus, it remains undisputed that Kirstien and Rothstein do not owe any confidential or fiduciary relations to Plaintiffs as alleged in the Amended Complaint. Additionally, Plaintiffs are missing an essential element of their claim that Defendants are asserting ownership of trade names and trademarks, namely, the registration and ownership of the trademarks and trade names. Plaintiffs have not provided any evidence to the contrary. Defendants are therefore entitled to summary judgment on Count 1 of Plaintiffs' Amended Complaint as more fully explained in Defendants' Motion for Summary Judgment at section II.

5

inflated inventory to cover up numbers." (emphasis added). This quote is not based upon Mr. Garcia's personal knowledge, rather the entire testimony is based upon hearsay evidence of what Chester Brunty or some undisclosed person told him.

The fourth paragraph of this Interrogatory answer on page 5 of Plaintiffs' Opposition states "Defendants further slandered Plaintiff Garcia and again caused him loss of livelihood by accusing him of producing products at Casa Christina…Defendants wrongfully and maliciously slandered Plaintiff Garcia…." Plaintiff does not identify the person to whom these allegedly slanderous statements were made, which again causes the statement to be purely hearsay. Plaintiffs do not testify on their personal knowledge, but on something that they heard. Mr. Garcia goes on to state in the last full paragraph on page 6 of Plaintiffs' Opposition that he then went to Atlanta where "…his bosses in Atlanta received a phone call from a person, again slandering Plaintiff Garcia." Again, this statement is not based upon Mr. Garcia's personal knowledge, but on something that he heard.

The entire quoted answer to Interrogatory contains such hearsay statements. It is a fundamental rule that hearsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment. *Maryland Highways Contractors Ass'n v. Maryland*, 933 F.2d 1246 (4th Cir. 1991), *cert denied*, 502 U.S. 939 (1991). Thus, Plaintiffs have failed to meet their burden under Rule 56 (e) to provide competent evidence.

Additionally, Plaintiffs have failed to meet their burden of proving the elements of unfair competition. To the extent that Plaintiffs' quoted answer to Interrogatory on pages 4 – 7 of Plaintiffs' Opposition is to support their claim asserted in the Amended Complaint that Defendants are improperly asserting ownership of trade names or trademarks, or that Defendants misappropriated the inventory and assets of Plaintiffs, such allegations still fails as a matter of

6

law as Plaintiffs have failed to prove the essential elements of their cause of action. Plaintiffs must prove four elements to demonstrate a protectable interest in the trademarks, including, "(1) conclusive evidence of the validity of the registered mark, (2) the registration of the trademark, (3) the ownership of the trademark, and (4) Plaintiffs' exclusive right to use the mark in commerce. *Id.* The test for trademark infringement requires the plaintiff to demonstrate "(1) the defendant's use in commerce, of a reproduction, counterfeit, copy or colorable imitation, (2) of a registered trademark, (3) that is likely to cause confusion, or to cause mistake, or to deceive." *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 930 (4th Cir. 1995). In order to prove that Defendants are improperly asserting ownership of trademark, Plaintiffs must demonstrate a protectable interest in the trademarks.

Mr. Garcia stated at his deposition that the trademarks belong to the corporation, not to him individually.[7] Plaintiffs have not produced any evidence of registration of the trademarks. Plaintiffs have failed to prove the essential element of a trademark infringement, the registration and ownership of the trademark.

    **IV.**    **Section 349 of the Bankruptcy Code Does Not Undo The Sale Of The Assets Free and Clear of All Liens**

Plaintiffs claim that because the Company's bankruptcy case was dismissed, the dismissal bars the application of the doctrine of *res judicata*. Plaintiffs, however, are incorrect in their assertion. Section 349 (b) of the Bankruptcy Code provides in pertinent part as follows:

> (b) Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title – …
>
> > (3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.

---

[7] *See,* Jaime Garcia deposition transcript at 64. (The relevant portions of Mr. Garcia's deposition transcript were attached to Defendants' Motion for Summary Judgment as Exhibit 1.

The main objective of Section 349 is to restore all property rights. It does not, however, "necessarily encompass undoing sales of property from the estate to a good faith purchaser." 3 COLLIER ON BANKRUPTCY §349.03 [1] (15th ed. Revised 2003) (citations omitted). Moreover, "[n]or will dismissal necessarily eliminate the collateral estoppel or res judicata effect a bankruptcy court decision made during the case would have in a later proceeding." *Id.* (citing *United States of America v. Standard State Bank*, 91 B.R. 874 (W.D. Mo. 1988)). *See also,* Legislative History to Section 349, House Report No. 95-595, 95th Cong., 1st Sess. 337 – 38 (1977); Senate Report No. 95-989, 95th Cong., 2d Sess. 48-9 (1978).

It is undisputed that the Chef Garcia bankruptcy case was dismissed after the assets of the Company were sold at a public auction, in which Mr. Garcia and his counsel participated. However, there were no assets to revert back to the debtors at the time of the dismissal. The property of the estate that reverts in its prior owners after dismissal includes only the property left in the estate at the time of dismissal. *In re Searles*, 70 B.R. 266 (D.RI. 1987); *see also*, *United States of America v. Standard State Bank*, 91 B.R. 874 (W.D. Mo. 1988) (affirming that only the property left in the estate at the time of dismissal reverts back to the debtor).

The undisputed evidence is that Plaintiffs were aware of and participated in Chef Garcia's Bankruptcy proceeding. Mr. Garcia testified at deposition that he was personally represented during the bankruptcy proceeding and that he received notices of the bankruptcy pleadings.[8] Indeed, Mr. Garcia filed an objection to Chef Garcia's motion for authority to sell the "Chip Line." After Mr. Garcia's objection was denied, he filed a motion for reconsideration of order. After the sale of its Chip Line, on December 23, 1998, Chef Garcia filed a Motion for Authority to Sell by Public Auction Equipment, Furniture, and Intellectual Property, Free and

---

[8] Jaime Garcia deposition at 100. Plaintiffs' counsel further clarified by stating, "I mean there is no question that we participated in the bankruptcy and filed various things, including claims." *Id.* at 100-01.

8

Clear of Liens and Encumbrances and Remit Proceeds to Secured Creditors. While several creditors filed objections to Chef Garcia's motion to sell its equipment, furniture and intellectual property, Plaintiffs did object to the sale. The Bankruptcy Court granted Chef Garcia's motion to sell its assets by public auction. The assets of Chef Garcia were sold pursuant to the Judge's Order, and in accordance with that Order, the proceeds of the sale went to the State of Maryland for payment of taxes, and to First National Bank of Maryland and Riggs Bank in satisfaction of the security interests.

After the auction, Chef Garcia filed a Motion to Dismiss.[9] The basis for the motion was that the proceeds from the sale of the assets of Chef Garcia were insufficient, by a substantial margin, to satisfy either the claim of FNB or Riggs. Additionally, Chef Garcia stated that as proceeds of the sale were distributed to FNB, Riggs, and Fairfax County in satisfaction of a tax lien, Chef Garcia did not have the "ability to effectuate a plan of liquidation which would provide a one-time distribution to unsecured creditors.…[in addition], the Debtor will turn over to FNB and Riggs any remaining collateral or the proceeds of any such collateral, upon dismissal of the case."[10] After notice and a hearing, the Court granted Chef Garcia's motion based on its finding that a dismissal of the case was in the best interests of the debtor and its creditors. Mr. Garcia did not object to the dismissal, although he was aware of and received copies the pending motion.

The Order allowing Chef Garcia to sell its assets free and clear of liens precludes Plaintiffs from arguing that the assets of the Company were misappropriated or that the sale was a breach of a fiduciary duty. These claims could have been asserted in the Bankruptcy proceeding by way of an opposition to Chef Garcia's motion to sell its assets free and clear of

---

[9] *See,* Exhibit 20.
[10] *See,* Exhibit 20 at paragraphs 8 and 10.

9

liens and/or its motion to dismiss. To allow Plaintiffs to make such an argument at this stage is to allow a collateral attack on a final order entered by the Bankruptcy Court. Plaintiffs have failed to prove that they are not barred by *res judicata* from asserting their claims. The undisputed evidence on the record is that Plaintiffs had an opportunity to object to the sale or the dismissal during the bankruptcy case, but failed to do so. In addition, Section 349 does not undo the sales of the assets. Accordingly, summary judgment is proper in favor of Defendants Kirstien and Rothstein.

### V.     Plaintiffs Have Failed To Prove Constructive Fraud

In their Opposition, Plaintiffs provide the same definition of constructive fraud as that provided by Kirstien and Rothstein and cite to the same case. Plaintiffs do not provide any factual basis for their constructive fraud allegation. The claim of constructive fraud rests on Plaintiffs claim that Defendants were partners and agents of Plaintiffs. Plaintiffs have not provided any evidence that Defendants were their partners and have not refuted Defendants' argument that no such partnership existed. Plaintiffs have also not refuted that Defendants individually did not have any business relations with Plaintiffs or with Chef Garcia. The undisputed evidence is that Kirstien and Rothstein were limited partners of O'Stein Brothers. O'Stein Brothers was an investor and stockholder of Chef Garcia. Neither Defendants, nor O'Stein Brothers were partners with Plaintiffs and as such did not owe any fiduciary duties to Plaintiffs individually. Additionally, to the extent that Plaintiffs claim is based upon an alleged harm to the Company, this is a classic derivative action and Plaintiffs individually have no standing to assert constructive fraud against Kirstien and Rothstein individually.

**VI.   Plaintiffs Do Not Provide Any Competent Evidence That The Acts Complained Of Occurred Within Three Years Of The Filing Of The Lawsuit**

In support of their contention that the statute of limitations does not apply to bar this lawsuit, Plaintiffs quote an additional six pages from Mr. Garcia's answer to Interrogatory and end with a conclusory statement that the "claims asserted in this case all matured within three years of the filing of the Complaint." *Plaintiffs' Opposition* at 15.  The quoted Interrogatory answer complains of alleged wrongs in 1996 and 1997.  The latest date mentioned is a memo dated January 8, 1998.  The lawsuit was filed January 12, 2001, more than three years after the acts complained of.  It is undisputed that Plaintiffs were fortuitously terminated by Chef Garcia on January 14, 2001, however, all of the acts allegedly committed by Kirstien and Rothstein individually occurred in 1996 and 1997 according to Plaintiffs.  This lawsuit is based upon those alleged acts occurring in 1996 and 1997, which are barred by the statute of limitations.

Plaintiffs claim that the bankruptcy and the sale of the assets of the Company occurred less than three years before the filing of the lawsuit.  As noted above, Plaintiffs' claims related to the sale of the assets of Chef Garcia are barred by *res judicata.*  Plaintiffs participated in the bankruptcy, filed a proof of claim against Chef Garcia, and objected to a portion of the sale.  Plaintiffs did not object to the sale of all the assets of Chef Garcia free and clear of liens and did not object to or appear at the hearing on the Company's Motion to Dismiss the bankruptcy case.  Plaintiffs cannot argue now that the sale of the assets, which occurred pursuant to the order of the Bankruptcy Court, was improper.

Plaintiffs further claim that they provided several hundred pages of documentation in discovery and that Defendants have ignored those documents.  Perhaps Plaintiffs are claiming that somewhere in those several hundred pages of documentation is a document purporting to

prove that the actions complained of occurred within three years of the filing of the lawsuit.[11] However, those documents are not in evidence. Plaintiffs have not produced any evidence on the record to prove their contention that their claim is not barred by the statute of limitations. Moreover, Defendants contend that the several hundred pages of documentation do not contain any document which places any of the acts complained of within three years of the filing of the lawsuit.

As Plaintiffs have failed to put forth any competent evidence that the limitations period does not apply, Kirstien and Rothstein are entitled to judgment as a matter of law.

**VI.    Conclusion**

Plaintiffs have failed to put forth competent evidence of material facts in dispute and the undisputed evidence demonstrate that summary judgment in favor of Defendants Kirstien and Rothstein is appropriate. Accordingly, Kirstien and Rothstein respectfully request that summary judgment be granted in their favor.

Respectfully submitted,

_____/S/_____
Craig D. Roswell
Bar No. 9529
Niles, Barton & Wilmer, LLP
111 South Calvert Street, Suite 1400
Baltimore, Maryland 21202
(410) 783-6300
Attorney for Defendants Ronald D. Kirstien
and Harvey Rothstein

---

[11] Plaintiffs claims that Defendants are operating a company by the name of Chef Garcia and that Kirstien and Rothstein each own and operate 50% of the "new Chef Garcia" is a conclusory statement not supported by record. Such bald conclusory allegations cannot be used to defeat a summary judgment motion.