IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

(Northern Division)

| | | |
|---|---|---|
| JAIME GARCIA, et ux. | * | |
| Plaintiffs | * | Civil No.: BEL 01 CV 0103 |
| v. | * | |
| RONALD D. KIRSTIEN, et al. | * | |
| Defendants | * | |

\* \* \* \* \* \* \*

## AFFIDAVIT OF JAIME GARCIA

I, Jaime Garcia, Plaintiff, state that the facts below are based on the best of my personal knowledge and belief.

1. I am over eighteen years of age, and competent to testify to the matters set forth herein.

2. I never received stock of Chef Garcia, Inc.



3. Defendants never produced any document saying that they had issued stock.

4. Defendants never produced any tax filings of Chef Garcia, Inc., after year 1996.

5. After my wife and I were fired on January 14, 1998, Defendants kept all of our documents pertaining to the business.

6. Although I was on the Board of Directors of Chef Garcia, Inc. until August 27, 1998, I received no relevant company documents and no financial information on the company between the time I was fired and the time I resigned from the Board. Additionally, I was never invited to nor was I ever told of any meetings of the Board of Directors. I had no factual knowledge or information about the company's financial welfare or status. All information was withheld from me.

7. On August 25, 1998, while I was still a member of the Board of Directors, I received a Notice of Special Meeting of Board of Directors of Chef Garcia, Inc. to be held on August 27, 1998. Attached to this notice was an agenda of items to be discussed. The agenda focused solely on placing Chef Garcia, Inc. into bankruptcy.

8. As a result of Defendants' refusal to inform me of the financial and overall status of the company, I resigned from the Board of Directors on Thursday, August 27, 1998 before the meeting.

9. I never received notice or information that Director and Defendant Habeck had resigned from the Board of Directors in late 1997 or early 1998.

10. The facts are that Defendants Kirstien and Rothstein did bring up the subject in late December 1997 of reducing the Directors to three and requested me to obtain the resignation of my wife from the Board of Directors. I

realized that Defendant Habeck was the controlling director and this position had been compromised, since without Mr. Habeck, the Defendants would no longer control the Board of Directors. I also realized that Defendant Habeck's removal from the Board was not desired by them unless my wife also tendered her resignation. I told Defendants Rothstein and Kirstien that my wife would provide her resignation only after I saw Mr. Habeck's resignation.

11. At various times and frequently until I was fired and I could no longer go to the premises, I would see Defendant Habeck on the premises of Chef Garcia. Defendant Habeck would come in without announcement, and he visited all parts of the business, talked directly to any and all employees, and usually ignored my wife and me. He would give orders directly to my employees. He acted as if he were an owner and in charge of the business. When I objected to the payment of the exorbitant demands of Defendant Habeck, he

would obtain the approval of the other two defendants who would override my objections, and either provide payment directly to Defendant Habeck, or require me to sign checks under threat of losing my job.

    I hereby declare and affirm under the penalties of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

_____         5/5-04
Jaime Garcia                                date



[illegible]

**Tortilla Maya & Mexican Imports**
a division of The JEJ Food Company
7608-F Fullerton Road, Springfield, VA 22153-2814
(703) 455-0155 Metro 451-4841

EXHIBIT P-1 1-6-04 KFS

## BROKER AGREEMENT

As of this 15 day of June, 1993, THE JEJ FOOD COMPANY ("Manufacturer") a Virginia Corporation, and HABECK ZAITZ (Broker"), Maryland Corporation, agree as follows:

1. Broker is appointed agent for the sale of all of manufacturer's products for retail Food Service. Said products include those manufactured and sold under the Chef Garcia, Tortilla Maya, and private labels.

2. Broker's commission will be five percent (5%) of Manufacturer(s sales to accounts procured or serviced by Broker, except as follows:

   (a) 2.5% on all private label sales.

   (b) 50% of the above - stated commissions on all half price promotional sales (i.e., 2.5% on branded and 1.25% on private label sales).

   Broker's commission will be calculated monthly and paid by the fifteenth (15th) of the following month.

3. Broker's exclusive marketing area is the Baltimore/ Washington Metropolitan area, per attached map.

4. Broker agrees not to represent any other mexican food manufacturer or products without the express written consent of Manufacturer, which consent shall not be unreasonably withheld if the manufacturer or products in question do not compete with Manufacturer or its products.

EXHIBIT J

**Tortilla Maya & Mexican Imports**
a division of The JEJ Food Company
7605-F Fullerton Road, Springfield, VA 22153-2814
(703) 455-0155   Metro 451-4841

5. Broker agrees to use its best efforts to promote and maximize the sale of Manufacturer's products and branded labels. By way of illustration and not limitation of the foregoing, Broker will diligently service all accounts procured or entrusted to it to ensure that Manufacturer's products are fully stocked, shelved, and available for sale to retail purchases, and to ensure that the wholesale purchasers of Manufacturer's products are satisfied with the products and the servicing of their accounts by both Manufacturer and Broker.

6. All sales negotiations by Broker for the account of Manufacturer shall be conducted in accordance with such prices, terms, and conditions as are specified by Manufacturer. All purchase orders obtained by Broker for Manufacturer's products shall be subject to Manufacturer's confirmation, and it is understood that Broker will not obligate or commit Manufacturer to the sale or delivery of merchandise or products without Manufacturer's authorization and direction.1 Broker will assist Manufacturer in effecting prompt and full payment from all of Broker's accounts for all deliveries of goods sold. The final determination as to credit and credit terms shall be made only by Manufactuer.

7. All disputes hereunder shall, wherever possible, be resolved by meeting, discussion, and agreement. the parties hereto shall be reasonably available for all such meetings and discussions.

8. This agreement may be cancelled by either party upon thirty (30) days written notice. Where the alleged breach is susceptible to cure, the non - breaching party shall give written notice to the other party identifying the alleged breach, and said other party shall have five (5) days thereafter to cure the breach.



**Tortilla Maya & Mexican Imports**
a division of The JEJ Food Company
7608-F Fullerton Road, Springfield, VA 22153-2814
(703) 455-0155    Metro 451-4841

9. This is the entire agreement between the parties, and it may be amended or supplemented only in writing, signed by the parties.

SEEN AND AGREED:

BROKER                                      MANUFACTURER

By: *[signature]*                           THE JEJ FOOD COMPANY
                                            By: Steve Froemming
                                            Vice president