IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JAIME GARCIA et al. | : | |
| | : | |
| v. | : | CIVIL NO. L-01-103 |
| | : | |
| RONALD D. KIRSTIEN et al. | : | |

**MEMORANDUM**

This diversity action arises out of a dispute relating to a Mexican food business. Pending are Defendants' Motions for Summary Judgment and Defendants' Joint Motion to Strike Plaintiffs' Supplemental List of Exhibits. Because the parties have thoroughly briefed the motions, the Court will dispense with a hearing. See Local Rule 105.6 (D. Md. 2004). For the reasons stated below, the Court will, by separate Order, (i) GRANT Defendants' Motions for Summary Judgment, (ii) DENY as MOOT Defendants' Motion to Strike, and (iii) DIRECT the Clerk to CLOSE the case.

**I.    BACKGROUND**

Plaintiffs Jaime and Elvira Garcia, husband and wife, owned and operated JEJ Food Company, Inc. ("JEJ") and McWax & Company. These companies manufactured and sold Mexican foods under various brand names including "Chef Garcia."

In the early 1990s, JEJ experienced financial problems. Plaintiffs, therefore, sought outside investors and loans for their companies. Defendant Randy Habeck introduced Plaintiffs to Defendants Ronald Kirstien and Harvey Rothstein. Mr. Kirstien and Mr. Rothstein were investors in the food industry and limited partners in O'Stein Brothers Limited Partnership No. 4 ("O'Stein Brothers").

On September 30, 1994, O'Stein Brothers and Plaintiffs entered into a stock purchase

agreement with Chef Garcia, Inc., a newly formed entity. O'Stein Brothers received sixty-five percent of the shares while Plaintiffs received thirty-five percent of the shares. As part of the agreement Plaintiffs signed employment contracts with Chef Garcia, Inc. Habeck, Kirstein and Rothstein served as Directors of Chef Garcia, Inc. while Plaintiffs continued to run the day-to-day operations of the business.

In November 1997, Mr. Habeck resigned from the Chef Garcia, Inc. Board of Directors. On January 14, 1998, Mr. Kirstien and Mr. Rothstein, acting for Chef Garcia, Inc., fired Plaintiffs.

On September 2, 1998, Chef Garcia, Inc. filed a voluntary Chapter 11 Petition with the Bankruptcy Court for the Eastern District of Virginia. Chef Garcia, Inc. sought to sell some of its assets to pay off outstanding debts. During the course of the bankruptcy, Chef Garcia, Inc. filed a Motion to Sell the "Chip Line."[1] Mr. Garcia filed an objection. The Bankruptcy Court denied Mr. Garcia's objection and granted Chef Garcia, Inc.'s motion. Chef Garcia, Inc. sold the "Chip Line" under the terms authorized by the Bankruptcy Court.

On December 23, 1998, Chef Garcia, Inc. filed a Motion for Authority to Sell by Public Auction Equipment, Furniture, and Intellectual Property. Mr. Garcia did not object. The Bankruptcy Court granted Chef Garcia, Inc.'s motion, and a public auction was held with the proceeds being disbursed to the secured lenders. On March 5, 1999, the bankruptcy case was dismissed.

On January 12, 2001, Plaintiffs filed the instant lawsuit alleging: (i) Breach of Confidential and Fiduciary Relationships; (ii) Unfair Competition—Misappropriation; and (iii) Constructive Fraud. Plaintiffs essentially contend that Defendants engaged in a fraudulent activity when they were Directors

---

[1] The record is unclear at to exactly what type of asset the "Chip Line" was.

of Chef Garcia, Inc. and during the company's bankruptcy proceeding.

## II.   STANDARD FOR SUMMARY JUDGMENT

The Court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (recognizing that trial judges have "an affirmative obligation" to prevent factually unsupported claims and defenses from proceeding to trial). Nevertheless, in determining whether there is a genuine issue of material fact, the Court must view the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. Pulliam Inv. Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987).

## III.  ANALYSIS

### A.   Counts I and III are Time-Barred

Because this is a diversity action, the Court must apply the forum state's statute of limitations. Coe v. Thermasol, Inc., 785 F.2d 511, 514 n.5 (4th Cir. 1986). Maryland's general three-year statute of limitations governs unless a plaintiff's allegations fall within one of the state's specialized statutes of limitations. Md. Code Ann., Cts. & Jud. Pro. § 5-101 (2002). Because Plaintiffs' cause of action does not fall within a specialized limitations periods, Plaintiffs had three years to file suit.

Under Maryland law, a cause of action accrues when a plaintiff in fact knew of the wrong. Hecht v. Resolution Trust Corp., 635 A.2d 394, 399 (Md. 1994). In their answer to interrogatories,

Plaintiffs admitted knowing about the alleged fraudulent activity as early as June 17, 1997.[2]  Plaintiffs state: "At this point the cover-up by the Defendants was made extremely clear to Plaintiffs.  It was obvious to them that the Defendants were not being truthful . . . they were deceiving Plaintiffs."  (Def. Kirstien Mem. Summ. J. Ex. 18. (Garcia's Resp. to Interrog.) at 8).  Plaintiffs, however, waited until January 12, 2001, more than three years later, to file suit.

Plaintiffs argue that the continuation of events theory applies and saves their claims.  The continuation of events theory tolls the limitations period for parties who are in a confidential relationship.  See Supik v. Bodie et al., 834 A.2d 170, 179 (Md. Ct. Spec. App. 2003).  This theory allows a party who is in a confidential relationship to rely on the good faith of the other party so long as the relationship continues to exist.  Id.  Limitations do not begin running under this theory until the relationship is over.  Id.

Plaintiffs' reliance on this theory is misguided.  Even if this theory applied, the statute of limitations begins to run from the date the party learns about the wrong.  Id.  Plaintiffs admitted knowing about the alleged wrongs on June 17, 1997.  Plaintiffs did not file suit within three years of this date; accordingly, Counts I and III are time-barred and Defendants are entitled to summary judgment.

---

[2] According to Plaintiffs, all of the alleged fraudulent activity occurred in 1996 and 1997.  (Def. Kirstien Mem. Summ. J. Ex. 18. (Garcia's Resp. to Interrog.)).

### B.   Count II is Barred by *Res Judicata*

Count II is an attempt by Plaintiffs to re-litigate the sale of Chef Garcia, Inc.'s assets during the bankruptcy proceeding. It is, therefore, barred by *res judicata.*

Under Maryland law, *res judicata* applies if: (1) a court of competent jurisdiction entered a valid final judgment on the merits; (2) the later suit alleges the same cause of action as the earlier suit; and (3) the parties to the later suit are the same as or in privity with those in the earlier suit. Colandrea v. Wilde Lake Cmty. Ass'n, 761 A.2d 899, 908 (Md. 2000). All three elements are met.

First, the United States Bankruptcy Court for the Eastern District of Virginia issued a final order granting Chef Garcia, Inc.'s motions to sell assets. See Hendrick v. Avent, 891 F.2d 583 (5th Cir. 1990), *cert. denied*, 498 U.S. 819 (1990) (holding that a bankruptcy court order approving a sale of assets is a final order for res judicata purposes).

Second, under the "transaction test," claims are considered part of the same cause of action when they arise out of the same transaction. See Adkins v. Allstate Ins. Co., 729 F.2d 974, 976 (4th Cir.1984); deLeon v. Slear, 616 A.2d 380 (Md. 1992). In the instant suit, Plaintiffs claim that Defendants used the bankruptcy proceeding to misappropriate Chef Garcia, Inc.'s inventory and assets. Plaintiffs objected to Chef Garcia, Inc.'s Motion to Sell the "Chip Line." The bankruptcy court, however, approved the sale of the "Chip Line" and the sale of Chef Garcia, Inc.'s Equipment, Furniture, and Intellectual Property. Count II, therefore, concerns the same transaction—the bankruptcy court's approval of Chef Garcia, Inc.'s sale of assets.[3]

---

[3] The proper procedure would have been for Plaintiffs to file an appeal of the bankruptcy court's decision.

Finally, Plaintiffs were parties to the bankruptcy proceeding. They were represented by current counsel, received notices, and filed claims and objections. Mr. Kirstien and Mr. Rothstein were on Chef Garcia, Inc.'s Board of Directors, and they authorized the bankruptcy filing and motion to sell assets. The parties, therefore, are the same.

Because all three elements are met, Count II is barred by *res judicata.*

### IV.   CONCLUSION

For the reasons stated herein, the Court shall, by separate Order: (i) GRANT Defendants' Motion for Summary Judgment, (ii) DENY as MOOT Defendants' Motion to Strike Plaintiffs' Exhibits, and (iii) DIRECT the Clerk to CLOSE the case.

Dated this 30th day of September 2004.

/s/
Benson Everett Legg
United States District Judge