IN THE UNITED STATES DICTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | | |
|---|---|---|
| JAIME GARCIA, et al., | * | |
| Plaintiffs, | * | |
| v. | * | Case No.: B-01-103 |
| RONALD D. KIRSTIEN, et al., | * | |
| Defendants | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### DEFENDANTS RONALD KIRSTEIN AND HARVEY ROTHSTEIN'S OPPOSITION TO PLAINTIFFS' MOTION TO ALTER OR AMEND.

#### INTRODUCTION

This case is an instance where Plaintiffs have failed to articulate a *prima facie* case for their claims against Defendant's Ronald Kirstein and Harvey Rothstein, and now wish to have a second bite at the apple by revisiting issues that have already been correctly decided by this Court. Ultimately, the Court's decision was sound and Plaintiffs should not be entitled to have these issues reconsidered. Under the applicable Fourth Circuit standard, there is no basis to alter or amend the prior Order of this Court.

Plaintiffs, Jaime and Elvira Garcia, were the owners and operators of JEJ Food Company, Inc. ("JEJ") and McWax & Company ("McWax"). Both companies were manufacturers and sellers of Mexican foods. In the early 1990's, JEJ began experiencing financial troubles. In an attempt to recapitalize JEJ, Plaintiffs were introduced to Defendants Ronald Kirstein ("Kirstein") and Harvey Rothstein ("Rothstein") by Defendant Randy Habeck ("Habeck"). Subsequently,

Plaintiffs entered into an agreement with O'Stein Brothers Limited Partnership No. 4 ("O'Stein Brothers"), which was an entity with Kirstein and Rothstein as the limited partners.

On September 30, 1994, O'Stein Brothers and Plaintiffs entered into a stock purchase agreement with Chef Garcia, Inc., a newly formed entity, with O'Stein Brothers receiving sixty-five percent of Chef Garcia's shares and the Plaintiffs receiving thirty-five percent. In addition to their thirty-five percent share of Chef Garcia, Plaintiffs also signed employment contracts with the company. Ultimately, the Defendants served as members of the Corporation's Board of Directors and the Plaintiffs ran the day to day operations.

On January 14, 1998, Kirstein and Rothstein, acting in their official position as Directors, terminated Plaintiffs. On September 2, 1998 Chef Garcia filed a voluntary Chapter 11 Petition in the Eastern District of Virginia's Bankruptcy Court.

In order to pay outstanding debts, Chef Garcia sought the Bankruptcy Court's permission to sell some of its assets. More specifically, the Company filed a motion to sell its "Chip Line." Plaintiff Jaime Garcia filed an objection to this motion, which the Bankruptcy Court denied. The Chip Line was subsequently sold. The Company also filed a Motion for Authority to Sell, by Public Auction, Equipment, Furniture, and Intellectual Property. Plaintiffs did not object to this motion and a public auction was held in which the proceeds of the sale were distributed to the secured lenders. The bankruptcy was dismissed by the Court on March 5, 1999.

On January 12, 2001 the Plaintiffs filed a complaint commencing the instant action, which was subsequently amended into three counts. Count 1 of the Amended Complaint alleges that Habeck, Kirstein and Rothstein "as Plaintiffs partners, agents and members of the Board of Director's, were accountable to Plaintiffs as fiduciaries [and caused the Plaintiffs damages]." *Plaintiffs Amended Complaint* at ¶¶ 19. Count II of the Amended Complaint alleges "Unfair

Competition" by "misappropriating the inventory and assets of Plaintiffs" and using such "inventory and assets to directly compete with Plaintiffs." *Id.* at ¶ 23.

Count III of the Amended Complaint alleges "constructive fraud," stating that the Defendants owed Plaintiffs fiduciary duties "to act in the best interest of the Plaintiffs, the businesses and their creditors, and to prevent the destruction of the businesses and Plaintiffs' livelihood." *Id.* at ¶ 27. Plaintiffs allege that Defendants breached that fiduciary duty "by failing to prevent the destruction of the business …" *Id*. at ¶ 28.

The gravamen of Plaintiffs' case is that Defendants Habeck, Kirstein and Rothstein engaged in fraudulent activity during their tenure as Directors of Chef Garcia. This Court granted Defendant's Motion for Summary Judgment on September 30, 2004 and closed the case in an order entered on October 1, 2004. Specifically, this Court ruled that the Defendants claims as to Counts 1 and 2 of the Amended Complaint were time barred by the statute of limitations and Count 2 of the Amended Complaint was barred by the doctrine of *res judicata.* Plaintiffs have subsequently asked this Court to review its decision based on Rule 59(e) of the Federal Rules of Civil Procedure. For the reasons set forth in this memorandum, Plaintiffs' Motion should be denied.

## ARGUMENT

Although Rule 59(e) does not provide a standard for a court to alter or amend a judgment, the Fourth Circuit recognizes "three grounds for amending an earlier judgment: '(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice.'" *Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 402 (4th Cir. 1998). Plaintiffs, through their Motion, can only be asking this Court to reverse its order based on a clear error of law or the

3

prevention of manifest injustice because they neither allege a change in intervening law nor the discovery of new evidence in their Motion to Alter or Amend.

<u>THIS COURT CORRECTLY APPLIED THE RULE OF *RES JUDICATA*</u>

The assets that Plaintiffs' claims center upon were sold after Plaintiffs were provided with notice of the sale, pursuant to 11 U.S.C. § 363.  In fact, Plaintiffs even objected and had an opportunity for a hearing on the matter.  Now, after an opportunity to be heard and without exhausting their appeals in Bankruptcy Court, Plaintiffs come before this Court alleging that the instant case "arises out of a different factual and procedural context [than the *res judicata* cases cited by the Court]."  *Plaintiffs' Memorandum in Support of Motion Pursuant to Rule 59(e) to Alter of Amend Order Dated September 30, 2004 and Entered on October 1, 2004*, at 2 ("Plaintiffs Memorandum").  Further, "[t]he context in which the case at bar arises is a <u>dismissed</u> Chapter XI proceeding, that is, a Chapter XI proceeding that did not go to confirmation…" at 2 (emphasis in original).  *Id.*

Essentially, Plaintiffs are claiming that because Chef Garcia's bankruptcy case was dismissed, the dismissal bars the application of the doctrine of *res judicata.*  Plaintiffs, however, are incorrect in their assertion.  In their reliance on the Bankruptcy Code, Plaintiffs paraphrase § 349(b)(3) by stating, "Congress decided that upon a dismissal, the property of the estate reverts to the debtors as it existed immediately prior to the filing of the petition for bankruptcy." *Plaintiffs Memorandum* at 3.  11 U.S.C. § 349(b)(3) actually reads "(b)  Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title…(3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title." (11 U.S.C. § 349(b)(3)).  Therefore, Plaintiffs are misguided in stating true intent of Congress.

4

While the main objective of § 349(b) is to restore all property rights back to the debtor, it does not "necessarily encompass undoing sales of property from the estate to a good faith purchaser." 3 COLLIER ON BANKRUPTCY §349.03 [1] (15th ed. Revised 2003), citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 338 (1977). The previous statement, as taken from the Congressional History of the Bankruptcy Code, more accurately reflects Congress' decision to allow good faith transfers to stand, even upon a § 349(b) dismissal.

In the instant case, the Bankruptcy Court approved the sale of the assets, which required a finding that there was a "good business reason" for the sale. *In re Naron & Wagner, Chartered*, 88 B.R. 85, 87 (Bankr. D. Md. 1988) *quoting In re Lionel Corp*. 722 F.2d. 1063, 1071 (2nd Cir. 1983). In fact, the Court noted a good business reason in its decision to allow the sale, stating "…that the terms of the proposed sale are fair and reasonable and that the sale will benefit the debtor, its estate, and its creditors…" *Order Granting Debtor's Motion for Authority to Sell by Public Auction Equipment, Furniture, and Intellectual Property Free and Clear of Liens and Encumbrances* at 2 (U.S. Bankruptcy Ct., Alexandria Division, filed January 25, 1999).

Additionally, Plaintiffs overlook the language about the effect of *res judicata* in a §349(b) dismissal. Collier on Bankruptcy describes the effect as follows:

> On the other hand, dismissal does not always restore the prepetition status of property. If property has been transferred out of the estate to a third party, even if not by a sale, the bankruptcy court does not normally have jurisdiction to restore it to the debtor upon dismissal. Dismissal does not affect transfers of property made pursuant to a confirmed plan. Nor will dismissal necessarily eliminate the collateral estoppel or res judicata effect of a bankruptcy court decision made during the case would have in a later proceeding. 3 *Collier Bankruptcy Manual,* ¶ 349.03[1] (15th ed. Revised 2003) (footnotes omitted).

The sale of assets was adjudicated before the Bankruptcy Court and approved as bona fide. Therefore, the doctrine of *res judicata* must bar any subsequent claim in a different court that the sale was a breach of fiduciary duties or was done to harm Plaintiffs, as Plaintiffs and

their current counsel clearly had the opportunity to contest and appeal the Bankruptcy Court's findings. In fact, Plaintiffs and their counsel participated in the Bankruptcy proceedings. Therefore, Plaintiffs failure to appeal the decision of the Bankruptcy Court precludes them from now arguing that the sale of assets was a breach of fiduciary duty. In fact, allowing Plaintiffs to succeed in such an argument is tantamount to allowing a collateral attack upon a final order.

Even assuming, *arguendo*, that property could revert back to the debtors pursuant to a § 349(b) transfer, there was no property left in the estate to revert after the sale. The only property that reverts to its prior owners after dismissal is that property which is left in the estate at the time of dismissal. *In re Searles*, 70 B.R. 266 (D.RI. 1987); *see also United States of America v. Standard State Bank*, 91 B.R. 874 (W.D. Mo. 1988) (affirming that only the property left in the estate at the time of dismissal reverts back to the debtor.) Even if it is assumed that the property should revert under § 349(b), the property cannot revert due to its good faith transfer, because the Bankruptcy Court validated the asset sale and the assets were transferred in good faith. Therefore, any arguments by Plaintiffs that the property should revert to its previous owner after being sold are preempted.

In conclusion, Plaintiffs claim that the Court should reverse its decision based on either plain error or manifest injustice because it declined to rule that § 349(b) revests all property in the debtor, even after it has been sold. Even assuming that there was property left in the estate to transfer, the proposition that final judgments can be reviewed severely limits the ability of bankruptcy courts to allow debtors to dispose of assets without a confirmed plan and is contrary to both Congressional intent and case law. Accordingly, this Court's decision that Plaintiffs' claims are barred by *res judicata* is solidly grounded in well established law and the intent of Congress. Therefore, Plaintiffs' arguments must fail.

1.   THE COURT CORRECTLY DETERMINED THE STATUTE OF LIMITATIONS

Plaintiffs attempt to resurrect their claims by asserting that the Court erred in its statute of limitations analysis is patently incorrect.  While proffering that the continuation of services doctrine extends the statute of limitations to "…the time the services can be completed," Plaintiffs have ignored case law which states otherwise.  *Plaintiffs Motion* at 3, *citing Washington B&A v. Moss*, 130 Md. 198 (1917) and *Supic v. Bodie, et. al.*, 834 A.2d 170.

The Court of Special Appeals has explained the continuation of events theory as follows:

> "In cases where there is an undertaking which requires a *continuation of services*, or the party's right depends upon the happening of an event in the future, the statute begins to run only from the time the services can be completed or from the time the event happens."
>
> (*Frederick Road Ltd. Partnership v. Brown & Strum*, 360 Md. 76, 97, 756 A.2d 963, 974-975 (2000), *citing W., B. & A. Elec. R.R. Co. v. Moss*, 130 Md. 198, 204-05, 100 A. 86 (1917)).   The continuation of events theory is based on the equitable principle of detrimental reliance. When a relationship develops between two parties, built on trust and confidence, the confiding party may rely upon the "good faith of the other party so long as the relationship continues to exist." *Id.* at 98.  This is especially true in fiduciary relationships such as the attorney- client relationship where "a client has the right to rely on his or her lawyers' loyalty and to believe the accuracy and candor of the advice they give." *Id.* at 103.
>
> *****
> Notwithstanding the confidential relationship, if the confiding party knows, or reasonably should know, about a past injury, accrual for statute of limitations purposes will begin on the date of inquiry notice, and not the completion of services. "The confiding party, in other words, is under no duty to make inquiries about the quality or bona fides of the services received, unless and until something occurs to make him or her suspicious." *Id.* at 98.

*Supik v. Bodie, Nage, Dolina, Smith & Hobbs, P.A.*, 152 Md. App. 698, 714-715, 834 A.2d 170, 179 (2003). It is the last paragraph of the quote above which is most applicable to the case at bar. Plaintiffs clearly acknowledge that they knew about the alleged "fraud" in June 1997.  *See*

*Plaintiffs' Answers to Interrogatories No. 3.* Accordingly, the continuation of services or events theory offers them no solace because "accrual for statute of limitations purposes will begin on the date of inquiry notice…" *See Frederick Road Limited Partnership, supra.* In Answers to Interrogatory No. 3, Plaintiffs complain of alleged actions and wrongs by the Defendants in 1997. The latest claim was detailed in a letter dated January 8, 1998. *See Plaintiffs' Answers to Interrogatories No. 3.* According to Plaintiffs own discovery responses, they knew or should have known of the alleged wrongdoing throughout 1997, but filed the instant action almost four years later. The court was correct in its interpretation of the case law and, subsequently, the Plaintiffs' claims are barred by the statute of limitations.

## CONCLUSION

This Court did not make any error in granting Defendants Motion of Summary Judgment and, as such, should deny Plaintiffs Motion to Alter or Amend the Judgment.

                          Respectfully submitted,

                          _____/S/_____
                          Craig D. Roswell
                          Bar No. 9529
                          Niles, Barton & Wilmer, LLP
                          111 South Calvert Street, Suite 1400
                          Baltimore, Maryland 21202
                          (410) 783-6300
                          Attorney for Defendants Ronald Kirstein
                          and Harvey Rothstein

**CERTIFICATE OF SERVICE**

    I hereby certify, that on this 21st day of October, a copy of the foregoing Reply Memorandum was delivered by ECF to: David F. Albright, Esquire, Albright & Goertemiller, LLC, 120 E. Baltimore Street, Suite 2150, Baltimore, Maryland 21202 and Patrick J. Kearney, Selzer Gurvitch Rabin & Obecny, Chartered, 4416 East West Highway, Fourth Floor, Bethesda Maryland 20814.

                                                /s/
                                      Craig D. Roswell